# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- X

Sarah Morgulis, on behalf of herself
and all other similarly situated,                                    Index No: _____

                                                Plaintiff

                                                                     **SUMMONS**

                        -against-

Bus Patrol America, LLC.

                                                Defendant.
------------------------------------------------------------------- X

**Bus Patrol America, LLC**

**YOU ARE HEREBY SUMMONED** to answer the verified compliant in this action and to

serve a copy of your answer, or if the compliant is not served with this summons, to serve a

notice of appearance, on Plaintiff's Attorney(s) within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be entered against you by default for the relief demanded in the

complaint.


The basis of the venue designated in New York County is pursuant to CPLR 503(c), as that is the

county of the registered address for Defendant Bus Patrol America, LLC with the Seceretary of

the State of New York. Plaintiff designates New York County as the place of trial.

1

Dated: Brooklyn, New York

November 27, 2023

By: _____

Aviva Y. Horowitz, Esq.
*Of Counsel*
Aron Law PLLC
Attorneys for Sarah Morgulis
3692 Bedford Avenue, Suite P2
Brooklyn, New York 11229
Phone (718) 635-9500
Aviva.aronlaw@gmail.com

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- X

Sarah Morgulis, on behalf of herself
and all other similarly situated,

                              Plaintiff

             -against-

Bus Patrol America, LLC.

                            Defendant.

-------------------------------------------------------------------- X

**Index No:** _____

**VERIFIED CLASS ACTION
COMPLAINT**

**NOW COMES** plaintiff, Sarah Morgulis, by and through his attorneys, ARON LAW PLLC, and

hereby brings this putative class action on behalf of himself and all other similarly situated persons

(collectively, "Class") against Bus Patrol America, LLC ("Defendant" or "Bus Patrol"), and

alleges, with personal knowledge as to his own actions and upon information and belief as to those

of others, as follows:

## PRELIMINARY STATEMENT

1.       Plaintiff brings this putative class action against Defendant seeking damages sustained as

a direct and proximate result of Defendant's fraudulent concealment and/or inducement,

negligent misrepresentation and unjust enrichment in connection with Defendant's practice

of routinely issuing and collecting fines for Notices of Liability ("NOL") which contained

legally insufficient alleged violations under the guise of New York Vehicle and Traffic

Law ("VTL") Sections 1174-a ("Stop-arm Violations").

2.       Plaintiff and putative Class members have been, and continue to be, injured by Defendant's

actions.

1

3.　　Upon information and belief Plaintiff is one of thousands of individuals who paid fines for legally insufficiently alleged Stop-Arm Violations based on mistake or fraud due to Defendant's material representations or missions on the NOL.

4.　　Defendant has known or should have known that the Notice of Liability ("NOL") it was issuing were facially insufficient as the NOL failed at times to set forth the correct violation provisions of the VTL.

5.　　Defendant has known, or should have known, that, that the Certification printed on the face of Stop-Arm Violations contained material misrepresentations or omission regarding the alleged violation by the vehicle owner of VTL Sections 1174-a.

6.　　Defendant has known, or should have known, that there was insufficient evidence to support a violation of VTL Section 1174-a and that it was impossible to substantiate any of these NOL as the necessary evidence did not exist.

7.　　Nevertheless, from approximately August 6, 2019 through the present, and continuing, Plaintiff and punitive Class members received legally insufficient NOL with Technician's Certificates which contained material misrepresentations or omissions regarding alleged violations by vehicle owners of VTL Section 1174-a.

8.　　By knowingly issuing these facially insufficient NOL, and without correcting these omissions or misrepresentations, Defendant sought to induce Plaintiff and Class Members to make payments to Defendant for legally insufficient Stop-Arm violations.

9.　　Without correcting these omissions or misrepresentations, Defendant accepted payment of fines from Plaintiff and Class members for legally insufficient Stop-Arm Violations.

2

10. Without correcting their material misrepresentations and/or omissions, Defendant caused Plaintiff and Class members to incur associated fees for legally insufficient Stop-Arm Violations.

11. With knowledge of their material misrepresentations and/or omissions, Defendant failed to offer Plaintiff and Class members full refunds, plus interest, of the fines and associated fees paid for their legally insufficient Stop-Arm violations.

12. Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally insufficient Stop-Arm Violations.

13. Plaintiff seeks damages and equitable remedies under statutory and common law claims for himself and members of the putative Class, of which Plaintiff is a member.

14. Identified definitively below, the putative Class includes individuals who from August 6, 2019, to the present, and continuing, paid a fine and/or associated fee for an alleged violation of NYVTL Section 1174-a that was not refunded by Defendant.

## JURISDICTION AND VENUE

15. Pursuant to CPLR 301, this Court has jurisdiction to grant Plaintiff's and Class members' requests for relief and any further relief this Court deems just and proper.

16. Pursuant to CPLR 303(A)(1), this Court has jurisdiction over Defendant Bus Patrol as it transacts business within the state and has contracts to supply services in the State.

17. Pursuant to CPLR 503(c), venue is proper in New York County because that is the county of the registered address with the Secretary of State of New York is New York County

3

## PARTIES

18. Plaintiff Sarah Morgulis is a citizen of the State of New York.

19. Plaintiff Sarah Morgulis and is authorized to and does operate a motor vehicle throughout the State of New York.

20. Since August 6, 2019 Plaintiff Sarah Morgulis has received multiple NOLs issued by Defendant Bus Patrol for alleged violations of VTL 1174-a, which contained material misrepresentations or omissions regarding the sufficiency of the evidence upon which the NOL was issued.

21. In reliance upon these material misrepresentations or omissions, Plaintiff Sarah Morgulis remitted payment for to Bus Patrol for the monetary penalty as set forth in the NOL.

22. Defendant Bus Patrol is a limited liability corporation with a principal place of business at 8540 Cinder Bed Road, Suite 400, Lorton, VA 22079.

23. Defendant Bus Patrol is a registered with the New York State Department of State as a foreign limited liability company in New York County.

## STATEMENT OF FACTS

**VTL 1174**

24. In 1956 New York State created NYVTL 1174 (the "Underlying Charing Violation") which made it a violation to pass a school bus under certain conditions, when a bus was either loading or unloading passengers. It states in relevant part:

> Overtaking and passing school bus. (a) The driver of a vehicle upon a public highway, street or private road upon meeting or overtaking from either direction any school bus marked and equipped as provided in subdivision twenty of section three hundred seventy-five of this chapter which has stopped on the public highway, street or private road for the purpose of receiving or discharging any passengers, or which has stopped because a school bus in front of it has stopped to receive or discharge any passengers, shall stop the vehicle

4

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 8 of 95

before reaching such school bus when there is in operation on said <u>school bus a red visual signal as specified in subdivision twenty of section three hundred seventy-five of this chapter</u> and said driver shall not proceed until such school bus resumes motion, or until signaled by the driver or a police officer to proceed....

(Emphasis added)

25.    The marks and equipment and specifications that must be met for a bus for a violation of VTL 374 to occur are set forth in detail NYVTL § 375(20)[1].

---

[1] It states in relevant part:

(a) For each such omnibus having a seating capacity in excess of fifteen children, there shall be colored flashing signal lamps conforming to regulations prescribed by the commissioner on the front and on the rear thereof, including at least one flashing red signal lamp on the front thereof and at least one flashing red signal lamp on the rear thereof.  For each such omnibus having a seating capacity of not more than fifteen children, there shall be colored flashing signal lamps conforming to regulations prescribed by the commissioner facing the front and facing the rear thereof, and at least one flashing red signal lamp facing the front thereof and at least one flashing red signal lamp facing the rear thereof.  The driver of every such vehicle shall keep such red signal lamps lighted whenever passengers are being received or discharged or whenever he has stopped within fifty feet to the rear of a vehicle with such red signal lamps lighted, and shall light all other required signal lamps, as a warning, prior to stopping to receive or discharge passengers in accordance with regulations prescribed by the commissioner.

(b)(1) In addition to such signal lamps, two signs shall be conspicuously displayed on the exterior of every such omnibus designating it as a school omnibus by the use of the words "SCHOOL BUS" which shall be painted or otherwise inscribed thereon in black letters.  Such letters shall be of uniform size, at least eight inches in height, and each stroke of each letter shall be not less than one inch in width.  The background of each such sign shall be painted the color known as "national school bus chrome."  For each such omnibus having a seating capacity in excess of fifteen children, such signs shall be securely mounted on top of such vehicle, one of which shall be affixed on the front and one on the rear thereof.  For each such omnibus having a seating capacity of not more than fifteen children, such signs shall be securely mounted on top of such vehicle, one of which shall face the front and one of which shall face the rear thereof.  Each such sign shall be visible and readable from a point at least two hundred feet distant.

(2) The universal handicapped symbol shall be conspicuously displayed on the exterior of every omnibus equipped with a wheelchair lift which transports children with disabilities.  The commissioner shall promulgate regulations regarding the size and location of such universal handicapped symbol.  The commissioner shall require that any new signage relating to accessibility installed or replaced on or after the effective date of the chapter of the laws of two thousand fourteen which amended this subparagraph depict the logo promulgated by the secretary of state pursuant to section one hundred one of the executive law.

(c) In the event such vehicle is operated on a public highway during the period between one-half hour after sunset and one-half hour before sunrise, the signs required by paragraph (b) of this subdivision shall be illuminated as to be visible from a point at least five hundred feet distant.

★★★

(e) Every such omnibus, having its engine located ahead of the driver, with a seating capacity of more than twelve school children shall be equipped with a mirror, convex in shape, at least eight inches in diameter, firmly mounted at hood, windshield or fender-top height in front of the bus.  It shall be located on either the left or right side of the bus in such manner that the seated driver may observe through its use the road from the front bumper forward to the point where direct observation is possible.

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 9 of 95

26.     Further requirements regarding the busses' marks and equipment are set forth in the

NYCRR Commissioner's regulations 15 CRR-NY 46.7[2].

---

[2] That section states in relevant part:

(a) Driver's (left) side stop arms.

(1) Stop arms on school buses installed under section 375(21-c) of the Vehicle and Traffic Law must be activated while the vehicle is stopped and engaged in picking up or discharging passengers and must be installed on the left side of the bus. A school bus stop arm must be fully retracted whenever the school bus is in motion. Every school bus designed with a capacity of 45 persons or more, and manufactured for use in this State on or after January 1, 2002 shall be equipped with a second stop arm to be located on the driver's side of the bus, as close as practical to the rear corner of the bus. A school bus stop arm shall conform to specifications set forth in 49 CFR 571.131. The Commission of Motor Vehicles adopts the following sections of title 49 of the Code of Federal Regulations with the same force and effect as though herein fully set forth at length: part 571.131. These standards shall apply to persons required to install stop arms on school buses.

***

(b) Right side stop arms.

One stop arm may be installed on the right side of the bus and the forward-facing side of the arm may be equipped with a convex mirror. The stop arm may be activated only while the vehicle is stopped and engaged in picking up or discharging passengers. The stop arm must be fully retracted whenever the school bus is in motion. Any stop arm to be installed on the right side of the bus must be pre-approved by the Commissioner of Transportation in a manner prescribed by the Commissioner of Transportation. Any request for additional information regarding the approval procedures should be made in writing to: New York State Department of Transportation, Passenger Vehicle Safety Section, 50 Wolf Road, POD 53, Albany, NY 12232. In addition, the right side stop arm must conform to the following specifications:

(1) The mirror/stop arm shall be mounted in the window band area midway between the rear axle and the end of the bus and when deployed shall not obstruct the driver's view of vehicles approaching from the rear as seen in the right side rear view mirror.

(2) The mounting bracket must have a quick release feature that will permit quick release and removal of the stop arm by a first responder.

(3) All wiring for the device must meet or exceed the bus manufacturer's original equipment manufacturing specifications and installation methodology.

(4) Power supply circuits must have bus manufacturer compatible circuit breakers or fuses to ensure that any failure of the device does not render the bus inoperable.

(5) The device must have an override switch installed to allow the driver to disable the equipment.

(6) For buses with programmed, logic-controlled, electrical systems, the device wiring and circuitry must be compatible with the bus wiring and circuitry. All wiring must be rerouted through standard accessory wire channels.

6

Case 1:24-cv-00113-ER   Document 1-1   Filed 01/05/24   Page 10 of 95

27. Even further requirements regarding the busses' marks and equipment are set forth in the

Code of Federal Regulations ("CFR")[3].

---

[3] 49 CFR 571.131 states in relevant part:

S1. *Scope.* This standard establishes requirements for devices that can be installed on school buses to improve the safety of pedestrians in the vicinity of stopped school buses.

S2. *Purpose.* The purpose of this standard is to reduce deaths and injuries by minimizing the likelihood of vehicles passing a stopped school bus and striking pedestrians in the vicinity of the bus.

S3. *Application.* This standard applies to school buses other than multifunction school activity buses.

S4. *Definitions.*

*Stop signal arm* means a device that can be extended outward from the side of a school bus to provide a signal to other motorists not to pass the bus because it has stopped to load or discharge passengers.

S5. *Requirements.* Each school bus shall be equipped with a stop signal arm meeting the requirements of S5.1 through S5.5 as depicted in Figure 1.

S5.1 The stop signal arm shall be a regular octagon which is at least 450 mm × 450 mm (17.72 inches × 17.72 inches) in diameter.

S5.2 The stop signal arm shall be red on both sides, except as provided in S5.2.1 and S5.2.2, and S5.2.3.

S5.2.1 The stop signal arm shall have a white border at least 12 mm (0.47 inches) wide on both sides, except as provided in S.5.2.3. Mounting brackets, clips, bolts, or other components necessary to the mechanical or electrical operation of the stop signal arm may not obscure more than 15 percent of the border on each side of the stop arm. The portion of the border that may be obscured is in addition to that portion which may be obscured by the two red lamps specified in S5.3.2.

S.5.2.2 The stop signal arm shall have the word "STOP" displayed in white upper-case letters on both sides, except as provided in S5.2.3. The letters shall be at least 150 mm (5.9 inches) in height. The letters shall have a stroke width of at least 20 mm (0.79 inches), except as provided in S.5.3.1.1.

S5.2.3 When two stop signal arms are installed on a school bus, the rearmost stop signal arm shall not contain any lettering, symbols, or markings on the forward side.

S5.3 *Conspicuity.* The stop signal arm shall comply with either S5.3.1 or S5.3.2, or both.

S5.3.1 Except as provided in S5.3.1.1, S5.3.1.2, or S5.3.1.3, the entire surface of both sides of each stop signal arm shall be reflectorized with Type III retroreflectorized material that meets the minimum specific intensity requirements of S6.1 and Table I.

S.5.3.1.1 The legend of the retroreflective stop arm may be illuminated in a manner such that light is emitted from the surface of each letter or from the area immediately surrounding each letter. Only red lamps may be used. They shall form the complete shape of each letter of the legend, and shall be affixed to all letters (or to the areas immediately surrounding all letters) in the legend. The shape of each letter shall remain constant and, if the lamps are contained within each letter, the net stroke width (stroke width minus the width of the lamp(s)) of each letter of the legend, specified in S5.2.2, shall not be less than 15 mm (0.59 inch). When the stop arm is extended, the lamps shall flash at the rate specified in S6.2.2, with a current "on" time specified in S6.2.2.1. All lamps shall be positioned in one of the two following ways:

(1) centered within the stroke of each letter of the legend, or

(2) outlining each letter of the legend.

S5.3.1.2 Nonreflectorized mounting brackets, clips, bolts, or other components necessary to the mechanical or electrical operation of the stop signal arm shall not obscure more than 7.5 percent of the total surface area of either side of the stop signal arm.

S5.3.1.3 When two stop signal arms are installed on a school bus, the forward side of the rearmost stop signal arm shall not be reflectorized.

S5.3.2 Each side of the stop signal arm shall have at least two red lamps that meet the requirements of S6.2. The lamps shall be centered on the vertical centerline of the stop arm. One of the lamps shall be located at the extreme top of the stop arm and the other at its extreme bottom.

S5.4 The stop signal arm shall be installed on the left side of the bus.

S5.4.1 The stop signal arm shall be located such that, when in the extended position:

(a) The stop signal arm is perpendicular to the side of the bus, plus or minus five degrees;

7

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 11 of 95

28.  In short, there are very specific technical requirements regarding the markings of the bus and its equipment that must be met in order for a NOL for a violation of VTL 1174(a) to be validly issued.

29.  Moreover, even if all these requirements are met, a NOL for a violation of VTL 1174(a) can only be issued if the stop arm was activated due to the bus stopping for the purposes of letting passengers on or off the bus.

## Amendment VTL 1174-a and the Creation of the Stop Arm Violation Program In New York State

30.  On August 6, 2019, the Governor of the State of New York, Andrew Cuomo, signed into law an amendment to the VTL, Section 1174-a, which assesses liability to the vehicle owner where the vehicle violated VTL 1174(a).

31.  This statute was essentially enacted to enable localities to issue NOL through the use of automatic camera tickets.

32.  Specifically, the amendment authorized any county, city, town or village located within a school district to adopt and amend a local law or ordinance establishing a demonstration

---

(b) The top edge of the stop signal arm is parallel to and not more than 6 inches from a horizontal plane tangent to the lower edge of the frame of the passenger window immediately behind the driver's window; and
(c) The vertical centerline of the stop signal arm is not less than 9 inches away from the side of the school bus.
S5.4.2 A second stop signal arm may be installed on a school bus. That stop signal arm shall comply with S5.4 and S5.4.1.
S5.5 The stop signal arm shall be automatically extended in such a manner that it complies with S5.4.1, at a minimum whenever the red signal lamps required by S5.1.4 of Standard No. 108 are activated; except that a device may be installed that prevents the automatic extension of a stop signal arm. The mechanism for activating the device shall be within the reach of the driver. While the device is activated, a continuous or intermittent signal audible to the driver shall sound. The audible signal may be equipped with a timing device requiring the signal to sound for at least 60 seconds. If a timing device is used, it shall automatically recycle every time the service entry door is opened while the engine is running and the manual override is engaged.
S6 *Test Procedures.*
S6.1 *Reflectivity Test.* When tested under the conditions specified in S6.2 (b), (c), and (d) of Federal motor vehicle safety standard 125, Warning Devices, (49 CFR 571.125), the retroreflective materials shall meet the criteria specified in table 1.

8

Case 1:24-cv-00113-ER Document 1-1 Filed 01/05/24 Page 12 of 95

program which imposed monetary liability of the owner of a vehicle for failure to comply with section 1174 of the VTL. See VTL 1174-a.

33. Additionally, the newly amended section further authorized and empowered the counties, towns or villages to equip school buses to operate "school bus photo violation monitoring systems," which could be either stationary or mobile, were designed to capture images and/or video of vehicles violating VTL 1174. See VTL 1174-a.

34. In accordance with this law, local laws and ordinances were adopted throughout the State of New York, authorizing the installation, and operating of school bus photo violation monitoring systems on buses.

35. Additionally, in order to enact the program, a municipality must install signage to notify and provide community engagement in the matter.

36. Upon information and belief, such signage was never installed, or insufficient signage was installed, in areas where the school bus photo violation monitoring system were installed and maintained by Bus Patrol on school busses.

37. Upon information and belief, there was no community engagement provided pertaining to the enactment of this Stop-arm Violation program in areas where Bus Patrol installed and operated school bus photo violation monitoring systems on busses.

38. Under VTL 1174-a, an owner can only be assessed a fine where the people demonstrate that the owner's vehicle had violated VTL 1174 (a).

39. Regardless of the particular local laws adopting the program and local legislation, a predicate for owner liability under VTL 1174-a is that all the elements required for a violation of 1174(a) are met.

9

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 13 of 95

40.    Essentially this means that whether the NOL is issued in the Town of Niagara or Nassau County or Rockland County, the predicate for owner liability under VTL 1174-a is still all the elements required for a violation of 1174(a).

41.    Violations given pursuant to this program can result in fines of $250 for a first violation and up to $300 for each violation in an 18-month period. VTL 1174(c).

42.    The unique element of this violation is that it is issued to the owner of the vehicle, regardless of whether they were the one driving the vehicle or even aware that the car was being driven at all, as the amendment provides for liability for the owner of a vehicle who passes a bus that is part of this program.

43.    This makes it imperative that the burden lie squarely upon the issuers of the NOL to procure and evaluate the sufficiency of the evidence to ensure that all the required elements of the violation exist, as the owner may have no way to be aware of the particular details or circumstances of the violation as they were not present when it allegedly occurred.

44.    Indeed, the only information the owner of the vehicle receives is the NOL issued to it by the Defendant and the limited video footage clips of the alleged violation.

**Notices of Liability as Required by Statute**

45.    In accordance with VTL 1174-a, a NOL must include the name and address of the person alleged to be liable as the owner of the vehicle, the registration of the vehicle involved in the violation the location where the violation took place, the date and time of the violation, and the identification number of the camera which recorded the violation or other document locator number. See VTL 1174-a(g)(2).

46.    Additionally, the NOL must also contain information regarding how the person charged may protest the liability in the notice. The NOL must also contain a warning that failure to

10

contest the NOL in the manner and time provided would be deemed an admission of liability and a default judgment may be entered thereon. See VTL 1174-a(g)(3).

47.     The statute provides that if the NOL contains a certificate, sworn to or affirmed by a technician employed by the county, city, town or village where the violation allegedly occurred (whom based on information end belief is a Law Enforcement employee), based on its review of the photographs, microphotographs, videotapes or other recorded images produced by the school bus, then the NOL "shall be prima facie evidence of the facts contained therein." See VTL 1174-a(4)(d).

48.     The NOL however, does not provide details of the violation's provisions, or information regarding the school bus signage or equipment, or any information regarding why the bus was allegedly stopped at the time the stop arm bus camera was activated.

49.     The reason for the certification is that a NOL can only be issued after a determination has been made by the Law Enforcement employee that based upon his review of the evidence provided to him by the company processing the stop-arm violation photos and videos, a violation of 1174(a) occurred.

**Master Agreements With Defendant Bus Patrol**

50.     Bus Patrol is a national corporation whose business includes administering stop arm programs for municipalities throughout the country where local legislation allows for the issuance of automated Stop-Arm Violations.

51.     Bus Patrol markets itself as providing "end to end" services. Specifically, that it supplies and installs the safety technology, handles citation management, provides payment and processing services for the violations, provides cloud-based software for online viewing of

11

the video footage, creates evidence packages for law enforcement review, manages requests for court hearings and more. See https://buspatrol.com/how-it-works/

52. What makes Bus Patrol's services so attractive is that it involves no capital outlay from the municipalities or school districts, rather is fully funded through the revenue generated from the Stop Arm violation program. See https://buspatrol.com/blog/mission/how-the-buspatrol-safety-program-is-different-to-any-other-traffic-enforcement-program/.

53. As set forth in the Master Agreements between Bus Patrol and the various counties, cities, towns and villages throughout New York State contracted with Defendant Bus Patrol to essentially run the stop arm program, Bus Patrol received as high as 70% of the income generated through this program in exchange for its services. Copies of a sampling of these Master Agreements are collectively attached hereto as Exhibit "A."

54. Therefore, Bus Patrol is incentivized to issue as many NOL as possible, as their income is dependent on the collection of fines for these violations.

55. With each NOL that a driver pays a fine for, Defendant Bus Patrol is further enriched.

**Bus Patrol's Role and Responsibilities**

56. Through these Master Agreements, the counties, cities, towns and villages authorized Defendant Bus Patrol to issue citations to the owner of such vehicle when approved by an authorized City Technician. See Exhibit "A."

57. Pursuant to the Master Agreement, Bus Patrol is responsible for installing and maintaining the video cameras on the school buses. See Exhibit "A."

58. Upon information and belief, Bus Patrol has installed and maintains these video cameras in counties, cities, towns and villages throughout New York State.

12

Case 1:24-cv-00113-ER   Document 1-1   Filed 01/05/24   Page 16 of 95

59.     Pursuant to the Master Agreements, Bus Patrol both collects the video footage of the potential violations of the Stop-arm Violations, screens the footage and then creates evidence packages for City technicians to approve for purposes of issuing the NOL. Bus Patrol describes their process as follows:

> First Layer- Our onboard equipment detects a stop arm event (SAE) only when stop arm is deployed. The video and metadata are recorded onto the hard drive on-board. Once it has been marked as a SAE, the data is transferred via 4G/LTE modem over Bus Patrol's secure encrypted VPN.
>
> Second Layer - Exterior camera SAE video data is transferred via Bus Patrol's™ 4G/LTE cellular modem over the VPN to Bus Patrol's proprietary Alertbus citation life-cycle management system where they are processed using AVA, Bus Patrol's proprietary Automated Video Analysis Artificial Intelligence (AI), which has been proven to be significantly more reliable than on board motion detection, radar, and even the human eye. All SAEs with potential violations are sent to trained Bus Patrol reviewers through the Alertbus system who individually review the SAEs to validate potential violations, and flag them to be transferred to a processor.
>
> Third Layer - Bus Patrol processing experts, known as Processors, examine video from seven camera angles, validate that a potential violation has occurred, and assembles the digital evidence package including: GPS map and data showing the violation location; time and date of the violation; vehicle license plate number and state; make, model, and year of the vehicle; registered owner information; recorded images showing the violation; and other pertinent details on a digital citation to later be approved or disapproved by a certified law enforcement officer within the municipality. Processors are assigned to specific states and are trained on the state law and associated city or county ordinances.

See Exhibit "A."

60.     In sum, throughout New York State, Bus Patrol advertises that it provides a complete review of the data and footage and provides the law enforcement officers with an evidence package ("Evidence Package") that it purports to be sufficient to prove that a Stop arm Violation occurred.

**13**

61.    Upon information and belief, these law enforcement officers are provided training by Bus Patrol in order to review and issue these NOL.

62.    A copy of a sample of the training material provided by Bus Patrol to law enforcement employees regarding the issuance of NOL is attached hereto as Exhibit "B." Notably, the training material is entirely silent with regard to key aspects of VTL 1174(a) and 1174-a, including the requirement that the bus must have been stopped for purposes of loading or unloading passengers and the various equipment that such busses must be outfitted with.

**The Evidence Package Collected by Bus Patrol**

63.    Each of the Evidence Packages which serves as the basis for a violation are collected and assembled exclusively by Bus Patrol.

64.    The entirety of the Evidence Package's evidence comes from three external bus cameras which are installed and maintained exclusively by Bus Patrol.

65.    Upon information and belief, Bus Patrol installs the same equipment in every location in New York State where it operates.

66.    Bus Patrol alone assembles and circulates the Evidence Package for certification by the law enforcement official and for the prosecution of the NOL.

67.    The only evidence provided by Bus Patrol and available in these cases are the pictures and video. A copy of a sample technician's certificate, which specifies the records reviewed in support of the issuance of the NOL is attached hereto as Exhibit "C."

68.    The only cameras on the school buses managed by Bus Patrol and capturing footage for the Evidence Package are located in the on front of the bus, on either of the two sides.

69.    Bus Patrol is aware of all of the required evidence necessary to support a purported violation of 1174(a) of the VTL, including the equipment requirements, the required

14

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 18 of 95

reasons for the bus being stopped, the necessary lights on the stop arm signs, and the necessary markings for the school buses.

70.    Bus Patrol is aware it has not installed any internal cameras for purposes of enforcement of the Stop-Arm Violations and no such footage is provided to Law Enforcement officials as part of the Evidence Package.

71.    Bus Patrol is aware that the Evidence Package provided to the Law Enforcement officials for the issuance of NOLs fails to provide any information or evidence as to the reason the school bus stopped and activated the stop arm.

72.    Bus Patrol is aware that the Evidence Package it provides to the Law Enforcement officials for the issuance of NOLs fails to provide any information or evidence regarding the School bus, including its size or markings.

73.    Bus Patrol is aware that the Evidence Package it provides to Law Enforcement officials for the issuance of NOLs fails to provide any information or evidence regarding the school bus equipment and its compliance with law.

74.    Bus Patrol is aware that the Evidence Package it provides to Law Enforcement officials for the issuance of NOLs fails to provide any information of evidence regarding the lights on the stop arm sign.

75.    Bus Patrol knowingly sends these insufficient Evidence Packages to Law Enforcement officials, in order to induce the Law Enforcement officials to issue the NOLs to owners of vehicles.

**Necessary Findings/Evidence to Find Violation of VTL 1174-a**

76.    It is the burden of the people to demonstrate that a vehicle owner violated the provisions VTL 1174(a) and therefore is liable for a fine pursuant to VTL 1174-a.

**15**

77.    Bus Patrol is aware of all the elements that must be met for someone to be guilty of a Stop arm violation pursuant to VTL 1174(a) and VTL 1174-a in New York State.

78.    Nonetheless, the only evidence set forth in the Evidence Package created by Bus Patrol and provided to the Law Enforcement officials in support of the issuance of a NOL is the fact that the vehicle may have passed the school bus, while the stop sign was activated and the color of the school bus.

79.    The angles of the video cameras installed and maintained by Bus Patrol do not capture whether there are any passengers leaving or entering the bus while the stop sign is deployed.

80.    The angles of the video cameras installed and maintained by Bus Patrol do not capture any details of the stop signs themselves, including information about their dimensions, locations, and nature of the specifications of the lights on the signs.

81.    The angles of the video cameras installed and maintained by Bus Patrol do not capture whether the school buses feature signage per the specifications of the law.

82.    In short, the video footage captured by Bus Patrol on the video cameras installed and maintained by Bus Patrol fail to capture many of the necessary elements of violations of VTL 1174(a), including but not limited to: the vehicle passing the school bus, whether the bus was stopped to pick up or drop off passengers or because it was behind another school bus doing the same, or that the school bus in question is equipped as required by VTL 375 (20). These requirements include among other items, that the bus be yellow, that it is equipped with two stop signs on a single side in the event that the bus is above a certain size and the word SCHOOL BUS is painted on the side of the bus in a specific size.

16

83.   Thus, Bus Patrol knowingly provides Evidence Packages purported to be demonstrative of violations of VTL 1174-a when in fact, the company knows that this is a misrepresentation of the facts as the video footage does not contain most of the necessary elements to support a violation.

**The Issuances of Notices of Liability by Bus Patrol**

84.   Through the Master Agreements, counties, cities, towns and villages empowered Defendant Bus Patrol to "collect fines from the owner of such vehicle as authorized by Section 1174-a". See Exhibit "A."

85.   Upon receiving certification from the Law Enforcement Official, after approval of Bus Patrol's Evidence Package, Bus Patrol generates and issues a NOL to the Vehicle Owner. A copy of a sample NOL is attached hereto as Exhibit "D."

86.   Each notice of liability contains a certification under the penalty of perjury by a Law Enforcement employee called a "Specialist". The language of the certification states as follows:

> Based on my review and inspection of the evidence, including recorded images, I swear or affirm under penalty of perjury that there is sufficient evidence that a violation of NY VTL 1174-a did occur, as more fully described herein, for which the above named vehicle owner is liable pursuant to…NY VTL 1174-a.

See Exhibit "D."

87.   Said certification is unquestionably false as the Evidence Package did not contain sufficient evidence that a violation of VTL 1174-a did occur as not all the elements are evident in photographic and video evidence captured by Bus Patrol cameras.

17

88. While generating, producing and mailing these NOL, Bus Patrol knows that the certification contained therein is false and that there is insufficient evidence to support the alleged violation by the Vehicle Owner.

89. Nonetheless, Bus Patrol issues and mails these NOL to vehicle owners in order to induce them to pay the fine.

90. Vehicle owners may not have been driving car when purported violation occurred and therefore are unaware of the particular circumstances of the violation and whether the School Bus markings and equipment in fact meet the required standards of the VTL.

91. The only information available to the owner upon receipt of the NOL is the information represented by Bus Patrol and the limited media clips that are shared alongside it.

92. Bus Patrol knows that vehicle owners are only aware of the information regarding the violation that Bus Patrol provides on the NOL and in the associated media clips.

93. Vehicle owner are thereby misled into believing that there is sufficient evidence to support a violation based on the inclusion of the false sworn to certification on the face of the NOL.

94. While owner sees the clips video of vehicle passing with stop arm open, they are unaware that the evidence against them is limited to these shared videos, as there is no indication in the NOL that these are the only videos or photographs reviewed by the Law Enforcement official in its certification.

95. In reliance of this false certification on the NOL issued by Bus Patrol, that there was sufficient evidence required to support the charge, owners often plead guilty and pay fines.

96. Upon information and belief, Bus Patrol knowingly drafted this unclear language in order to induce vehicle owners to make payments on the NOL rather than to contest them.

18

97. Upon information and belief, many of the NOLs issued by Bus Patrol failed to refer to a violation of 1174-a and instead referred only to a violation of 1174(a).

98. Bus Patrol profits from every payment made on one of these NOL.

99. Bus Patrol knew that there was insufficient evidence in its Evidence Package as reviewed by the Law Enforcement official to support violation of VTL 1174-a.

100. Bus Patrol knew that the only elements of VLT 1174-a and 1174(a) that the Law Enforcement official could determine from the provided Evidence Package was that a vehicle passed while a stop arm was activated and that the bus was yellow.

101. Bus Patrol knew or should have known that the Law Enforcement official could not find any evidence in the Evidence Package to support why the bus was stopped, the number of signs on either side of the bus, or specific details regarding the signage on the bus or the equipment maintained by the bus.

102. The Evidence Package provided by Bus Patrol cannot demonstrate these elements, because the cameras installed and maintained by Bus Patrol do not capture these required elements.

103. Bus Patrol knows that a NOL should only be issued if the Law Enforcement official reviews evidence supporting each element of VTL 1174-(a) and 1174(a)

104. Notwithstanding, Bus Patrol processed the notice of liability with the false certification.

105. Plaintiff and many others have unknowingly paid fines for these NOL, based on the misrepresentations contained in the false certification on the faces of the NOL issued by Bus Patrol.

106. Plaintiff and many others did not administratively challenge these violations as they believed such efforts would be futile as the NOL contained sworn statements that there was sufficient evidence to establish violation.

**19**

107. According to the Master Agreements, Defendant Bus Patrol would receive monthly fees for every school bus which had the Monitoring System from the revenue generated by fines that Defendant Bus Patrol collected arising from these violations of VTL 1174-a. See Exhibit "A."

108. Additionally, according to the Master Agreements, the counties, cities, towns and villages would provide Defendant Bus Patrol with up to a 60% revenue share of the 90% of the revenue derived from the fines that Defendant Bus Patrol collected arising from these violations of VTL 1174(a). See Exhibit "A."[4]

**Class Action Allegations**

109. Plaintiff brings his claims as a class action pursuant to CPLR 901, *et seq.,* on behalf of himself and on behalf of the owners of vehicles who were issued NOL pursuant to VTL 1174-a in New York State since August 6, 2019 ("the Class").

110. Excluded from the Class are Defendants, their governing agencies, subsidiaries, affiliates, employees, officers and directors; any co-conspirators; federal governmental entities and instrumentalities of the federal government; states and their subdivisions, agencies and instrumentalities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and Class counsel.

111. Plaintiff reserves the right to amend or modify the Class definitions in connection with a motion for Class certification or as warranted by discovery.

112. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in CPLR § 901(a)(1).

---

[4] A 10 percent share of the revenue derived from the fines collected by Defendant Bus Patrol is remitted to the Comptroller's Office.

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 24 of 95

113. Plaintiff does not know the exact size of the proposed Class; however, counsel believes that the Class encompasses thousands of individuals who are dispersed throughout the State of New York. Therefore, the proposed Class is so numerous that joinder of all members is impracticable. '

114. The identity and address of each Class member can be readily ascertained through documents in the possession of Defendant as they maintain traffic ticket records and mailed the NOL for the legally insufficient Stop Arm Violations to Plaintiff and the proposed Class. Class members may be notified of the pendency of this action by mail and/or electronic mail and/or other electronic and social media means.

115. There are questions of law and fact that are common to the Class and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiff and Class members arise from the common nucleus of operative facts surrounding Defendant's misconduct. The common questions include, but is not limited to:

a. Whether Defendant was unjustly enriched due to its issuance of facially insufficient NOL which contained misrepresentations or omissions of information designed to induce vehicle owners to remit payment for violations of VTL 1174-a.

b. Whether Defendant fraudulently induced Plaintiff and class members to remit payment and associated fees for legally insufficient Stop-Arm Violations.

c. Whether Defendant induced Plaintiff and class members to remit payment based on negligently misrepresented or omitted material information.

116. Pursuant to CPLR § 901(a)(3), Plaintiff's claims are typical of the claims of the Class since each Class member was subject to the same deceptive practices and course of conduct. Furthermore, Plaintiff and all members of the Class sustained monetary damages including,

21

but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

117.    Pursuant to CPLR § 901(a)(4), Plaintiff is committed to the vigorous prosecution of the Class's claims. Plaintiff will fairly and adequately represent the interests of the Class. No conflict of interest exists between the representative and the Class members or with respect to the claims for relief requested.

118.    The representative and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution. The representative's attorneys are competent in the relevant areas of the law, have sufficient experience to vigorously represent the Class and have the resources to ensure that this litigation will not be hampered by a lack of financial capacity.

119.    Pursuant to CPLR § 901(a)(5), a class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them. A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

120.    As a result of Defendant's conduct, Defendant is liable to Plaintiff and the Class for the full amount of any loss suffered by Plaintiff and the Class and any other actual, statutory or other applicable damages.

121.    The Class may also be certified because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

- Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## <u>COUNT I: UNJUST ENRICHMENT</u>

122.    Plaintiffs and the putative class reallege and incorporate paragraphs 1 to 113 as if fully set forth herein.

123.    The Defendant has been unjustly enriched by collecting fines from the recipients of the NOL, based on alleged violations of Stop-arm Violations.

23

124.  Defendant has known or should have known that the NOL it was issuing were facially insufficient as the NOL failed at times to set forth the correct violation provisions of the VTL.

125.  Defendant has known, or should have known, that the Certification printed on the face of Stop-Arm Violations contained material misrepresentations or omission regarding the alleged violation by the vehicle owner of VTL Sections 1174-a.

126.  Defendant has known, or should have known, that there was insufficient evidence to support a violation of VTL Section 1174-a and that it was impossible to substantiate any of these NOL as the necessary evidence did not exist.

127.  Nevertheless, from approximately August 6, 2019 through the present, and continuing, Plaintiff and putative Class members received legally insufficient NOL with Technician's Certificates which contained material misrepresentations or omissions regarding alleged violations by vehicle owners of VTL Section 1174-a.

128.  Defendant unlawfully retained money belonging to Plaintiff and Class members.

129.  Defendant has been unjustly enriched through its retention of money belonging to Plaintiff and Class members.

130.  Plaintiff and Class members are entitled to restitution as it is unjust and inequitable for Defendants to retain such money based on the unlawful conduct described above. Such money belongs in good conscience to Plaintiff and Class members.

131.  As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class members are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Defendant through this inequitable conduct.

24

## COUNT II FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT

132. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

133. At all relevant times, Defendant falsely represented that Plaintiff and Class members that the alleged Stop-Arm Violations were legally sufficient, and that the municipality satisfied their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations.

134. Defendant engaged in the above-described actionable statements and/or omissions and/or concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiff and Class members rely upon such concealments, suppressions and omissions.

135. Defendant has and continues to have a duty to inform Plaintiff and Class members that their alleged Stop-Arm Violations were legally insufficient and that the municipality failed to satisfy their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations.

136. Based upon Defendant's false representations and/or omissions and/or concealments of these material facts, Defendant induced Plaintiff and Class members to rely upon Defendant's misrepresentations and/or omissions and to remit payment and associated fees for legally insufficient alleged Stop-Arm Violations.

137. Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally insufficient alleged Stop-Arm Violations.

25

Case 1:24-cv-00113-ER   Document 1-1   Filed 01/05/24   Page 29 of 95

138.   As a result of Defendant's deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT III NEGLIGENT MISREPRESENTATION

139.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

140.   At all relevant times, Defendant falsely represented that Plaintiff's and Class members' alleged Stop-Arm Violations were legally sufficient, and that the municipalities satisfied their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations.

141.   At the time Defendant made these representations to Plaintiff and Class members, Defendant should have known that these representations were false or that Defendant made them without knowledge of their truth or veracity.

142.   Defendant had, and continue to have, a duty to inform Plaintiff and Class members that their alleged Stop-Arm Violations were legally insufficient, and that the municipalities failed to satisfy their burden of establishing Plaintiff's and Class members' prima facie guilt as to the alleged violations.

143.   Plaintiff and Class members' alleged Stop-arm Violations were legally insufficient, and that Defendants failed to satisfy their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations is material information that Defendant had, and continue to have, a duty to disclose to those remitting payment and/or associated fees for the alleged violations.

144.   Based upon Defendant's negligent misrepresentations and/or omissions and/or concealments of these material facts, Defendant induced Plaintiff and Class members to

26

rely upon its misrepresentations and/or omissions and to remit payment and associated fees for legally insufficient alleged Stop-Arm Violations.

145. Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally insufficient alleged Stop-arm Violations.

146. As a result of Defendant's deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## **COUNT IV GBL § 349**

147. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

148. Defendant engaged in deceptive acts and practices representing to the public that they had sufficient evidence to allege a violation of 1174-a when they knew they had insufficient evidence.

149. The deception was material because people would reasonably rely on this representation and pay the fine under the false assumption that the Defendant has sufficient evidence to allege a violation of 1174-a.

150. This reliance was reasonable because Defendant is a large corporation and is contracted with the State.

151. Plaintiff and Class Members were injured by Defendant's deceptive acts because they agreed to pay the fines in reliance on the Defendant's representation that there was sufficient evidence to prove a violation.

27

152.   Plaintiff and Class Members would not have paid the fine had they known that Defendant did not have sufficient evidence to prove a violation.

### COUNT IX DECLARATORY JUDGMENT PURSANT TO CPLR §3001

153.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

154.   Plaintiff seeks declaratory judgment to resolve the matter of whether practices of Defendant which entail the issuance of the NOLs as described above, where there is insufficient evidence to support the violations of VTL 1174-a are in contravention of the statute and constitute a violation of Plaintiff and Class members' rights.

155.   An actual case or justiciable controversy exists regarding the legality of these practices as Defendant continues to issue these NOLs which are legally insufficient.

156.   By reason of the foregoing, Plaintiff and Class members are entitled to declaratory judgment declaring that the practices complained of herein are unlawful under the law.


### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment:

(1) Declare that the practices complained of herein are unlawful under law;

(2) Certify this action as a class action pursuant to CPLR 901 et seq.;

(3) Designate Plaintiff as representative of the Class;

(4) Designate Plaintiff's counsel as counsel of record for the Class;

(5) Determine the damages sustained by Plaintiff and the Class as a result of Defendant's unlawful conduct, and award those damages against Defendant and in favor of the Plaintiff and the Class, plus such pre-judgment and post-judgment interest as may be allowed;

28

(6) Award Plaintiff and the class any applicable statutory damages;

(7) Award Plaintiff and the Class any and all other applicable damages;

(8) Award Plaintiff and the Class their reasonable attorneys' fees and costs; and

(9) Grant Plaintiff and the Class such other and further relief that the Court deems just and proper.

**29**

FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM
NYSCEF DOC. NO. 2
Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 33 of 95

INDEX NO. 655887/2023
RECEIVED NYSCEF: 11/29/2023

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: Brooklyn, New York

November 26, 2023

Respectfully Submitted,

Aron Law, PLLC

By: *Aviva Y. Horowitz*

Aviva Y. Horowitz, Esq.
*Of Counsel* to Aron Law PLLC
Attorneys for Sarah Morgulis
3692 Bedford Avenue, Suite P2
Brooklyn, New York 11229
Phone (718) 635-9500
Aviva.aronlaw@gmail.com

30

FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM
NYSCEF DOC. NO. 2    Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 34 of 95

INDEX NO. 655887/2023
RECEIVED NYSCEF: 11/29/2023

## VERIFICATION

STATE OF NEW YORK    )
                     ) SS:

COUNTY OF Nassau )

      Sarah Morgulis, being duly sworn, deposes and says under penalty of perjury: affirms the

following under penalty of perjury:

 I have read the annexed Verified Class Action Complaint. Based on my personal knowledge,

and on information obtained from my records, the information contained herein is true to the best

of my knowledge, information, and belief.

                                            _____
                                            Sarah Morgulis

Sworn to before me this
26 day of November, 2023.

_____
Notary Public

JONAH H. BLUMENTHAL
NOTARY PUBLIC, State of New York
No. 01BL6295725
Qualified in Nassau County
Commi...

JONAH H. BLUMENTHAL
NOTARY PUBLIC, State of New York
No. 01BL6295725
Qualified in Nassau County
Commission Expires January 06, 20 26

31

# MASTER AGREEMENT

## between

## BUSPATROL AMERICA, LLC

## and

## COUNTY OF DUTCHESS

## for a

## SCHOOL BUS STOP ARM ENFORCEMENT PROGRAM

This Master Agreement (the "Agreement") is hereby made and entered into by and between BusPatrol America, LLC with its principal place of business at 8540 Cinder Bed Road, Suite 400, Lorton, VA 22079 ("BusPatrol" or "Contractor"), and County of Dutchess, a municipal corporation with its principal offices located at 22 Market Street, Poughkeepsie, NY 12601 ("County").

## RECITALS

**WHEREAS** on August 6, 2019, the Governor of the State of New York signed into law amendments to the New York Vehicle and Traffic Law that authorize a New York county, city, town or village, by local law or ordinance, to install and operate photo violation monitoring systems on school buses for the purpose of recording violations; and

**WHEREAS** pursuant to Section 1174-a of the New York Vehicle and Traffic Law, the governing body of a county, city, town or village located within a school district is authorized and empowered to adopt and amend a local law or ordinance establishing a demonstration program imposing monetary liability on the owner of a vehicle for failure of an operator thereof to comply with section eleven hundred seventy-four of the Vehicle and Traffic Law when meeting a school bus marked and equipped as provided in subdivisions twenty and twenty-one-c of section three hundred seventy-five of this chapter and operated in such county, city, town or village, in accordance with the provisions of such Section 1174-a; and

**WHEREAS** pursuant to and, in accordance with, such Section 1174-a, the Dutchess County Legislature on January 2, 2020, adopted Local Law No. 1 of 2020 ("Local Law"), "A LOCAL LAW ESTABLISHING A DEMONSTRATION PROGRAM IMPOSING OWNER LIABILITY FOR FAILURE OF AN OPERATOR TO STOP FOR A SCHOOL BUS DISPLAYING A RED VISUAL SIGNAL AND STOP-ARM," authorizing the County to install and operate school bus photo violation monitoring systems on school buses within the County;

**WHEREAS** the County has entered into or will enter into agreements with individual school districts within the County authorizing the County to contract with BusPatrol to

1
**CONFIDENTIAL**

install camera systems on school buses by such school districts, in order to use video monitoring of vehicles passing school buses to impose civil or other penalties on vehicle owners for violating any of the aforesaid provisions of law;

**WHEREAS** the Local Law further requires that vehicle owners who illegally overtake or pass stopped school buses are issued a notice of liability with a fine amount determined in accordance with the applicable law;

**WHEREAS** pursuant to and, in accordance with Section 1174-a, the Local Law establishes a fine of $250 for a first violation, $275 for a second violation committed within 18 months of the first violation, $300 for a third violation or subsequent violation committed within 18 months of the first violation, and an additional $25 penalty for each violation for the failure to respond to a notice of liability within the prescribed time period;

**WHEREAS** the installation of school bus monitoring cameras on school buses deters vehicle owners from overtaking and passing stopped school buses and reduces the incidence of possible injuries to students when riding school buses;

**WHEREAS** BusPatrol is able to provide an innovative, turn-key, and comprehensive school bus camera system to protect students when riding school buses on customary routes;

**WHEREAS** the County represents that it has the authority, in accordance with the Local Law, to enter into this Master Agreement with BusPatrol on behalf of School Districts within the County, to establish the terms and conditions upon which School Districts may elect to allow BusPatrol to install, maintain and operate school bus photo monitoring systems within such School Districts, and does hereby award such Master Agreement to BusPatrol;

**WHEREAS** pursuant to the Local Law, County has authorized BusPatrol to process violations as authorized by such Section 1174-a;

**WHEREAS** County has reviewed the business and financial terms of this Agreement and confirms that the said terms and conditions are beneficial to the public interest and enhanced safety and security for the children and community at large; and

**NOW THEREFORE,** in consideration of the foregoing recitals, which are expressly incorporated herein, the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, County and BUSPATROL agree as follows:

The foregoing recitals are true and correct, and form an integral part of this Agreement and are contractual.

**CONFIDENTIAL**

# AGREEMENT

**1.0    DEFINITIONS.** In this Agreement, the words and phrases below shall have the following meanings:

1.1.    "BusPatrol System" means, collectively, (a) all of the External Enforcement Cameras plus other Equipment necessary to operate a school bus photo violation monitoring system, as described in Exhibit A; plus (b) the optional Internal Non-Enforcement Cameras and Equipment necessary to provide an internal safety monitoring system, if ordered by a Participating School District, as also described in Exhibit A.

1.2.    "BusPatrol Marks" means all trademarks registered in the name of BusPatrol or any of its affiliates, such other trademarks as are used by BusPatrol or any of its affiliates on or in relation to school bus safety at any time during the Term of this Agreement, service marks, trade names, logos, brands and other marks owned by BusPatrol, and all modifications or adaptations of any of the foregoing.

1.3.    "BusPatrol Proprietary or Confidential Information" means, with respect to BusPatrol and subject to Section 87 of New York Public Officers Law, any systems, technology and software, information, matter or thing of a secret, confidential or private nature, is acknowledged, agreed to and identified as "Confidential", which is connected with BusPatrol's business or methods of operation or concerning any of BusPatrol's suppliers, licensors, licensees, or others with whom BusPatrol has a business relationship, and which has current or potential value to BusPatrol or the unauthorized disclosure of which could be detrimental to BusPatrol including, but not limited to:

1.3.1.    Matters of a business nature including, but not limited to: information relating to development plans, costs, finances, marketing plans, data, procedures, business opportunities, marketing methods, plans and strategies, the costs of construction, installation, materials or components, the prices BusPatrol obtains or has obtained from its clients, or at which BusPatrol sells or has sold its services; and

1.3.2.    Matters of a technical nature including, but not limited to: product information, trade secrets, know-how, formulae, innovations, inventions, devices, discoveries, techniques, formats, processes, methods, specifications, designs, patterns, schematics, data, access or security codes, compilations of information, test results and research and development projects. For purposes of this Agreement, the term "trade secrets" shall mean the broadest and most inclusive interpretation of trade secrets.

1.3.3.    Notwithstanding the foregoing, Confidential Information will not include information that (a) was generally available to the public or otherwise part of the public domain at the time of its disclosure, (b)

3
**CONFIDENTIAL**

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 38 of 95

became generally available to the public or otherwise part of the public domain after its disclosure and other than through any act or omission by any party hereto in breach of this Agreement, (c) was subsequently lawfully disclosed to the disclosing party by a person other than a party hereto, (d) was required by the disclosure under section 87 of the New York Public Officers Law or a court of competent jurisdiction to be described, provided that BusPatrol shall be provided notice and an opportunity to object to any such disclosure in accordance with applicable law, or (e) was required by applicable state law to be disclosed.

1.4.  "County Enforcement Technician" means an individual (or individuals) employed by the County who, upon being notified by BusPatrol, shall upon notification review data provided by BusPatrol, and upon review either certify or deny whether a violation has occurred and then return that information to BusPatrol for the issuance of a notice of violation.

1.5.  "Effective Date" means the date this Agreement is signed by all parties.

1.6.  "Equipment" includes any and all cameras, sensors, equipment, components, products, software and other tangible and intangible property relating to the BusPatrol System(s).

1.7.  "Intellectual Property" means, with respect to any person, any and all now known or hereafter known tangible and intangible (a) rights associated with works of authorship throughout the world including, but not limited to, copyrights, moral rights and mask-works, (b) trademark and trade name rights and similar rights, (c) trade secrets rights, (d) patents, designs, algorithms and other industrial property rights, (e) all other intellectual and industrial property rights of every kind and nature throughout the universe and however designated, whether arising by operation of law, contract, license, or otherwise, and (f) all registrations, initial applications, renewals, extensions, continuations, divisions or reissues hereof now or hereafter in force (including any rights in any of the foregoing) of such person.

1.8.  "Notice of Violation" means the notice of a School Bus Stop-Arm Violation, which is mailed or otherwise delivered by BusPatrol or its designated agent to the vehicle owner in respect to each School Bus Stop-Arm Violation.

1.9.  "Other Confidential or Proprietary Information" means, with respect to any person, any written or tangible property owned or used by such person in connection with such person's business, whether or not such property is copyrightable or also qualifies as Confidential Information including, without limitation, products, samples, Equipment, files, lists, books, notebooks, records, documents, memoranda, reports, patterns, schematics, compilations, designs, drawings, data, test results, contracts, agreements, literature, correspondence, spreadsheets, computer programs and software, computer print outs, other written and graphic records and the like, whether originals, copies, duplicates or summaries

4
**CONFIDENTIAL**

thereof, affecting or relating to the business of such person, including financial statements, budgets, projections and invoices.

1.10. "Participating Municipality" means a city, town or village in which one or more Participating School District(s) is located.

1.11. "Participating School District" means a School District located within the County of Dutchess that has entered into a formal, binding agreement with the County of Dutchess, in accordance with County Local Law No. 1 of 2020, to authorize the County to contract with BusPatrol for the installation, maintenance and use of school bus violation monitoring systems on school buses. Each Participating School District will execute an "Opt-In Agreement," as provided for in Exhibit C, documenting their execution of a formal binding agreement with the County, and identifying, at a minimum, (1) total number of buses in the District to be outfitted, and (2) agreed-upon installation start date.

1.12. "Potential Violation" means a potential School Bus Stop-Arm Violation, which is documented in Violation Data that is subject to review and determination by the County Enforcement Technician in accordance with the Law.

1.13. "School Bus" means any school bus owned and operated by a Participating School District or privately owned and operated for compensation under contract with such district.

1.14. "School Bus Stop Arm Program" means the administration, processes, and procedures by which the School Bus Stop Arm Violations are recorded, monitored, identified, processed, approved, distributed, enforced, collected, reported, adjudicated, appealed, and otherwise managed by BusPatrol, the County and each Participating School District and Participating Municipality.

1.15. "School Bus Stop Arm Violation" (also sometimes "Violation") means a violation of the Law for which authorization to issue a Notice of Violation is given by the County for illegally passing a stopped school bus that has its bus stop arm extended while loading and unloading students.

1.16. "Trial Period" means the first thirty (30) day period in which a school bus photo violation monitoring system is in operation in any Participating School District anywhere within the County pursuant to the provisions of the Local Law. During the Trial Period, all owners of motor vehicles who would otherwise be issued a Notice of Violation shall be issued a Written Warning in lieu thereof.

1.17. "Violation Data" means all electronic data collected by the BusPatrol System that contains information, including but is not limited to, pictures, video, GPS location, date, and time of Potential Violations, which is subject to review by a Law Enforcement Officer for determination of School Bus Stop-Arm Violations.

**CONFIDENTIAL**

1.18.   "Written Warning" means the notice of a School Bus Stop-Arm Violation, which is mailed or otherwise delivered by BusPatrol or its designated agent to the vehicle owner in respect to each School Bus Stop-Arm Violation during the Trial Period for which the owner shall not be held liable in accordance with the Local Law.

## 2.0    TERM

This Agreement shall commence on the first day of the first month following the completion of the Trial Period and shall terminate on December 1, 2024, unless otherwise terminated as set forth herein  (the "Initial Term"). Upon expiration of the Initial Term, this Agreement may be extended for additional periods of one year each, not exceeding in total five (5) years, upon such terms and conditions as may be agreed between the parties as long as New York State has extended or eliminated the provisions of the enabling legislation as contained in Section 1174-a of the Vehicle and Traffic Law.

## 3.0    INDEPENDENT CONTRACTOR STATUS

BusPatrol agrees that it is an independent contractor and that it shall not hold itself out to be an employee or officer of the County, and that therefore, neither federal, state nor local income tax nor payroll tax of any kind shall be withheld or paid by the County on behalf of BusPatrol or its employees; that BusPatrol shall not be eligible for, and shall not be entitled to participate in, any employee pension, health, retirement or other fringe benefit plan of the County; that BusPatrol shall have no workers' compensation or disability coverage through the County for BusPatrol or its employees, and that BusPatrol shall not be entitled to make any claim against the County for these or any other rights or privileges of an officer or employee of the County.

## 4.0    SCOPE OF SERVICES/RESPONSIBILITIES OF THE PARTIES

A.    **RESPONSIBILITIES OF BUSPATROL.** BusPatrol agrees to provide the following services, as more fully described in Exhibit A:

i.    Install, operate and maintain the Equipment on school buses at no charge to the County except as provided for in Article 5 of this Contract.  The specific Equipment to be implemented for each Participating School District shall be specified on the District's Opt-In Agreement. Upon termination of this Agreement, BusPatrol shall remove any and all camera equipment installed in connection with BusPatrol's performance of its obligations under this Agreement, including, but not limited to, camera systems.

ii.    Work with and assist the County to educate School Districts within the County regarding the school bus photo violation monitoring services available to the School Districts pursuant to this Agreement;

iii.    Repair or replace any part of the Equipment throughout the life of the contract, at no additional charge to the County except for the Revenue Share and Technology Fee payments provided for in Article 5, as necessary to provide for the continued operation of the BusPatrol System;

iv.    Exercise best commercial efforts to equip each Participating School District's entire fleet of buses with the BusPatrol System, in each case to the extent commercially viable and mutually agreed by BusPatrol and the District.  The order of such installation of the BusPatrol Systems, if any, on District school buses will be determined by BusPatrol, in its reasonable discretion, which determination will be documented in a detailed Implementation Plan to be developed by BusPatrol based on various methods of research or survey data used by BusPatrol to determine the priority of District school bus routes that have a need for the installation of the BusPatrol Systems;

v.    Provide personnel to train appropriate personnel from the County, and/or Participating School Districts on the proper use of the Equipment, including training necessary for authorized County personnel to access and review Violation Data;

vi.    Provide designated County Enforcement Technician with access to Violation Data to identify and issue Notices of Violations for School Bus Stop- Arm Violations in accordance with applicable provisions of the Law;

vii.    Notify vehicle owners in writing of School Bus Stop-Arm Violations and any delinquencies and penalties in accordance with applicable provisions of the Law;

viii.    Issue Notices of Violation and collect any civil fines, penalties, and costs, including credit card processing fees, assessed under the law by any lawful means, including utilizing debt resolution agencies for delinquent violators, and distribute such fines, penalties, and costs in accordance with applicable provisions of the law and this Agreement;

ix.    Provide a web-based system for processing payments from Violations on behalf of Participating Municipalities through the Alertbus web portal using BusPatrol's PCI compliant systems and 3rd party payment processor, to be disbursed in accordance with Article 5;

7
**CONFIDENTIAL**

x.      Provide monthly reports to the County as set forth in Section 1174-a(m) of the New York Vehicle and Traffic Law;

xi.     Provide video footage, recorded images and other information required for purposes of enforcement of the law and in accordance with or required by the provisions of Section 1174-a. Such footage, images and other information shall not be made available to the Participating School District, but shall be forwarded to the County Enforcement Technician in accordance with the procedures adopted by the County to determine if there has been a violation and to enforce the penalties with respect thereto;

xii.    Install Internal Non-Enforcement Cameras and Equipment, if selected by a Participating School District, at the same time that External Stop Arm Enforcement Cameras are installed.  Video footage, recorded images and other information generated through such Internal Non-Enforcement Cameras and Equipment shall be made available only to the Participating School District, shall not be made available to the County Enforcement Technician or any third party except as explicitly authorized by the Participating School District, and shall be destroyed within 90 days unless a longer period is authorized by Participating School District or required by law.  BusPatrol shall be solely responsible for the installation and operation of Internal Enforcement Cameras and Equipment, and shall defend and hold County harmless from any claim or liability relating to the installation or operation of Internal Non-Enforcement Cameras and Equipment;

xiii.   Appoint a Program Manager to manage the implementation and operation of the BusPatrol System, and establish a local office within the County to process evidence packages in connection with the operation of the stop arm enforcement program within the County, and to provide local field support to resolve issues and answer questions from County and Participating School Districts regarding the installation and operation of the BusPatrol Equipment installed on school buses;

xiv.    Assist County with public information content and outreach campaign strategies;

xv.     Comply with all applicable laws, including any laws relating to data privacy, or any laws applicable to its conduct with respect to the school bus photo violation monitoring program, including destroying any photographs, microphotographs, videotapes, and other

8
CONFIDENTIAL

recorded images and data 90 days after the alleged imposition of liability if a notice of liability is not issued for such alleged imposition of liability or upon final disposition of a notice of liability; and

xvi.  Provide information and other reasonable assistance to Participating Municipalities as necessary for Participating Municipalities to adjudicate contested Violations or collect revenue from Violations.

**B.  RESPONSIBILITIES OF THE COUNTY.** The County agrees to:

i.  Assist BusPatrol in the facilitation of its agreements with the Participating School Districts within the County;

ii.  Require that any School District within the County which enters into an agreement, in accordance with the Local Law authorizes the County to contract with BusPatrol to install, operate and maintain Equipment on buses owned or operated by such School Districts for the purpose of operating the school bus photo monitoring system pursuant to the Law within such Participating School District.  Such agreements will be documented using the "Opt-In Agreement" form provided in Exhibit C;

iii.  Promptly review and approve all BusPatrol deliverables, including reports;

iv.  Assist BusPatrol with resolving technical issues relating to BusPatrol's ability to access any County information systems that interface with the BusPatrol System;

iii.  In accordance with the Local Law, the County, acting by and through the Commissioner of the Department of Public Works (DPW), shall undertake the installation of signage provided by BusPatrol in conformance with standards established in the Manual of Uniform Traffic Control Devices. Such signage shall be installed at each roadway entrance of the jurisdictional boundaries of the County giving notice that school bus photo violation monitoring systems are used to enforce restrictions on vehicles violating Section 1174-a of the New York Vehicle and Traffic Law. For the purposes of this paragraph, the term "roadway" shall not include state expressway routes or state interstate routes but shall include controlled-access highway exit ramps that enter the boundaries of the County;

iv.  Review and approve BusPatrol invoices for payment, in accordance with the Payment provisions in Article 5;

9
CONFIDENTIAL

v.       Arrange for County Enforcement Technician to review evidence packages and approve or disapprove potential notices of violation;

vi.     Assist BusPatrol in applying for and obtaining an exemption from search fees under Section 202 of the New York State Vehicle and Traffic Law, in order to allow BusPatrol to request searches of records from the New York State Department of Motor Vehicles (DMV) in connection with the processing and issuance of notices of violation through the BusPatrol System; and

vii.    As required by Section 1174-a of the New York Vehicle and Traffic Law, County shall adopt and enforce measures to protect the privacy of drivers, passengers, pedestrians and cyclists whose identity and identifying information may be captured by a school bus photo violation monitoring device.

## C.    RESPONSIBILITIES OF PARTICIPATING SCHOOL DISTRICTS.

BusPatrol shall only be obligated to install and operate the school bus photo violation monitoring system within a Participating School District that has executed an Opt-In Agreement documenting such Participating School District's agreement to undertake the following responsibilities:

i.       Provide BusPatrol with access to buses, along with other reasonable assistance necessary for BusPatrol to install, operate and maintain Equipment on buses owned or operated by such Participating School Districts;

ii.     Provide BusPatrol with electronic copies of school bus routing information, in Excel or CSV format if possible, for the purpose of identifying high risk routes and prioritizing an installation schedule;

iii.    Use best efforts to maintain the routes identified in Subsection 4(C)(ii);

iv.    If the Participating School District does not own and operate any buses in its district, Participating School District shall be obligated through the Opt-In Agreement to enter into an agreement with the third-party owner(s) and operator(s) of those buses, and such agreement shall require compliance with the terms of this Agreement and the Opt-In Agreement. If the Participating School District does not enter into such agreement with the third-party owner(s) and operator(s), or any third-party owner/operator fails to comply with the terms of this Agreement or the Opt-In Agreement, the County, at its option, may continue to adhere to the Opt-In

**CONFIDENTIAL**

Agreement with application to those buses owned exclusively by the Participating School District;

v.      Properly store, secure, maintain, and repair the school buses when not in use to reasonably safeguard the BusPatrol System;

vi.     Appoint a designated point of contact who shall be authorized to act on behalf of the Participating School District on all matters relating to the Opt-In Agreement and District's use of and participation in the school bus photo violation monitoring systems;

vii.    Ensure proper handling and custody of any recorded images. Participating School Districts are prohibited from accessing school bus stop-arm violation recorded images; and

vii.    As required by Local Law No. 1 of 2020, photographs, microphotographs, videotapes, other recorded images and data produced by school bus photo violation monitoring systems shall be destroyed (a) ninety days after the date of the alleged imposition of liability if a notice of liability is not issued for such alleged imposition of liability pursuant to the Local Law or (b) upon final disposition of a notice of liability issued pursuant to the Local Law.

## 5.0  PAYMENT.

The parties agree that all amounts to be paid to BusPatrol for the performance of the services called for in this Contract will be paid from revenues collected by County or Participating Municipalities from the civil penalties and fines collected from Violations generated through BusPatrol System, which will be processed and disbursed as follows:

5.1     Transfer of Funds to Participating Municipalities.  On a daily basis, all civil penalties for Violations that are processed through the BusPatrol System, not including any credit card processing fees collected from a violator, will be transferred to a designated bank account established by the local court or other designated entity within the Participating Municipality where the Violation occurred.

5.2     Transfer of Revenues to State Comptroller.  Each Participating Municipality shall be responsible for transferring the civil penalties collected from Violations to the New York State Comptroller within the first ten days of the month following collection, as required by Section 1803 of the New York Vehicle and Traffic Law.  County and Contractor agree to work with the Participating Municipalities to provide any information or other reasonable assistance necessary to effect the transfer of funds to the State Comptroller, including preparing any statement in such form and detail as required by the State Comptroller in accordance with Section 1803.

CONFIDENTIAL

Case 1:24-cv-00113-ER   Document 1-1   Filed 01/05/24   Page 46 of 95

5.3 <u>Disbursement of Revenue to County and Participating Municipalities.</u>  In accordance with Section 1803 of the New York Vehicle and Traffic Law, 90% of the fines and penalties collected from Violations will be transferred from the State Comptroller to the County, and 10% of the fines and penalties collected from Violations will be paid to each Participating Municipality where the Violation was issued.  All amounts to be paid to BusPatrol shall be paid from County's 90% share of fines and penalties received from the State Comptroller.

5.4 <u>Program Administrative Expense.</u>  On the first day of each month, County shall invoice Contractor for reimbursement of a fixed monthly amount equal to the agreed-upon Program Administrative Expense, as established by the Parties in accordance with this Article 5.4.  Contractor shall advance funds to the County for the Program Administrative Expense within 15 calendar days of receipt of a valid invoice, with the understanding that Contractor will ultimately be reimbursed for all amounts advanced to the County for Program Administrative Expenses, to be paid to Contractor out of County's Revenue Share as provided for in Article 5.5 below.

5.4.1 For purposes of this Article 5.4, <u>"Program Administrative Expense"</u> equals an agreed-upon fixed monthly amount  to reimburse County for the salary and benefits of one (1) full time County employee to directly administer and support the Stop Arm Program. In addition, Program Administrative Expense will include any expense incurred by the County for labor or materials resulting from the administration of the Stop Arm Program, which will be documented by the County and mutually agreed upon with Contractor.

5.4.2 The County agrees to confer with Contractor regarding the required level of administrative support needed to carry out the Stop Arm Program, and to determine whether Contractor can provide an alternative means of providing the required administrative support, at the Contractor's expense.

5.4.3 The parties will also confer to adjust the amount of the Program Administrative Expense established in this Article 5.4 in the event of any changes in the level of administrative support required, including but not limited to changes in the number of buses deployed or volume of Violations issued, or any material increase or decrease in County's actual cost of administering or supporting the Stop Arm Program.

5.4.4 County agrees to comply with any reasonable request by Contractor for supporting documentation supporting such Program Administrative Expense.

**CONFIDENTIAL**

5.5   <u>Payment.</u>   County shall use its 90% share of fines and penalties received from the Comptroller to pay the following amounts to compensate Contractor for the installation, maintenance and use of the BusPatrol Systems in accordance with Section 1174-a(1-b) of the New York Vehicle and Traffic Law:

5.5.1   <u>BusPatrol Technology Fees.</u>   County shall pay Contractor a fixed fee of $185.00 per bus per month (the "BusPatrol Technology Fee") for each school bus that has been equipped with optional Internal Non-Enforcement Cameras and Equipment, if requested by a Participating School District in an Opt-In Agreement, to compensate Contractor for the up-front capital expenditures and operational costs to install, operate and maintain such Internal Non-Enforcement Cameras and Equipment.

5.5.1.1      Technology Fees shall be charged monthly for each school bus that has been equipped with Internal Non-Enforcement Cameras and Equipment beginning on the first full month after the completion of the Trial Period.

5.5.1.2      All Technology Fees will be paid from County's 90% share of fines and penalties received from the State Comptroller.

5.5.1.3      In the event that County's 90% share of fines and penalties received from the Comptroller in a given month is insufficient to cover the total amount of Technology Fees owed to BusPatrol for that month, the balance of unpaid Technology Fees will be rolled over for payment in the following month(s) until all outstanding Technology Fees have been paid.

5.5.1.4      If at the end of the term of this Agreement (or any extension thereof) the total amount of fines and penalties from violations received by the County from the State Comptroller is insufficient to cover the total amount of Technology Fees owed to Contractor for the term of this agreement, BusPatrol will have no claim against County, Participating Municipalities or Participating School Districts for the payment of any such unpaid amounts.

5.5.2   <u>Revenue Share.</u>   After payment of any Technology Fees owed to Contractor, the remaining portion of fines and violations received by the County from the State Comptroller shall be disbursed 60% to the Contractor ("Contractor's Revenue Share") and 40% to County ("County's Revenue Share"). County's 40% Revenue Share shall first be used to reimburse Contractor for any Program Administrative Expense advanced by Contractor to the County during the previous month, with any remaining funds used by County for such other purposes as determined by County.

13
**CONFIDENTIAL**

5.5.3  <u>Reimbursement of Program Administrative Expense.</u>  County's 40% Revenue Share shall first be used to reimburse Contractor for any Program Administrative Expense advanced by Contractor to County during the previous month(s), as provided for in Article 5.4 above.

  5.5.3.1    All amounts paid to reimburse Contractor for Program Administrative Expenses shall be paid from County's 40% Revenue Share.

  5.5.3.2    In the event that County's 40% Revenue Share in a given month is insufficient to cover the total amount of Program Administrative Expense owed to Contractor for that month, the balance of unpaid Program Administrative Expense will be rolled over for payment in the following month(s) until all outstanding Program Administrative Expense has been paid.

  5.5.3.3    If at the end of the term of this Agreement (or any extension thereof) the total amount of County's Revenue Share payments received by County are insufficient to reimburse Contractor for all Program Administrative Expenses advanced by Contractor during the term of this agreement, Contractor will have no claim against County, Participating Municipalities or Participating School Districts for the payment of any such unreimbursed amounts.

5.6  <u>Monthly Reporting Of Program Revenues.</u>

  5.6.1  <u>Contractor's Report.</u>  Within 5 calendar days following the end of each month, BusPatrol shall submit a report (the "Contractor's Revenue Report") to the County to include the following supporting information:

  5.6.1.1    Total number of Violations processed during the previous month throughout the entire County and in each Participating Municipality;

  5.6.1.2    Total amount of gross revenue from fines and penalties from Violations transferred to each Participating Municipality during the previous month;

  5.6.1.3    Total amount of agreed-upon Program Administrative Expense advanced by Contractor to County during the previous month, as well as any unpaid Program Administrative Expense from prior month(s);

  5.6.1.4    Total number of buses outfitted with External Enforcement Cameras, throughout the entire County and in each Participating Municipality;

**CONFIDENTIAL**

5.6.1.5    Total number of buses outfitted with Internal Non-Enforcement Cameras and Equipment, throughout the entire County and in each Participating Municipality;

5.6.1.6    Total amount of Technology Fees to be paid to BusPatrol, including any unpaid Technology Fees from the current or prior months to be deducted from future revenue;

5.6.1.7    Total amount of BusPatrol's 60% revenue share payment and County's 40% revenue share payment.

5.6.2    <u>County's Report.</u> Within 5 days following County's receipt of funds from the State Comptroller, County shall provide Contractor a report documenting the total value of County's 90% share of fines and penalties received by County from the State Comptroller during the previous month in accordance with Section 1803 and this Agreement.

5.6.3    The Parties agree to work in good faith to reconcile any discrepancies in the amounts payable to any Party that are identified in the monthly Revenue Reconciliation Report.

5.7    <u>Invoicing and Payment</u>

5.7.1    Within 10 calendar days after the end of each month, BusPatrol will submit an invoice to County for (a) Technology Fees, (b) 60% Revenue Share payment and (c) reimbursement of Program Administrative Expense.

5.7.2    County shall pay Contractor's invoice within 14 calendar days of County's receipt of County's 90% share of fines and penalties from the State Comptroller.

5.7.3    All amounts payable under this Agreement shall be paid from the County's 90% share of fines and penalties collected from Violations received from the State Comptroller.  In no event shall the County bear any expense associated with the administration of this program if revenues received by County from Violations over the entire term of this agreement (including any extension thereof) are insufficient to cover such expense.

5.7.4    Exhibit B illustrates the manner in which the monthly revenue reconciliation process and disbursement of funds will be performed.

## 6.0    LICENSE AND RESERVATION OF RIGHTS.

A.    Reservation of Rights.

County and BusPatrol hereby acknowledge and agree to the following:

i.    BusPatrol is the sole and exclusive owner of the BusPatrol System, Equipment, the BusPatrol Marks, all Intellectual Property, trade

15
**CONFIDENTIAL**

secrets, software, including any updates thereto, arising from or relating to the BusPatrol System, and any and all related Equipment;

ii.  Neither the County nor any Participating School District has or makes any claim to any right, title or interest in any of the foregoing, except as specifically granted or authorized under this Agreement;

iii.  By reason of the exercise of any such rights or interests of County or a Participating School District pursuant to this Agreement, neither the County nor any Participating School District shall gain any additional right, title or interest therein.

B.  Restricted Use.

The County hereby covenants and agrees that it shall not:

i.  use the BusPatrol System, BusPatrol Proprietary or Confidential Information, Equipment or Intellectual Property for any purpose other than BusPatrol's operation of the school bus photo violation monitoring systems during the term of this Agreement, on school buses owned or operated by Participating School Districts;

ii.  disclose the BusPatrol System, BusPatrol Proprietary or Confidential Information, Equipment or Intellectual Property to any third parties without the prior express written permission of BusPatrol;

iii.  make any modifications to the BusPatrol System including, but not limited to, any Equipment;

iv.  alter, remove or tamper with any BusPatrol Marks;

v.  use any of the BusPatrol Marks in any way which might prejudice their distinctiveness, validity or the goodwill of BusPatrol therein;

vi.  use any trademarks or other marks other than the BusPatrol Marks in connection with the County's use of the BusPatrol System pursuant to the terms of this Agreement without first obtaining the prior consent of BusPatrol; or

vii.  disassemble, de-compile or otherwise perform any type of reverse engineering to the BusPatrol System including, but not limited to, any Equipment, or to any Intellectual Property or Proprietary

CONFIDENTIAL

Property of BusPatrol, or cause any other person to do any of the foregoing.

C.      Protection of Rights.

BusPatrol shall have the right to take whatever action it deems necessary or desirable to protect its intellectual property rights, remedy or prevent the infringement of any Intellectual Property of BusPatrol including, without limitation, the filing of applications to register as trademarks in any jurisdiction any of the BusPatrol Marks, the filing of patent applications for any of the Intellectual Property of BusPatrol, and making any other applications or filings with appropriate Governmental Authorities. The County shall not take any action to remedy or prevent such infringing activities, and shall not in its own name make any registrations or filings with respect to any of the BusPatrol Marks or the Intellectual Property of BusPatrol without the prior written consent of BusPatrol.

D.      Infringement.

The County shall use its reasonable best efforts to give BusPatrol prompt notice of any activities or threatened activities of any person of which it becomes aware that infringes or violates or may infringe or violate the BusPatrol Marks or any of BusPatrol's Intellectual Property or that constitute a misappropriation of trade secrets or acts of unfair competition that might dilute, damage or destroy any of the BusPatrol Marks or any other Intellectual Property of BusPatrol. BusPatrol shall have the exclusive right, but not the obligation, to act to enforce such rights and to make settlements with respect thereto. In the event that BusPatrol commences any enforcement action under this Article 6(D), then the County shall render to BusPatrol such reasonable cooperation and assistance as is reasonably requested by BusPatrol from time to time, provided that BusPatrol shall reimburse the County for any reasonable costs incurred by the County or paid to third parties.

E.      Infringing Use.

The County shall give BusPatrol prompt written notice of any action or claim, whether threatened or pending, against the County alleging that the BusPatrol Marks, or any other Intellectual Property of BusPatrol, infringes or violates any patent, trademark, copyright, trade secret or other Intellectual Property of any other person, and the County shall render to BusPatrol such reasonable cooperation and assistance as is reasonably requested by BusPatrol in the defense thereof, provided that BusPatrol shall reimburse the County for any reasonable costs incurred in providing such cooperation and assistance incurred or paid to third parties. If such a claim is made and BusPatrol determines, in the exercise of its sole

CONFIDENTIAL

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 52 of 95

discretion, that an infringement may exist, BusPatrol shall have the right, but not the obligation, to procure for the County the right to keep using the allegedly infringing items, modify them to avoid the alleged infringement, or replace them with non-infringing items.

## 7.0    TERMINATION

A.    Termination of Agreement for Cause.

Either the County or BusPatrol shall have the right to terminate this Agreement by written notice to the other if:

i.    state statutes are materially amended as to prohibit or negatively affect the operation of the school bus photo violation monitoring program or if any laws are enacted that would substantially change or terminate the ability under the Agreement to obtain fines or charges for violations of law, which would eliminate the source for financing the school bus photo violation monitoring program;

ii.    a final decision (subsequent to any appeals that may be filed) by a court of competent jurisdiction declares that the results from the BusPatrol System are inadmissible in evidence; or

iii.    the other party commits any material breach of any of the provisions of this Agreement, which breach is not cured within 30 days.

BusPatrol shall have the right to terminate this Agreement immediately by written notice to the County if:

i.    the Law is revoked by lawful action of the State or County;

ii.    the civil penalty adopted by the County for school bus stop arm violations is eliminated, abated, or reduced following the Effective Date; or

iii.    the County engages or otherwise contracts with any company other than BusPatrol for a school bus stop arm monitoring program during the Term of this Agreement.

Notwithstanding any term, provision or condition contained in this Article 7 to the contrary, in the event any legislation or policy is adopted by any governing authority, at any time during the term of this Agreement, prohibiting, or terminating Stop Arm Camera programs, and in such event should County or Participating School District and BusPatrol not, within a reasonable period of time, enter into a separate service agreement then

18
**CONFIDENTIAL**

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 53 of 95

BusPatrol shall be entitled to remove or repossess its equipment upon the termination or expiration of this Agreement.

If termination is caused by a material breach, the breaching party shall be liable to the non-breaching party for any and all rights and remedies provided by law.

B.      Termination of Opt-In Agreements with Participating School Districts.

In accordance with Local Law No. 1 of 2020, an Opt-In Agreement executed by a Participating School District may be terminated by the Participating School District, the County or BusPatrol by providing 30 days prior written notice to the other parties.  In the event of such termination, Participating School District shall immediately cease use of any and all BusPatrol Equipment or Intellectual Property, and allow BusPatrol with reasonable access to buses owned or operated by the Participating School District to allow for the removal of the BusPatrol Equipment. Termination of an Opt-In Agreement will have no effect on this Agreement, or on any Opt-In Agreement with any other Participating School District.

C.      Wind-Down Provisions.

i.      In the event of termination of this Agreement, the County, each Participating School District and BusPatrol shall be relieved of any further obligations first arising following the date thereof. Either party shall have the right to remedy the cause for termination within ninety (90) calendar days (or within such other time period as the County and BusPatrol shall mutually agree, which agreement shall not be unreasonably withheld or delayed) after written notice from the non- breaching party as to such breach.

ii.     Notwithstanding Article 7.0(C)(i) of this Agreement, expiration or termination of this Agreement will not relieve either party from its obligations arising hereunder prior to the effective date of such expiration or termination.

iii.    In the event the County or BusPatrol terminates this Agreement pursuant to Section A of this Article 7.0, the County, Participating School District and BusPatrol shall agree upon a methodical and efficient schedule for removal of Equipment from the School Buses, but in no event shall BusPatrol have less than 180 calendar days following termination to complete removal of BusPatrol Equipment. Responsibility for coordination and removal of Equipment shall be that of BusPatrol.

CONFIDENTIAL

iv.　Notwithstanding any other provision of this Agreement to the contrary, the County, each Participating District and BusPatrol agree that any Notice of Violation issued as of the effective date of termination shall be administered according to the provisions of this Agreement entered into between the parties, including the provisions in Article 5 regarding payment of Technology Fees and Revenue Share Payments.

C.　The rights to terminate this Agreement within this Article 7 shall be without prejudice to any other rights or remedies of either party in respect to the breach concerned (if any) or any other breach of this Agreement.

D.　Procedures Upon Termination.

The termination of this Agreement shall not relieve either party of any liability that accrued prior to such termination. Except as set forth in Section C of this Article 7.0, upon the termination of this Agreement, all of the provisions of this Agreement shall terminate and:

i.　BusPatrol shall, within 30 days, (a) except as provided in Subsection 7.0(C) above, cease to provide services including, but not limited to, work in connection with the construction or installation activities and services in connection with the School Bus Stop Arm Program, (b) deliver to the County or Participating School District any and all Proprietary Property of such party provided to BusPatrol pursuant to this Agreement, and (c) deliver to the County a final report regarding the collection of Violation Data and the issuance of Notices of Violation in such format and for such periods as the County may reasonably request, and which final report BusPatrol shall update or supplement from time to time when and if additional Violation Data or information becomes available.

ii.　The County shall (a) immediately cease using the school bus photo violation monitoring program, accessing the BusPatrol System and using any BusPatrol Proprietary or Confidential Information, Equipment or Intellectual Property of BusPatrol and (b) promptly cause to be delivered to BusPatrol the Proprietary Property of BusPatrol provided to the County or Participating School District in this Agreement.

iii.　Unless the County and BusPatrol have agreed to enter into a new agreement relating to the  school bus photo violation monitoring program or have agreed to extend the Term of this Agreement, BusPatrol may remove any and all Equipment or other materials of BusPatrol installed in connection with BusPatrol's performance of its obligations, as required by Subsection 7.0(C).

20
**CONFIDENTIAL**

## 8.0   SURVIVAL.

A.   Notwithstanding the foregoing, each Section of the following shall survive the termination of this Agreement:

   i.   Definitions;

   ii.   License and Reservation of Rights;

   iii.   Notice;

   iv.   Indemnification and Liability;

   iv.   Choices of Laws and Venue;

   v.   Default/Cumulative Rights/Mitigation;

   vi.   Assignment;

   vii.   Confidentiality and Records; and

   viii.   Those provisions, and the rights and obligations therein, set forth in this Agreement which either by their terms state or evidence the intent of the parties that the provisions survive the expiration or termination of the Agreement, or must survive to give effect to the provisions of this Agreement.

## 9.0   NOTICE

Any notice, demand or request required or permitted to be given under this Agreement shall be deemed given if reduced to writing and delivered in person, shipped by overnight delivery by a recognized carrier such as UPS or FedEx, or deposited with the United States Post Office in the form of certified mail, postage pre-paid return receipt requested, to the party who is to receive any such notice, demand or request, at the respective address set forth below. Such notice, demand, or request shall be deemed to have been given upon actual receipt.

If to BusPatrol, to:

Jean F. Souliere
8540 Cinder Bed Road, Suite 400
Lorton, Virginia 22079
(703) 338-0208
jean@buspatrol.com

**CONFIDENTIAL**

If to the County, to:

> Dutchess County Attorney
> 22 Market Street
> Poughkeepsie, NY 12601

## 10.0  INSURANCE REQUIREMENTS

At all times during the term of this Agreement, BusPatrol and its sub-contractors, if any, shall maintain at its own cost the following insurance and shall provide proof thereof to the County, in the form of a Certificate of Insurance, prior to commencing work under this Agreement:

**Worker's Compensation** Employer's Liability (statutory limits).   In compliance with the Workers' Compensation Law of the State of New York, each contractor shall provide:

a. a certificate of insurance on an Acord form indicating proof of coverage for Worker's Compensation,  Employer's Liability, **OR**

b. a New York State Workers Compensation Notice of Compliance (Form C-105, Form U-26.3, Form SI-12 or Form SI-105.2P).

c. In the event that BusPatrol is exempt from providing coverage, it must provide a properly executed copy of the Certificate of Attestation of Exemption from NYS Workers' Compensation Board, Form CE-200.

d. A certificate of participation in a self-insurance program. The department responsible for the implementation of the Agreement will obtain verification from the Director of Risk Management for those municipalities participating in the Dutchess County Self-Insured Plan.

**Commercial General Liability** Insurance coverage including blanket contractual coverage for the operation of the program under this Agreement with limits not less than $1,000,000 per occurrence and $2,000,000 in the aggregate. This insurance shall be written on an occurrence coverage form and include bodily injury and property damage liability.   The County must be listed as additional insured. The additional insured endorsement for the Commercial General Liability insurance required above shall not contain any exclusion for bodily injury or property damage arising from completed operations.

**Automobile Liability** Insurance coverage for all owned, scheduled, hired, and non-owned vehicles with a combined single limit of liability of not less than $1,000,000.  This insurance shall include coverage for bodily injury and property damage.  The County must be listed as additional insured.

**Cyber/Network Security and Data Privacy Liability Insurance ("Cyber Policy")** of $2,000,000 per claim and annual aggregate with a Retroactive Date as defined above that covers losses arising from actual or alleged acts, errors or omissions and intentional, fraudulent or criminal acts.  Further, the policy will expressly provide, but not be limited to,  coverage for losses arising from the following:   (a) unauthorized

**CONFIDENTIAL**

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 57 of 95

use/access of computer systems (including mobile devices), servers, client's data or software; (b) defense of any regulatory action involving a breach of privacy; (c) failure to protect the confidential or proprietary information (personal and commercial information) and intellectual property from unauthorized disclosure or unauthorized access; (d) failure to adequately protect physical security of servers and systems including from cyber terrorism; (e) the costs for:  notification, whether or not required by statute, credit file or identity monitoring, identity restoration, public relations or legal experts; (f) third party liability; (g) cyber extortion and cyber terrorism; and (h) no exclusion for actual or alleged breaches of professional services agreements associated with the above.

**Excess/Umbrella Liability**, if required, with limits not less than $5,000,000 per occurrence with a $5,000,000 aggregate. The County must be included as additional insured.

All Acord form certificates of insurance must contain the following provisions:

**(A)** The commercial general liability policy must include the additional insured endorsement forms cg 2037 July 2004 edition and the cg 2010 April 2013 edition or their equivalent.

**(B)** All policies of insurance procured by BusPatrol as required under this Agreement shall list the County of Dutchess as a certificate holder and name the County of Dutchess as an additional insured on a primary and noncontributory basis. The commercial general and automobile policies are primary and noncontributory.

**(C)** The commercial general liability, auto liability and workers compensation policies must contain a waiver of subrogation in favor of the County of Dutchess.

**(D)** The umbrella/excess policy shall include follow form language over the underlying policies of insurance and must contain a waiver of subrogation in favor of the County of Dutchess.  The umbrella/excess policy shall name County of Dutchess on a primary and noncontributory basis.

**(E)** If  the workers compensation Notice of Compliance is used instead of the Acord certificate of insurance, the Notice of Compliance must indicate that a waiver of subrogation in favor of the County of Dutchess is provided.

All policies of insurance referred to above shall be underwritten by companies authorized to do business in the State of New York with an A.M.  Best financial strength rating of A- or better. In the alternative, the policies of insurance referred to above may be underwritten by Non-Admitted companies with an A.M. Best financial strength rating of A+ or higher. In addition, every policy required above shall be primary and noncontributory. Any insurance carried by the County, its officers, or its employees shall be excess and noncontributory insurance to that provided by BusPatrol.  BusPatrol and its sub-contractor(s), if any, shall be solely responsible for any deductible losses under each of the policies required above.

Payment(s) to BusPatrol may be suspended in the event BusPatrol and its sub-contractor(s), if any, fails to provide the required insurance documentation in a timely manner.

Prior to cancellation or material change in any policy, a thirty (30) day notice shall be given to the County Attorney at the address listed below:

Dutchess County Attorney
County Office Building
22 Market Street
Poughkeepsie, New York 12601

On receipt of such notice, the County shall have the option to cancel this Agreement without further expense or liability to the County, or to require BusPatrol to replace the cancelled insurance policy, or rectify any material change in the policy, so that the insurance coverage required by this paragraph is maintained continuously throughout the term of this Agreement in form and substance acceptable to the County. Failure of BusPatrol to take out or to maintain, or the taking out or the maintenance of any required insurance, shall not relieve BusPatrol from any liability under this Agreement nor shall the insurance requirements be construed to conflict with or to limit the obligations of BusPatrol concerning indemnification.

All losses of County property shall be adjusted with and made payable directly to the County.

All Certificates of Insurance shall be approved by the County's Director of Risk Management or designee prior to commencement of any work under this Agreement.

In the event that claims in excess of these amounts are filed in connection with this Agreement, the excess amount or any portion thereof may be withheld from payment due or to become due BusPatrol until BusPatrol furnishes such additional security as is determined necessary by the County.

## 11.0  <u>DEFENSE AND INDEMNIFICATION</u>.

**PROFESSIONAL SERVICES:**  For all matters arising out of the Contractor's professional services, the Contractor agrees, to the fullest extent permitted by law, to defend, indemnify and hold harmless the County, its officers, and employees against damages, liabilities and costs, including reasonable attorney's fees, to the extent caused by the negligent performance of the Contractor, or third parties under the direction or control of the Contractor, in the performance of professional services under this Agreement.

**GENERAL LIABILITY:**  For all matters other than those arising out of the Contractor's professional services (such other matters commonly referred to as "General Liability Claims"), the Contractor agrees to the fullest extent permitted by law to defend, indemnify and hold the County and its employees harmless from any and all such losses, claims, liens, demands and causes for action, including but not limited to, judgments, penalties, interest, court costs, and legal fees incurred by the County on behalf of any party, in connection with or arising directly or indirectly from this

24
**CONFIDENTIAL**

Agreement. The contractor shall investigate, handle, respond to and defend any such claims, demands or suits at his sole expense, and shall bear all other related costs and expenses even if such claims, demands or suits are groundless, false or fraudulent. This indemnification section shall survive the expiration or termination of this Agreement.

In any matter in which indemnification hereunder for either professional or non-professional services would violate Section 5-322.1 of the New York General Obligations Law or any other applicable legal prohibition, the foregoing provisions shall not be construed to indemnify the County for damage arising out of bodily injury to persons or to property caused by or resulting from the sole negligence of Dutchess County employees. The term "employee" shall include all officers, advisory board members and/or volunteers serving the County.

## 12.0 CHOICE OF LAW, VENUE.

Any dispute arising directly or indirectly out of this Agreement shall be determined pursuant to the laws of the State of New York. The parties hereby choose the New York State Supreme Court, Dutchess County as the forum for any such dispute.

## 13.0 AMENDMENTS AND CHANGES IN THE LAW

This Agreement may not be amended, modified, or supplemented unless such amendment, supplement, or modification is agreed to in writing and signed by each of BusPatrol and the County.

## 14.0 SEVERABILITY

If any provision of this Agreement shall be held unenforceable, the rest of the Agreement shall nevertheless remain in full force and effect.

## 15.0 ENTIRE AGREEMENT

The terms of this Agreement, including its attachments and exhibits, represent the final intent of the parties. Any modification, rescission or waiver of the terms of this Agreement must be in writing and executed and acknowledged by the parties with the same formalities accorded this basic Agreement.

## 16.0 BINDING EFFECT

This Agreement shall be valid and binding once it has been approved by the Dutchess County Attorney's Office, executed by the County Executive and delivered to BusPatrol at the address indicated in the introductory paragraph of this Agreement.

CONFIDENTIAL

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 60 of 95

## 17.0   DEFAULT/CUMULATIVE RIGHTS/MITIGATION

It shall not be deemed a waiver or default under this Agreement if the non-defaulting party fails to immediately declare a default, or either party delays in asserting any right hereunder. The rights and remedies provided under this Agreement are cumulative and in addition to the rights and remedies either party may have pursuant to law, statute, law, or otherwise, and either party's use of any right or remedy provided for hereunder will not preclude or be deemed to waive such party's right to use any other remedy, whether hereunder or at law or equity. Both parties hereto have a duty to mitigate damages incurred pursuant to this Agreement and performance hereunder.

## 18.0   NON-ASSIGNMENT

This Agreement may not be assigned by BusPatrol without prior written consent of the County, and the County shall be relieved of all liability and obligations consistent with the New York State General Municipal Law Section 109 in the event of such unauthorized assignment.

## 19.0   COUNTERPARTS; SIGNATURES TRANSMITTED BY ELECTRONIC MEANS

This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement, and any of the parties hereto may execute this Agreement by signing any such counterpart.  A facsimile or signature transmitted by electronic means applied hereto or to any other document shall have the same force and effect as a manually signed original. This provision contemplates giving legal force and effect to copies of signatures. This provision does not contemplate the use of "electronic signatures" as regulated by New York State Technology Law Article 3, "Electronic Signatures and Records Act."

## 20.0   GENDER
Words of the masculine or feminine gender in this Agreement, unless the meaning of the sentence indicates otherwise, shall be deemed to refer to either male or female persons.

## 21.0   CAPTIONS
The captions are inserted only as a matter of convenience and reference, and in no way define, limit or describe the scope or intent of this Agreement nor in any way affect the terms hereof.

## 22.0   PREVENTION OF FRAUD AND ABUSE

The parties shall establish, maintain, and utilize internal management procedures sufficient to provide for the proper, effective management of all activities funded under this Agreement. Any known or suspected incident of fraud or abuse

**CONFIDENTIAL**

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 61 of 95

involving BusPatrol's or the County's employees or agents that involve funds or activities under this Agreement shall be reported immediately by the party that becomes aware of the incident to BusPatrol's or the County's senior executive for appropriate action.

## 23.0  EXECUTORY

All amounts to be paid to BusPatrol for the performance of the services called for in this Contract will be paid solely from the civil penalties collected from the operation of the BusPatrol System, as provided for by the Stop Arm Law. BusPatrol assumes the risk that program revenues will be sufficient to cover the Technology Fees, and therefore agrees that neither this Agreement nor any representation by any public employee or officer creates any legal or moral obligation to request, appropriate or make available moneys for the purpose of this Agreement in the event that gross revenues collected over the life of this Agreement (including any extensions thereof) are insufficient to cover  any costs, expenses or fees associated with this Agreement owed to BusPatrol.  BusPatrol will have no claim against the County for the payment of any such unpaid costs, expenses or fees.

## 24.0  CONFIDENTIALITY

BusPatrol shall comply with applicable federal and state requirements for confidentiality of records and information, and agrees not to allow examination of records nor disclosures of information, except as required by the County under the terms of this Agreement.

## 25.0  RETENTION OF RECORDS

BusPatrol agrees to maintain and have available for audit such records as may be required by the County, New York State or United States governmental agencies.  These records shall be available for inspection by properly identified personnel of the above governmental agencies upon reasonable notice, and shall be maintained for a minimum of ten (10) years after termination of this Agreement.

## 26.0  FORCE MAJEURE

Neither BusPatrol nor the County shall be liable to the other or be deemed to be in breach of this Agreement for any failure or delay in rendering performance arising out of causes beyond its reasonable control and without its fault or negligence. Such causes may include, but are not limited to, acts of God, nature or the public enemy, terrorism, invasion, insurrection, order of court, judge, or civil authority, strike, stoppage of labor, riot, and unusually severe weather, significant fires, floods, earthquakes, storms, epidemics, quarantine restrictions, strikes, freight embargos, government regulation, or governmental authorities,

**CONFIDENTIAL**

and delays which are not caused by any act or omission by BusPatrol. The party whose performance is affected agrees to notify the other promptly of the existence and nature of any delay.

Neither BusPatrol nor the County shall be deemed to be in violation of this Agreement if either party is prevented from performing any of its obligations hereunder by any of the aforementioned causes or any other cause reasonably beyond the nonperforming party's control and that is not attributable to such nonperforming party's dereliction of duty or negligence hereunder.

In the event of any such occurrence, (a) the time for performance of the nonperforming party's obligations or duties shall be suspended until such time as the nonperforming party's inability to perform, provided that the nonperforming party is not responsible for such inability to perform, is removed; and (b) the period of performance of this Contract shall be extended for an additional period of time equal to the period of suspension of performance to the extent permitted by statute. The party claiming the suspension of performance shall give notice of such impediment or delay in performance to the other party within ten (10) days of its knowledge of the occurrence of the event or events causing such nonperformance. The nonperforming party shall make all reasonable efforts to mitigate the effects of any suspension of its performance.

## 27.0 QUALIFICATIONS OF CONTRACTOR

BusPatrol specifically represents that it and its members, officers, employees, agents, servants, consultants and subcontractors have the experience, knowledge and character necessary to perform their particular duties under this Agreement.

## 28.0 DECLARATION BY CONTRACTOR

BusPatrol declares that it has complied with all federal, state and local laws regarding business permits, certificates and licenses that may be required to carry out the work to be performed under this Agreement.

## 29.0 NON-DISCRIMINATION

No services to be rendered pursuant to, or in connection with, this Agreement may be refused to any person because of age, race, color, creed, sex, sexual orientation, national origin, disability or marital status.

BusPatrol shall take all affirmative steps necessary to ensure equal employment opportunities without discrimination because of age, race, creed, color, sex, sexual orientation, national origin, disability or marital status and to comply with all federal, state and local civil rights laws including, but not limited to, the Americans with Disabilities Act.

CONFIDENTIAL

## 30.0 NO ARBITRATION

Disputes involving this contract, including the breach or alleged breach thereof, may not be submitted to binding arbitration but must instead be heard in accordance with the Paragraph above entitled "Choice of Law, Venue".

## 31.0 SERVICE OF PROCESS

In addition to the methods of service allowed by the New York State Civil Practice Law & Rules ("CPLR"), BusPatrol hereby consents to service of process on it by registered or certified mail, return receipt requested or by facsimile (fax) transmission. Service hereunder shall be complete when deposited in the United States mail, duly addressed and with proper postage or when the fax has connected. BusPatrol must promptly notify the County, in writing, of each and every change of address to which service of process can be made. Service by the County to the last known address shall be sufficient. BusPatrol will have thirty (30) calendar days after service is complete in which to respond.

## 32.0 NOTICE OF INTENT TO SUE

(a) BusPatrol agrees that at least ninety (90) days prior to commencing suit against the County for any matter arising directly or indirectly out of this Agreement, BusPatrol shall provide to the County a sworn document listing the time, place, and manner of any breach of this agreement, together with an itemized list of any damages to which BusPatrol believes itself entitled. (b) County shall have the right to conduct a deposition upon oral questions of an officer, employee or agent of BusPatrol, of the County's choice, as to any matter arising under this agreement within the 90-day period described above. (c) Strict compliance with this paragraph shall be a condition precedent to maintenance or institution of any action or proceeding, whether legal or administrative. This paragraph shall not be construed to toll any applicable statute of limitation. (d) Any action against the County must be commenced within one year of the event which gives rise to liability.

## 33.0 REQUIRED PROVISIONS OF LAW
If any provision required by law is not inserted in this Agreement, through mistake or otherwise, then upon the application of either party, the Parties agree to work in good faith to amend this Agreement to make such required insertion.

## 34.0 ENFORCEMENT EXPENSES
BusPatrol shall pay all costs and expenses, including reasonable attorney's fees (in-house or retained counsel), that the County incurs in enforcing any of the terms of this Agreement.

CONFIDENTIAL

## 35.0   SET-OFF RIGHTS

The County shall have all of its common law, equitable and statutory rights of set-off. These rights shall include, but not be limited to, the County's option to withhold for the purpose of set-off any moneys due to BusPatrol under this Agreement up to any amounts due and owing to the County with regard to this Agreement, any other agreement with the County or any of its departments or agencies.  This right of set-off includes any agreement for a term commencing prior to or subsequent to the term of this Agreement.  The right of set-off shall include any amounts due to the County for any reason including, without limitation, tax delinquencies, fee delinquencies or monetary penalties relative thereto.

## 36.0   RULES OF CONSTRUCTION

This contract shall be deemed to have been mutually prepared by the parties hereto and shall not be construed against any of them solely by reason of authorship.

## 37.0   AUDIT

Contractor shall maintain an accounting system that enables the County to readily identify assets, liabilities, revenues, expenses and disposition of County funds directly related to the performance of this Contract. Records should include, but not be limited to, those kept by BusPatrol, its employees, agents, assigns, and subcontractors directly related to the performance of this Contract.

All vouchers or invoices presented for payment to be made hereunder, and the books, records and accounts upon which the vouchers or invoices are based are subject to review by the responsible department and audit by the County Comptroller.  Contractor shall submit any and all documentation and justification in support of expenditures or fees under this Agreement as may be required by the County.

The audits may include examination and review of the source and application of all funds from the county, state, or federal governments.  Contractor shall not be entitled to any interim or final payment under this Agreement, **and any overpayment may be recouped**, if any audit requirements and/or requests have not been satisfactorily met **or if any expenditures or fees by BusPatrol are determined to be irregular by the auditor.** This paragraph shall survive the termination of the Agreement.
The Parties expressly agree that any access to relevant records shall be provided at a mutually agreed upon time and location, will not disrupt the operation of Contractor's business. Notwithstanding the previous sentence, if the County becomes subject to a State or local audit, records shall be produced by BusPatrol upon the County's demand.  In no event shall Contractor be obligated

CONFIDENTIAL

to maintain or provide access to records relating to the cost to develop, install, operate or maintain the BusPatrol System.

## 38.0   SEVERANCE PAY

The County Shall Not Be Charged for Severance Pay Incentives.   The County is aware that from time to time contract agencies engage in programs such as early retirement plans which reward employees with a severance payment as an incentive toward voluntary resignation. The County of Dutchess is prohibited by the New York State Constitution from making a gift of public funds and such severance pay incentives amount to such a gift. Therefore, notice is hereby given that County funds shall not be used for the purpose of a severance pay or any such incentive.  If an audit of payments made under this contract reveals that such payments have been made, BusPatrol shall immediately reimburse the County for the full amount with interest upon receipt of a written demand from the County. In addition, the County may declare this agreement null and void.

## 39.0   CONTRACTORS OBLIGATIONS POST TERMINATION WITH OR WITHOUT CAUSE

Upon termination of this Agreement, Contractor shall: (1) cooperate with the County to develop a transition plan and assist in affecting an orderly transfer of services and obligations to any successor Contractor(s) so as to prevent any disruption in services; (2) provide County with access to and a copy of, all books, records and other non-proprietary documents including, but not limited to digital records, relating to the performance of services under this Agreement that are required or requested, at no charge; and if so directed by the County, (3) continue to perform such services prior to actual termination at the agreed upon contractual rate following the notice of termination. The obligations of this paragraph shall survive the termination of this Agreement whether the agreement is terminated for cause or terminated for convenience.

## 40.0   COOPERATIVE PURCHASING/PIGGYBACKING

The Parties agree to allow other governmental entities to use this Agreement to purchase any goods and/or services provided for herein to the extent permitted by applicable laws regarding "piggybacking" or forms of cooperative purchasing, including but not limited to Subdivision 16 of Section 103 of the New York General Municipal Laws.  Accordingly, Contractor agrees to extend the terms and conditions of this contract to other governmental entities for purposes of allowing other governmental entities to procure the same goods and services. However, it is understood that the extension of such terms and conditions to other governmental entities  is at the discretion of the Contractor and shall be subject to a separate written agreement between Contractor and such governmental entities.  County shall not be a party to any such agreements between Contractor and other governmental entities, and shall have no

**CONFIDENTIAL**

responsibility in the dealings between the vendor and any other governmental entity other than as set forth in this Agreement.

## 41.0  SIGNATORY AUTHORITY

The persons signing and executing this Agreement on behalf of BusPatrol and the County have been duly authorized by action of their respective Boards of Trustees to execute this Agreement on behalf of BusPatrol or District, as the case may be, and to validly and legally bind BusPatrol or the District to all terms, conditions, performances, and provisions set forth herein.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement for a School Bus Safety Camera Program between BusPatrol and District, effective as of the date of the first Notice of Violation (the "Effective Date").

**BUSPATROL:**

BusPatrol America, LLC

By: _____

Name: Jean F. Souliere
Title: CEO, BusPatrol America LLC
Date: 09/16/2021

**COUNTY:**

APPROVED AS TO FORM:

_____
County Attorney's Office

APPROVED AS TO CONTENT:

_____
Eoin Wrafter, Commissioner
Department of Planning and Development

21-0405-12/24 -PL
9/24/2021

ACCEPTED:   COUNTY OF DUTCHESS

By: _____
Marcus J. Molinaro
County Executive

Date: ___9/24/2021___

32
**CONFIDENTIAL**

16374

## EXHIBIT A
## DESCRIPTION OF BUSPATROL SYSTEMS, SERVICES

A.    **BusPatrol Equipment.**    BusPatrol will install, operate and maintain the following Equipment on school buses that have executed an Opt-In Agreement to participate in the school bus violation monitoring program:

1)    The **"BusPatrol Stop Arm Enforcement Solution"** means all of the External Enforcement Cameras plus other Equipment necessary to operate a school bus photo violation monitoring system, including the following:

🚌 **BUSPATROL**

| BusPatrol OS | In-state Processing Center | In State Violator Call Center |
|---|---|---|
| Stop Arm Cameras & Sensors | Program Management | Court Support |
| 4G LTE Modem/Antenna | School District Support | Automated Printing & Mailing |
| GPS | Law Enforcement Support | Customizable Reporting |
| Alertbus Citation Life-cycle Management System | AVA (Automated Violation Analysis) AI Technology | Dedicated Equipment Maintenance Technicians |

2)    The **"BusPatrol Student Safety Solution"** means all of the Internal Non-Enforcement Cameras and Equipment necessary to provide an internal safety monitoring system, including the following:

🚌 **BUSPATROL**

| 4 Interior cameras w/ mic. | Silent alarm | Remote Video Retrieval |
|---|---|---|
| Windshield camera | Console | Live View |
| Side load camera | Healthcheck | Snail Trail |
| Rearview camera | Vehicle Page | Real-Time GPS Vehicle Locator |

B.    **Software and Connectivity.**  From the moment the bus is started the BusPatrol OS is connected to the BusPatrol Secure Cloud environment through our virtual private network (VPN) created exclusively for BusPatrol by our cellular network providers.

1)    **BusPatrol Student Safety Solution.**

Designated authorized school district personnel in Participating School Districts will be able to login to the BusPatrol Console where they can use the Healthcheck tool to monitor the health of each BusPatrol OS, access live streaming audio and video from the bus, as well as look at real-time GPS locations of the fleet, or historical GPS information.

33
**CONFIDENTIAL**



*Figure 1 Console: Healthcheck Page*

BusPatrol's Remote Access Evidence feature allows for designated authorized school district personnel to remotely and securely request and download video. This feature is available anytime but can only download while the school bus is turned on, or in the accessory position.



*Figure 2 Console: Vehicle Information Page*

**CONFIDENTIAL**

Being connected through the cellular network means real-time GPS locator, not just historical GPS information once the school bus returns to the bus lot. Using the Console, users have access to both. BusPatrol's Snail Trail feature pictured below shows the buses route run given during a user defined timeframe. The vehicles current location and speed can also be obtained through the Vehicle



page.

***Figure 3 Console: Snail Trail Historical GPS***

BusPatrol's GPS information is a requirement necessary in the production of Stop Arm Violation evidence packages sent to local law enforcement. BusPatrol provides this feature as an added value to the school district. In addition, BusPatrol can provide the District with a GPS API endpoint for 3rd Parties such as routing vendors or mobile app developers to access. All BusPatrol software is web based and can be accessed using a standard PC or Apple computer using Google Chrome, Safari, Internet Explorer, Microsoft Edge, or Firefox internet browsers, or using any Apple or Android mobile device.

C.     **Implementation Plan.**  BusPatrol and the County, along with the Participating School Districts, will work together to schedule a kick-off meeting to review the expectations from the school district and local law enforcement, answer any questions, and obtain the information necessary to begin loading school buses with BusPatrol OS equipment.

Based on this analysis and input received from the County and Participating School Districts, BusPatrol will develop a detailed project implementation plan to

35

address the various steps necessary to begin operation of the school bus photo monitoring system, including:

- High Risk Route Analysis and Identification
- School Bus Stop arm camera equipment installations
- Public awareness campaign to teach the community the benefits of the safety program and raise awareness of driving laws related to school buses
- Citation template approvals
- Records retention requirements
- School District training
- County enforcement technician training
- Back-end office preparation and set-up
- Provisioning of servers
- Geo-fencing of program geographic boundaries
- Telecommunications provisioning
- Banking and payment processing set-up
- Service and maintenance provisioning
- Set-up of analytics and customization of reporting systems for clients

**B.** **Violation Processing (BusPatrol 5X Evidence Validation System).** The BusPatrol 5X Evidence Validation System will be used to process a violation from event capture to the processing of payment and includes a total of five layers of review, including final approval by the County enforcement technician. These multiple layers of review assure quality of evidence and minimize the chance of citations being issued in instances when it is not appropriate. In sequence, below are the steps in our BusPatrol 5X Evidence Validation System:

- First Layer – Our onboard equipment detects a stop arm event (SAE) only when stop arm is deployed. The video and metadata are recorded onto the hard drive on-board. Once it has been marked as a SAE, the data is transferred via 4G/LTE modem over BusPatrol's secure encrypted VPN.

- Second Layer – Exterior camera SAE video data is transferred via BusPatrol's™ 4G/LTE cellular modem over the VPN to BusPatrol's proprietary Alertbus citation life-cycle management system where they are processed using AVA, BusPatrol's proprietary Automated Video Analysis Artificial Intelligence (AI), which has been proven to be significantly more reliable than on board motion detection, radar, and even the human eye. All SAEs with potential violations are sent to trained BusPatrol reviewers through the Alertbus system who individually review the SAEs to validate potential violations, and flag them to be transferred to a processor.

- Third Layer – BusPatrol processing experts, known as Processors, examine video from seven camera angles, validate that a potential violation has

occurred, and assembles the digital evidence package including: GPS map and data showing the violation location; time and date of the violation; vehicle license plate number and state; make, model, and year of the vehicle; registered owner information; recorded images showing the violation; and other pertinent details on a digital citation to later be approved or disapproved by a County enforcement technician within the municipality. Processors are assigned to specific states and are trained on the state law and associated city or county ordinances.

- <u>Fourth Layer</u> – A County enforcement technician logs onto BusPatrol's Alertbus secure web interface with a unique username and password to review violations. If the County enforcement technician decides a violation has occurred, the County enforcement technician clicks on the "approve citation" button.

- <u>Fifth Layer</u> – A pre-print review is conducted to ensure two violations are not being processed for the same offense. This can occur if a violator drives past multiple stopped school buses at one time or, if a police officer witnesses the same violation and cites the driver. After verification, BusPatrol promptly mails the citation to the violator. The violator may login to our Alertbus web portal to review violation information, see video, and make payment. The digital citation includes state and local legal references, instructions for the recipient to login to the Alertbus website (www.alertbus.com) through the violator portal to review the evidence against them, the amount of the fine, procedures to pay the fine or steps to contest the violation, a statement explaining late charges and possible administrative costs, and a statement warning that failure to pay a fine or contest the notice will be considered an admission of liability, and any other data as required by law. Citations are bi-lingual with English on the front and Spanish on the back, and the Alertbus website is in English and Spanish.

BusPatrol uses only trained reviewers and processors familiar with the local requirements for evaluation of photographic evidence to pre-screen all SAEs and violations. These BusPatrol reviewers and processors have experience in examining thousands of potential violations and in preserving the fidelity of all potential evidence. BusPatrol believes that pre-screening with trained staff provides the best possible quality results before final citation decision. These services will be provided by BusPatrol with no out-of-pocket cost to Dutchess County.

C.    **Evidence Packages.**  BusPatrol will provide evidence packages as required to defend all disputes of stop arm violations filed by potential violators. The Alertbus system has a court docket feature for the scheduling of hearings. When a hearing request is received by BusPatrol staff, the hearing is scheduled in the Alertbus Docket and a hearing notice is automatically generated. Once the hearing is complete the disposition is input into Alertbus the record is updated,

**CONFIDENTIAL**

Case 1:24-cv-00113-ER    Document 1-1    Filed 01/05/24    Page 72 of 95

and the notice of final disposition is generated. Alertbus can also be used to create correspondence, add notes to a citation record, and apply payments.

D. **Payment Processing.** The majority of violators pay via credit card through the Alertbus web portal using systems and 3rd party payment processor that comply with Payment Card Industry (PCI) security standards, but Alertbus also supports checks, money orders, and ACH payments. The Alertbus financial backend is powered by Oracle's NetSuite ERP system and Cybersource payment processor. Processing payments through Alertbus ensures that the citation records are always up to date making reconciliations easy on both parties.

BusPatrol will establish a dedicated demand deposit account for receipt of violation payments. BusPatrol will disburse funds on a monthly, in accordance with Article 5 of the Agreement.

BusPatrol will also establish processes to address refunds, using the following general approach:

1) For electronic transactions:

If a citation is displaying a negative balance due, it will populate in a refund report in NetSuite for review by BusPatrol's finance department. A citation can display a negative balance if it was paid, then dismissed or discharged in court. If BusPatrol's finance department determines a refund is due on the citation, in NetSuite they will process a refund from the original payment transaction. NetSuite is connected to our payment processor, CyberSource, and will authorize the refund based on the authorization code of the payment that is stored in our system.

2) For check/money order/cash transactions:

If a citation is displaying a negative balance due, it will populate in a refund report in NetSuite for review by BusPatrol's finance department. If BusPatrol's finance department determines a refund is due on the citation BusPatrol will issue a refund check by mail within 60 days of the payment. The 60-day window is to ensure the checks clear the bank, and do not return for insufficient funds.

E. **Collection Processing.** BusPatrol will establish processes for collecting past due amounts, in accordance with local requirements. As permitted by state and local law, these procedures may include:

1) Distribution of late notices;

2) Driver's registration flags, which will be sent to the Department of Motor Vehicles to place appropriate holds, in order to require the violator to pay the fine before the flag can be lifted and the registration be renewed; and

**CONFIDENTIAL**

3) Engagement with debt resolution services.

I. **Reporting.** BusPatrol's Alertbus system has robust reporting capabilities that can be customized or created to meet Dutchess County School needs. We provide monthly and annual financial reports that give an overview of the program. We can provide additional reporting showing violations by location, violations by time of day, violation by day of the week, or violations by bus number. BusPatrol will work with the County to determine appropriate reporting requirements.

Dutchess County will at a minimum be provided with automated monthly reports containing, but not limited to the following information:

1) Monthly financial reports:

- Comptroller General Reports in accordance with NY VTL Section 1803
- Revenue Reconciliation Report in accordance with Article 5 of the Agreement

2) Monthly Violations reports:

- Total violations/tickets per bus
- Total violations/tickets per violation location
- Law Enforcement approval rates
- Ticket Aging (Paid, Due)
- Contestation Rates and Outcome
- Repeat Offender
- Top Violated Locations/Buses

3) Monthly Inventory Reports:

- Total number of buses outfitted with External Enforcement Cameras
- Total number of buses outfitted with Internal Non-Enforcement Cameras and Equipment

4) Ad Hoc Reporting. BusPatrol will also provide Dutchess County with ad hoc or custom reports upon request. In addition, BusPatrol will provide all reporting as required by New York State Vehicle and Traffic Law § 1174-a(m).

J. **Training.** All BusPatrol training programs will be conducted in either a live classroom setting or via online webinar, whichever solution is more convenient and conducive to trainee schedules. With the exception of computers for training, BusPatrol will provide all materials for live classroom training sessions, including but not limited to all printed training materials and work instructions. In the event of webinar training, trainees will be required to provide their own computers and internet connection to view training courses.

**CONFIDENTIAL**

INDEX NO. 655887/2023
RECEIVED NYSCEF: 11/27/2023

The BusPatrol account manager will coordinate all training schedules with the designated points of contact at the partner locations. The initial trainings for staff will consist of BusPatrol's Alertbus system, and Console. These trainings will be conducted before the new partner go live date to ensure that all appropriate staff are adequately trained on the system features applicable to their roles and responsibilities. This will also enable the trainees to ask and receive answers to any questions they may have or issues they may encounter.

Schedules will be closely coordinated with partner points of contact to ensure all applicable staff are included in the trainings. Make up courses will be available as well for those who are unable to attend the initial training sessions.

In the event of staff turnover, retraining for existing staff or system upgrades or enhancements, future training sessions will be coordinated between the account manager and the designated district points of contact at the partner location.

BusPatrol will offer the following Training Sessions to relevant personnel from the County and Participating School Districts:

| Training Group | Training Topics | Length of Session |
|---|---|---|
| Dutchess County Traffic Safety Administrator | BusPatrol OS™ systems and features overview and user instruction; Alertbus citation life-cycle system training. | 1 hr |
| District Transportation Personnel | BusPatrol OS™ systems and features overview and user Instruction | 1 hr |
| Bus Driver Training | BusPatrol OS™ systems and features overview and user instruction | 10 mins |
| County Financial Training | BusPatrol OS™ systems and features overview. | 1 hr |
| | . | |
| Participating Municipality Hearing Officer Training (as necessary) | BusPatrol OS™ systems and Features overview and user instruction; Alertbus citation life-cycle system training. | 1 hr |

**K.    Public Awareness Campaign.**  BusPatrol will work in conjunction with the County to help develop customized content for printed, digital, TV, and social media platforms. BusPatrol will also assist the district to coordinate with local news stations to arrange press conferences. At the press conference the school

CONFIDENTIAL

district, as well as local law enforcement, have the opportunity speak to the media explaining the laws of the road, when drivers are supposed to stop and the dangers of passing stopped school buses.

**L.**   **Support.**   BusPatrol will assign an Account Representative to work with the County and Participating School Districts to provide ongoing customer service and support. The Account Representative will also be the main point of contact for the County, and Participating School District transportation department. BusPatrol will also assign service technicians to each bus lot.

BusPatrol will also maintain a toll-free call center operated between the hours of 8:00am to 5:00pm EST, Monday through Friday, year-round, excluding holidays, for citizens to call in and report concerns, discuss citations, or gather program information.  Violators can go online at any time to view video of their violation and pay their citation by visiting www.Alertbus.com, and entering their citation number.

Depending on the total number of Participating School Districts and buses, an appropriate number of dedicated local service technicians will be assigned to Dutchess County School buses and can be supplemented by additional area technicians as required. All work on school buses will be coordinated through the appropriate school district Transportation Department. All service and maintenance of BusPatrol systems shall be performed during off-hours and should never interrupt regular transportation department operations.

Upon award BusPatrol will establish a Dutchess County office with a local citation processing center and equipment service center somewhere centrally located within the County.

BusPatrol maintains an internal partner HelpDesk to support our partners in the event of questions and issues in relation to our hardware and software products and services.  Should the need arise, partners are asked to submit their questions and issues in the form of a support ticket.  Simply email support@buspatrol.com with the following information:

Name:
Callback Number:
Partner Name: (i.e. Dutchess County, NY)
Question/Issue:

BusPatrol will work with Dutchess County to establish detailed Service Level Agreements (SLAs) with Respond/Restore/Resolve times based on event priority.  Priorities will be established based on the following criteria Low, Medium, High, Business Critical, using the following general definitions:

1)   Service Level Agreements (SLAs)

**CONFIDENTIAL**

- Respond – Defined as the amount of time between when a partner first submits a ticket and when BusPatrol responds and lets the partner know we are currently working on it.

- Restore – Defined as the amount of time between when a partner first submits a ticket and when BusPatrol restores the product/service to a working state.

- Resolve – Defined as the amount of time between when the partner first submits a ticket and when that question is answered or problem is actually resolved to the partner's satisfaction.

2)    Priorities:

- Low Priority – Non-critical function or procedure, unusable where a workaround is available or a repair is possible, no direct impact on service availability. Resolution time for this level of priority is 5 days.

- Medium Priority – Non-critical function or procedure, unusable or hard to use having an operational impact, but with no direct impact on services availability. Resolution time for this level or priority is 3 days.

- High Priority – Critical functionality or service interrupted on a subset of users or products, degraded or unusable, having a severe impact on services availability. No acceptable alternative is possible. Resolution time for this level of priority is 24 hours.

- Critical Priority – Interruption making critical functionality inaccessible or a complete product/service interruption causing a severe impact on services availability. No possible alternative solutions are possible. Resolution time for this level of priority is 4 hours.

Once a ticket has been submitted, regardless of priority, the BusPatrol Account Representative for Dutchess County will be notified and will immediately engage both the requestor and the appropriate department/team within BusPatrol to ensure the question or issue is resolved as soon as possible.

***

**CONFIDENTIAL**

## EXHIBIT B
## REVENUE RECONCILIATION AND DISBURSEMENT PROCESS

The following flowchart illustrates the monthly revenue reconciliation process and disbursement of funds to be performed in accordance with Article 5 of the Agreement and NYS VTL Sections 1174-a and 1803.



**CONFIDENTIAL**

**EXHIBIT C**
**OPT-IN AGREEMENT**
**TO PARTICIPATE IN THE COUNTY OF**
**DUTCHESS/BUSPATROL SCHOOL BUS STOP ARM ENFORCEMENT PROGRAM**

4849-3954-3016.4

File #: <<CA File #>>                    44





## BusPatrol Implementation

Approval Process & Supervisor Queue
Introduction TOH Bus Safety Program



# Agenda for Today

**1** Violation of § 1174-A Recap

**2** Amber/Red Light Indicator

**3** Approval

**4** Supervisor Queue Introduction

**5** Focus on some examples

**6** Action Items & Next Step



New York State Legislation & Town of Hempstead Local Law

### §1174-a of the New York State Vehicle and Traffic Law
### Albany County L.L. Local Law No. 4 for 2021 - Failure to Stop for School Buses

In accordance with §1174-A of the New York State Vehicle and Traffic Law, Albany County enacted Local Law No. 4 of 2021 ("Local Law"), Albany County established a program to impose monetary liability on owners of vehicles for the failure of the driver to comply with §1174 of the New York State Vehicle and Traffic Law when meeting a school bus exhibiting a red visual sign and stop-arm. Under this program, the County is authorized to install and operate school bus photo violation monitoring systems on the exterior of school buses owned and operated by school districts within the County, provided that the school districts individually enter into agreements with the County for such installation and operation. The Town has entered a contract with BusPatrol America, LLC (" BusPatrol") to implement the program.

### References:
### 1174A NYSVTL - https://www.nysenate.gov/legislation/laws/VAT/1174-A
### Albany County LL 4 for 2021 -
https://www.albanycounty.com/home/showpublisheddocument/13786/637516789822300000

5

FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM
NYSCEF DOC. NO. 4
INDEX NO. 655887/2023
RECEIVED NYSCEF: 11/27/2023

New York State - Right Of Way

# Right of way

When a school bus stops and flashes its red lights, traffic approaching from either direction **must** stop before reaching the bus:

• on a two-lane road
• on multi-lane highways
• on divided highways

## Share the Road

**Yellow flashing lights** mean the bus is preparing to stop to load or unload children. Slow down and prepare to stop your vehicle.

**Red flashing lights** mean the bus has stopped and children are getting on or off. Stop your vehicle and wait until the school bus resumes motion or until signaled by the driver or police officer to proceed.





5



Fine Schedule – 1174-A(e)

| | |
|---|---|
| 1st Violation | $250 |
| 2nd Violation | $275 |
| 3rd Violation | $300 |
| (*within 18-month period*) | |

**1174-A(e)** An owner liable for a violation of subdivision (a) of section eleven hundred seventy-four of this article pursuant to a local law or ordinance adopted pursuant to this section shall be liable for monetary penalties in accordance with a schedule of fines and penalties to be set forth in such local law or ordinance, except that if a city by local law has authorized the adjudication of such owner liability by a parking violations bureau, such schedule shall be promulgated by such bureau. The liability of the owner pursuant to this section shall be **two hundred fifty dollars for a first violation, two hundred seventy-five dollars for a second violation both of which were committed within a period of eighteen months, and three hundred dollars** for a third or subsequent violation all of which were committed within a period of eighteen months; provided, however, that such local law or ordinance may provide for an additional penalty not in excess of twenty-five dollars for each violation for the failure to respond to a notice of liability within the prescribed time period.



## 2  Amber/Red Light Indicator

- The indicator lights will appear in the top left-hand corner of the wide-angle fisheye video in every violation

The indicator lights are hard wired into the bus switches.

**When the amber (yellow) lights are activated by the bus driver, the indicator light appears in yellow.**



**When the red lights are activated by the bus driver, the indicator light appears in red.**





- The amber (yellow) indicator light shows that the approaching vehicle had warning time to stop for the school bus

FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM INDEX NO. 655887/2023
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 11/27/2023





Reviewing and Approving Citations

## 1. Review Video, Photo Evidence & Violator Data








*Click on Video or Photos to Enlarge



*GPS map pin of Location of Violation.

## 2. Select whether Vehicle is Rental or Owned/Leased

## 3. Select Approve & Disapprove



FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM INDEX NO. 655887/2023

NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 11/27/2023

3 Reviewing and Approving Violations





# Giving Feedback



How to post a comment:

Enter your comment into the text box noted "New Comment" and click the **post comment button prior to approving/disapproving**.

Post Comment

**Examples**

1. If selected "Incorrect GPS/Location" post correct location if known.

2. If selected "Other" provide any feedback you would like to share.



We monitor each violation that is disapproved and the reason why daily.

We analyze trends and quantity of each disapproval reason in order to improve the process and send better evidence for all future violations.

Once a violation is disapproved, we look at the disapproval reason, correct any errors (street names, GPS locations, addresses etc.).

FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM
NYSCEF DOC. NO. 4

INDEX NO. 655887/2023
RECEIVED NYSCEF: 11/27/2023



Example #1

# Was Vehicle Unable to Stop?










**5** Example #2

## Determine if the Vehicle did not pass School Bus?

  

 



FILED: NEW YORK COUNTY CLERK 11/27/2023 08:39 AM INDEX NO. 655887/2023
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 11/27/2023



SCHOOL BUS
SAFETY PROGRAM

PO BOX 1310
NEWINGTON, VA 22122-1310
(877) 504-7080

## TECHNICIANS CERTIFICATION

_____, affirms the following under penalties of perjury:

(Technician's Name)

1. This affirmation is submitted in accordance with New York State Vehicle and Traffic Law § 1174-A (Town of Hempstead).

2. That all relevant times herein, your affirmant was over the age of 18 years of age and employed by the Town of Hempstead.

3. That your affirmant's job duties include inspection and certification of photographs, microphotographs, video, and any other recorded images (hereinafter referred to as recorded images) produced by the School Bus Safety Program TOH Monitoring System installed with school bus stop arm camera technology to detect a vehicle in violation of Section 1174-A of the New York State Vehicle and Traffic Law.

4. That on this date the affirmant inspected the recorded images made by the School Bus Safety Program TOH Monitoring System cameras of the motor vehicle bearing the registration number ___ (plate #)____ appearing in the Notice of Liability bearing citation number __(citation #)___ attached hereto and made a part of hereof.

5. That your affirmation hereby certifies that the attached recorded images are true and accurate copies of the recorded images are true and accurate copies of the recoded images reviewed by me on ____(date)___ at __(time)____depicting a motor vehicle bearing registration number ___(plate#)_____ being used in violation of New York State Vehicle and Traffic Law Section 1174-A at _____(location)_____ on _____(date)___ at _____ (time)_____.

Dated: _____          Signed: _____

# NOTICE OF LIABILITY

SCHOOL BUS STOP ARM SAFETY PROGRAM TOH

## SCHOOL BUS SAFETY PROGRAM

| NOTICE # | DATE NOTICE MAILED |
|---|---|
| TH-123456 | 08/01/2021 |

| | |
|---|---|
| DATE AND TIME OF VIOLATION | 07/15/2021 2:31 PM  Bus # XXXX  ID# Camera #9 |
| LOCATION OF VIOLATION | 1500 Main Street, COMMUNITY in Town of Hempstead, NY |
| REGISTERED VEHICLE OWNER | John Q. Public |
| OWNER'S STREET ADDRESS | 123 East Street  Anytown, USA 12345-6789 |
| VEHICLE STATE & LICENSE NUMBER | NY / ABC123 |
| VEHICLE MAKE / TYPE / YEAR | Ford / TK / 2015 |

The vehicle identified in this notice was recorded passing a stopped school bus on the date and at the location noted herein, in violation of New York State Vehicle and Traffic Law ("VTL") 1174-a. In accordance with VTL 1174-a and Chapter 186 of the Code of the Town of Hempstead, NY, the vehicle owner is liable for such violation as follows: a monetary penalty of $250 for the 1st violation; $275 for a 2nd violation if committed within 18-months of the 1st violation; and $300 for a 3rd or subsequent violation if committed within 18-months of the 1st violation. Unless you contest liability as provided herein, the monetary penalty listed below must be paid by the due date shown on this notice.



| FINE AMOUNT | STATUTE & DESCRIPTION |
|---|---|
| $<PENALTY>  DUE BY 08/31/2021 | Chapter 186 of the Code of the Town of Hempstead entitled "Failure to Stop for School Buses," adopted in accordance with NY VTL 1174-a, makes the owners of vehicles liable to pay a civil penalty when such vehicle passes a stopped school bus in violation of NY VTL 1174-a. |

### SPECIALIST CERTIFICATION

Based on my review and inspection of the evidence, including recorded images, I swear or affirm under penalty of perjury that there is sufficient evidence that a violation of NY VTL 1174-a did occur, as more fully described herein, for which the above named vehicle owner is liable pursuant to Chapter 186 of the Code of the Town of Hempstead and NY VTL 1174-a.

| John K. Doe | 1936 |
|---|---|
| SPECIALIST DATE XX/XX/XXXX | ID NUMBER |

WARNING: FAILURE TO PAY THE PENALTY SHOWN, OR TO CONTEST LIABILITY IN A TIMELY MANNER, IS AN ADMISSION OF LIABILITY AND MAY RESULT IN A DEFAULT JUDGEMENT ENTERED AGAINST YOU. FAILURE TO RESPOND TO THIS NOTICE BY THE DUE DATE WILL RESULT IN AN ADDITIONAL PENALTY OF $25.00.



CUT HERE 

---

School Bus Stop Arm Safety Program TOH
P. O. Box 1310
Newington, VA 22122

For additional information or questions please call 877-504-7080, Monday – Friday, 8 AM – 5 PM ET, or visit www.alertbus.com

Registered Vehicle Owner:
John Q. Public
123 Easy Street
Anytown, USA 12345-6789

SBSA NOL
re: 1174(a)

| NOTICE # |
|---|
| TH-123456 |
| $<PENALTY> |
| DUE BY 08/31/2021 |