UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

SARAH MORGULIS, on behalf of herself
and all other similarly situated,                    Index No: 1:24-cv-113
                    Plaintiff,

                                           **FIRST AMENDED CLASS**
                                           **ACTION COMPLAINT**

          -against-

BUS PATROL AMERICA, LLC,
                      Defendant.

-------------------------------------------------------------------- X

       Sarah Morgulis, by and through her attorneys ARON LAW PLLC and BIENSTOCK

PLLC, alleges as follows:

       1.     Plaintiff initially filed her Complaint in New York State court alleging *inter alia*

that, in order to advance its own private, pecuniary interests, Bus Patrol America, LLC, ("Bus

Patrol") was causing local government across New York State fraudulently and wrongfully to issue

Notices of Liability for stop-arm violations without sufficient evidence that a violation had

occurred.

       2.     Four days later the New York Appellate Term issued a decision holding that the

evidence collected by Bus Patrol and included in its standardized evidence packet – which Bus

Patrol utilizes through New York State -- was insufficient to establish liability, as Bus Patrol had

represented.

       3.     As a result, some municipalities no longer will defend on appeal lower court

decisions finding liability based on Bus Patrol's evidence packets.  A Judge in Colonie, New York,

according to news reports, dismissed all such cases on his docket.  Similarly, on information and

belief, the Town of Hempstead regularly declines to prosecute cases in which a defendant

challenges the sufficiency of the evidence packets.  Bus Patrol itself has entered into contract amendments agreeing to correct the flaws in its evidence packets.

4.      Plaintiff alleges that, even now, Bus Patrol continues to issue Notices of Liability in violation of law.  But in any event, its scheme to monetize the protection of student safety by providing turnkey, end-to-end services that replaced local government functions with those of a for-profit private company leveraging Artificial Intelligence to generate liability on the part of private citizens already has caused significant damage to Plaintiff and the class.

5.      Accordingly, Plaintiff hereby brings this action on behalf of herself and others, and further alleges as follows:

## PRELIMINARY STATEMENT

6.      New York Vehicle & Traffic Law ("VTL") § 1174, enacted in 1954, imposes a penalty on drivers when they overtake and pass a stopped school bus, provided *inter alia* that the bus (1) activates a stop-arm, (2) has stopped in relation to receiving or discharging school bus passengers, and (3) has appropriate markings and equipment, such as flashing lights necessary to warn drivers of a stopped bus.  These requirements are affirmative elements necessary to establish a *prima facie* violation of VTL § 1174.

7.      VTL § 1174-a, enacted in 2019, authorizes certain counties, cities, towns and village to rely on cameras to issue Notices of Liability ("NOLs") for violations of VTL § 1174.

8.      By its plain terms, the issuance and enforcement of a Notice of Liability under VTL § 1174-a requires proof of the same affirmative elements as those required under VTL § 1174. *See People v. Croce*, No. 2023-310 S C, 2023 WL 8827849, at *1 (N.Y. App. Term, Nov. 30, 2023) (dismissing NOL issued under VTL § 1174-a for lack of evidence that passengers were being received or discharged and that bus had appropriate markings and equipment).

9.      Bus Patrol is a private, for-profit vendor that offers turnkey services to local governments pursuant to which it *inter alia* gathers evidence; identifies violations; issues notices; compiles evidence packets; and collects and disburses penalties.  In return, Bus Patrol receives a substantial portion of the revenues received, typically at or above forty percent (40%), or about the same amount received by the local government, plus technology fees and other payments.

10.      Bus Patrol has entered agreements with local governments with jurisdiction over more than three million New York citizens.

11.      Under Bus Patrol's standard agreements, local governments perform only a perfunctory role in issuing, collecting and enforcing VTL § 1174-a.  Government personnel perform only a single, routine task assigned to it by Bus Patrol, in a manner directed by Bus Patrol. Bus Patrol assumes all other duties and responsibilities.

12.      When Bus Patrol issues NOLs on behalf of a local government, it systematically fails to compile and evaluate the statutorily required evidence that a violation has occurred.  It does not compile the necessary, *prima facie*, affirmative evidence that a bus had stopped for the purpose of receiving or discharging passengers, and that it had appropriate markings and appropriate equipment.

13.      More specifically, while local government technicians are given access to videos, through a portal controlled by Bus Patrol, they are trained by Bus Patrol to review the video only for one of the three *prima facie* elements of a legal violation, and then to check an on-screen button

marked "approve" if the video meets the limited criteria identified by Bus Patrol.



14.     Bus Patrol then converts the narrow review and conclusion reached by a technician into a Notice of Liability that is issued without sufficient evidence that a violation had occurred, and which falsely claims that liability has been established.

15.     The Notice of Liability also contains on its face a false, sworn statement issued by a local government Specialist (the "NOL Certification") swearing (or affirming) as follows:

> Based on my review and inspection of evidence, including recorded images, I swear or affirm under penalty of perjury that there is sufficient evidence that a violation of NY VTL 1174 subpart a did occur, as more fully described herein, for which the above named vehicle owner is liable .
> . ..

16.     The sworn, form NOL Certification issued by Bus Patrol on behalf of local governments is knowingly false and misleading, on a systematic basis.

17.     The NOL Certification is false because no such sworn statement had ever been made.  The technician over whose photocopied signature the statement appears had not sworn or affirmed anything under penalty of perjury, but had merely clicked a button marked "accept."  Bus Patrol then converted the click into a sworn, signed statement.

18.     In addition, the content of the NOL Certification is false.  A local government technician did not "review and inspect[]" sufficient evidence to conclude "that a violation of NYVTL 1174 subpart a did occur," because Bus Patrol had not compiled and provided her with such evidence.

4

The falsely issued, and false-in-fact NOL Certification is designed for maximum *in terrorem* effect. Citizens have no basis on which to challenge a sworn assertion that a local government had compiled photographic evidence of a violation. The effect is magnified because NOLs are issued against vehicle owners, not drivers, and vehicle owners may have no first-hand knowledge of the circumstances of the alleged violation. The false and fraudulent NOL Certification is designed and has the effect of preventing vehicle owners from challenging their assessed liability. Bus Patrol continues to issue NOLs containing the false certifications even though Appellate Term has repeatedly dismissed NOLs based on the same information as lacking sufficient evidence to sustain a violation.

19.     According to Bus Patrol's filings in this case, the NOL Certification is not even required by law.

20.     Local citizens also have no way to know that the entire process of identifying, issuing and enforcing NOLs was designed and implemented by out-of-state, for-profit contractors, and not by local government officials.

21.     Few vehicle owners challenge the liability assessed through the NOLs. When they do, they face traffic prosecutors who have been trained by Bus Patrol; who rely on evidence packets prepared by Bus Patrol; and who falsely advise the Court, and enter into evidence a false, sworn affirmation, that the elements of a violation have been met.

22.     In violation of VTL § 1174-a, the photographic evidence of a violation is not made available at the hearing for review and inspection. It is not entered into evidence, or available to the Judge at her discretion, but instead remains always in the custody of Bus Patrol. Instead, a certification is filed falsely claiming to attach a true copy of the photographic evidence, which never is actually attached or submitted to the courts.

23.     This is of special concern because Bus Patrol uses artificial intelligence as part of its data accumulation and evaluation process.  Defendants and the courts have no means of authenticating the images produced by Bus Patrol, and no copy of this evidence is made available in the record on appeal.

24.     On November 30, 2023, Appellate Term issued its opinion in the matter of *People v. Croce*, 201 N.Y.S.3d 595, holding that the standard evidence packet prepared by Bus Patrol and utilized in that case was not sufficient to establish liability under VTL § 1174.  Subsequently, Suffolk County regularly consents to reversal of trial court decisions finding liability under VTL § 1174-a, when the evidence of such liability is challenged ion appeal.  As alleged above, some trial courts similarly are as a blanket matter refusing to find vehicle owners liable based on the insufficiency of Bus Patrol's evidence packets.

25.     In apparent recognition that Bus Patrol's processes fail to meet the necessary legal standards, on December 22, 2023, one municipality entered an agreement with Bus Patrol designated "Amendment No. 1 to the Master Agreement."   Under this amendment, Local Government and Bus Patrol were required *inter alia* to  agree upon and enforce in good faith new processing guidelines for Bus Patrol to use when creating evidence packages, and that such new guidelines were to be "consistent with the requirements of New York State law."

26.     The contract amendment reflects an acknowledgement that prior evidence packets failed to meet the requirements of New York law.  The amendment does not, in any event, appear to address the deficiency that Bus Patrol issues NOLs without evidence that a violation of VTL § 1174 had occurred.

27.     The discretionary authority to devise, apply and supervise the process of issuing penalties to citizens may not permissibly be delegated to a for-profit private entity.  The power to

penalize private citizens is a governmental function, and when placed in the hands of private enterprise, driven by a motive for profit, it is subject to the corner-cutting and abuse displayed by Bus Patrol as alleged herein.

28.    Plaintiff therefore files this putative class action against Bus Patrol, seeking declaratory and injunctive relief, and damages.

## PARTIES

29.    Plaintiff Sarah Morgulis is a citizen of the State of New York.

30.    Plaintiff Sarah Morgulis has a motor vehicle registered in her name in the State of New York.

31.    Since August 6, 2019, Plaintiff Sarah Morgulis has received an NOL issued by Defendant Bus Patrol for alleged violations of VTL 1174-a, which contained material misrepresentations or omissions regarding the sufficiency of the evidence upon which the NOL was issued.

32.    In reliance upon these material misrepresentations or omissions, Plaintiff Sarah Morgulis remitted payment to Bus Patrol for the monetary penalty as set forth in the NOL.

33.    Defendant Bus Patrol is a limited liability corporation with a principal place of business at 8540 Cinder Bed Road, Suite 400, Lorton, VA 22079.

34.    Defendant Bus Patrol is registered with the New York State Department of State as a foreign limited liability company in New York County.

## JURISDICTION AND VENUE

35.    On or about November 16, 2023, Plaintiff filed this action in New York Supreme Court.

36.    By Notice of Removal dated January 5, 2024, Bus Patrol removed this action to federal court pursuant to CAFA.

## STATEMENT OF FACTS

**I.  Violations of Section 1174-a Require Establishing a Number of Affirmative Elements.**

> **A.  *Under Long-Established Precedent, Establishing a Prima Facie Violation of VTL § 1174 Requires Evidence of Multiple Elements.***

37.    In 1956, the State of New York enacted VTL § 1174 which prohibits the driver of a vehicle from passing a stopped school bus in certain circumstances.  Under the statute, a violation consists of a number of elements.  One such element is that the bus has extended its stop-arm.

38.    By its terms, a driver does not violate VTL § 1174 unless the school bus was marked and equipped in accordance with State law; had stopped for the purpose of receiving or discharging any passengers, or which has stopped because a school bus in front of it has stopped to receive or discharge any passengers; and had flashing red lights.

39.    New York courts universally have held that these requirements are *prima facie*, affirmative, elements of a violation of VTL § 1174.  *See, e.g., People v. Robinson,* 39 Misc. 3d 128(A) (App. Term 2013) (testimony that driver had passed a school bus with red warning lights illuminated and which had stopped to pick up passengers insufficient absent evidence that the vehicle was a school bus within the meaning of the statute, and that the vehicle bore the required identifying markings, lights, and signs); *People v. Brooks,* 38 Misc. 3d 946, 948 (Just. Ct. 2013) (accusatory instrument dismissed because it did not contain information sufficient to show *inter alia* that bus stopped to pick up or discharge passengers).

**B.  New York State Enacted VTL 1174-a Allowing for Camera-Based Notices of Violation to Be Issued for Violations of VTL 1174.**

40.     In 2019, New York State enacted VTL §1174-a.  This section authorizes local governments to pass Local Laws allowing them to rely on photographic evidence to assess liability on the owner of a vehicle that was operated in violation of VTL § 1174.

41.     Under section 1174-a, local governments are authorized to contract with school districts to equip school buses to operate "school bus photo violation monitoring systems" to produce evidence of a violation of VTL § 1174.

42.     Section 1174-a specifically requires that in order for liability to attach to a vehicle owner, there must as a predicate be a violation of Section 1174.  *See, e.g.,* Section 1174-a ("An owner liable for a violation of subdivision (a) of section eleven hundred seventy-four of this article pursuant to a local law or ordinance adopted pursuant to this section shall be liable for monetary penalties").[1]

43.     Similarly, the General Municipal Law in granting jurisdiction to local traffic and parking violations agencies ("TPVAs") over VTL § 1174-a  describes liability under this section as arising from violation of section 1174.  N.Y. Gen. Mun. Law § 371-a (authorizing jurisdiction over "the liability of owners for violations of section eleven hundred seventy-four of the vehicle and traffic law in accordance with section eleven hundred seventy-four-a of such law.").

44.     Section 1174-a also introduces an evidentiary rule.  Under this rule, a technician employed by the local government may issue a sworn or affirmed certificate based on her review of recorded images, and the certificate is deemed "prima facie evidence of the facts contained

---

[1] The elements of a violation for passing a stopped school bus are described by subdivision (a) of section 1174.  The section allowing for liability to be imposed on vehicle owners based on photographic evidence is numbered section 1174-a.  To avoid confusion between 1174(a) and 1174-a, we refer to the former simply as 1174 when possible in the body of this Complaint.

therein." VTL § 1174(e).  This evidentiary rule is limited to facts, not legal conclusions, and extends only to review of recorded images, but not other data.  *Id.*

45.     Violations of VTL § 1174-a are subject to fines of $250 for a first violation and up to $300 for each subsequent violation in an 18-month period.  VTL § 1174-a(c).

### C.  A Local Government that Issues an NOL must have Sufficient Evidence that a Violation has Occurred.

46.     Violations of Section 1174-a are different from violations of Section 1174 in important respects.  Violations of Section 1174 are assessed against a vehicle driver, who is observed violating the prohibition of that section.

47.     In contrast, violations of Section 1174-a are assessed against a vehicle owner, who may not have been driving the vehicle at the time of the alleged violation.  Vehicle owners who face liability under section 1174-a therefore may lack any personal knowledge regarding the circumstances surrounding the alleged violation.

48.     Under State law, the process for imposing liability against vehicle owners pursuant to VTL § 1174-a is different from the process for imposing liability against Vehicle operators under VTL § 1174, or other non-camera-based traffic and parking violations.

49.     In the case of traditional parking and traffic violations, alleged violators receive a Notice of Violation that informs them of the charges against them and allows for a plea of Guilty or Not Guilty to the violation.  *See* VTL, § 238.

50.     In contrast, section 1174-a provides for a Notice of Liability, instead of a Notice of Violation.

51.     A Notice of Liability reflects a determination by the issuing government that the elements of a violation had been met and that a violation has occurred.  A Notice of Liability which

includes a certification is sufficient to establish liability without further plea or agreement by the penalized party.

## II. Local Government Entered Turnkey Contracts with Bus Patrol Which Gave Bus Patrol Discretionary Authority over Imposing Penalties on Citizens.

### A. *Local Governments Entered Turnkey Agreements with Bus Patrol for Creating Camera-Based Liability of Vehicle Owners for Violation of Section 1174-a.*

52.     Bus Patrol is a national company that is in the business of monetizing violations of stop-arm laws such as VTL § 1174-a.

53.     Bus Patrol provides turnkey or "end to end" services to government entities through which it effectively issues, enforces and collects NOLs under VTL § 1174-a.

54.     In accordance with VTL 1174-a, local governments throughout New York State entered agreements with Bus Patrol.

55.     Bus Patrol entered into such a contract, designated as a Master Agreement, with Dutchess County, a copy of which is attached hereto as Exhibit "A." Under agreement with Bus Patrol, various municipalities adopted the terms of the Dutchess County Master Agreement, as modified, a sample of which is attached hereto as Exhibit "B." Suffolk County similarly entered an agreement with Bus Patrol, a copy of which is attached as Exhibit C.

56.     Bus Patrol has entered similar agreements with more than a dozen local governments throughout New York State, including *inter alia*, Albany County, Monroe County, Rockland County, Westchester County, Putnam County, the City of Niagara Falls, the City of Jamestown, the City of Long Beach and the City of Yonkers.

57.     Under the Master Agreement and similar agreements, Bus Patrol is responsible to install and maintain cameras and other equipment on school buses; use Artificial Intelligence to identify violations; confirm visually through photographic evidence that a violation has occurred;

design the NOL forms that get issued to vehicle owners; issue NOLs to purported violators; collect and disburse fines; produce evidence packages for use in court; train local traffic prosecutors and court personnel on the law and enforcement of 1174-a; track court proceedings; and arrange for positive press coverage.

### III. Local Government Issued NOLs without an Evidentiary Basis and that Contained Forged, False, and Fraudulent Sworn Certifications.

#### A. Bus Patrol Trained Local Government Technicians to Issue Notices of Liability Without Evidence that a Violation of Section 1174 had Occurred.

58.    Under the Master Agreement and similar agreements, Bus Patrol is responsible to train technicians and to provide them with photographic evidence sufficient to determine that a violation of VTL § 1174 had occurred.

59.    Thus, the Master Agreement establishes a duty to:

> Provide personnel to train appropriate personnel from the County, and/or Participating School Districts on the proper use of the Equipment, including training necessary for  authorized County personnel to access and review Violation Data; [and]

> Provide designated County Enforcement Technician with access to Violation Data to identify and issue Notices of Violations for School Bus Stop- Arm *in accordance with applicable provisions of the Law*[.] (emphasis added).

60.    Bus Patrol assigns processors to the contract.  According to the Master Agreement, Bus Patrol's "Processors are assigned to specific states and are trained on the state law and associated city or county ordinances. . . .  Bus Patrol uses only trained reviewers and processors familiar with the local requirements for evaluation of photographic evidence to pre-screen all SAEs and violations."

61.    According to training materials used by Bus Patrol in Dutchess County, the Town of Hempstead and elsewhere in New York, Bus Patrol does not train technicians to determine

that the elements of a violation of section 1174 had occurred, and does not provide them with the photographic evidence necessary to determine that a violation had occurred.

**B.** ***Local Government's NOLs Were Not Lawfully Issued Because they Were Issued Without Evidence that a Violation of Section 1174 Had Occurred.***

62.     The video cameras on the school buses used by Bus Patrol and reviewed by the technician to determine whether an NOL should be issued do not identify whether there are any passengers leaving or entering the bus while the stop sign is deployed.

63.     The video cameras do not capture any details of the stop signs themselves, including information about their dimensions, locations, and nature of the specifications of the lights on the signs.

64.     The video cameras also do not capture whether the school buses feature the lights, signage, or other features per the specifications of the law, as required under VTL § 375.

**C.** ***Local Governments Issued NOLs Containing False and Fraudulently Procured Sworn Certifications that a Violation Had Occurred.***

65.     According to the Master Agreement, "If the County enforcement technician decides a violation has occurred, the County enforcement technician clicks on the 'approve citation' button."

66.     That is not how the process actually works.  Under the process established and implemented by Bus Patrol, local government technicians' reviews of video evidence are entirely constrained by what is provided by Bus Patrol, and are addressed solely to the single issue identified by Bus Patrol.  The technicians see only what Bus Patrol provides, and determine only those issues that Bus Patrol presents.

67.     In practice, local government technicians never review sufficient evidence to determine whether a violation has occurred.  The technicians review only evidence relating to the

vehicle and the stop-arm elements of the violation.  The technicians do not review whether a bus is loading or unloading passengers (or whether the bus had stopped for another bus that is loading or unloading passengers).  The technicians also do not review whether the bus had the necessary equipment and markings.

68.    The technicians have access only the portions of the video feed that is provided to them by Bus Patrol, which on information and belief, are selected for technician review identified through Artificial Intelligence programs.

69.    Then, after reviewing the materials, the technicians are *not* asked to click a button marked "approve citation,"  as the Master Agreement requires.  They merely are asked to click a button marked "approve" – which in the circumstances means only that they agree that the photographic evidence shows the vehicle passing a stop-arm.  *See* Exhibit D, at p. 8.

70.    Clicking the "accept" button does not mean that the technicians approve of the conclusion that the bus had stopped in relation to picking up or discharging passengers, or that the bus contained the necessary markings, because that is not part of the evidence they are reviewing.

71.    Under its protocols, Bus Stop then converts the technicians' click of the "approve" button into a sworn certification that there is sufficient evidence that a violation of VTL § 1174 has occurred.  A copy of Ms. Morgulis' NOL, with the sworn certification, is attached hereto as Exhibit E.

72.    The issuance of a sworn or affirmed certification in the technicians' names when the technician did not themselves assert such oath or affirmation is false and fraudulent.

73.    Bus Patrol was under a duty to know the elements of a violation of VTL § 1174-a before causing an NOL to be issued, and before causing to be issued a sworn or affirmed statement that a violation had occurred.

74.     The statement that the technician had found that evidence existed supporting a violation of VTL § 1174-a is false and fraudulent.

75.     As a result of its protocols, Bus Patrol issued NOLs on behalf of local governments that were not based on sufficient evidence that a violation of section 1174 had occurred to give rise to liability under section 1174-a.

76.     As a result of its protocols, Bus Patrol issued NOLs on behalf of local governments containing false, fraudulent and fraudulently procured sworn statements that evidence existed supporting a violation of VTL § 1174-a.

77.     Bus Patrol has a significant financial interest in having vehicle owners pay penalties imposed through NOLs.  Bus Patrol also has a financial interest in avoiding challenges to NOLs, since it pays fees to local governments for each hearing.

78.     On information and belief, Bus Patrol, acting as agent for local governments, includes the signed affirmation on the Notices of Liability to deceive recipients into believing that there is sufficient evidence that a violation of section 1174 has occurred, and that it has sufficient evidence to prevail at trial, and to induce payment thereby. Bus Patrol continues to issue NOLs even after Appellate Term repeatedly dismissed NOLs as lacking sufficient evidence to sustain liability.

79.     NOLs issued by local governments were unsupported, ineffective and unlawful when issued because local governments did not have sufficient evidence to conclude a violation occurred at the time it issued them.

**IV. Plaintiff and Others Were Defrauded Into Paying the Purported Liability Based on the Fraudulent and Erroneous Factual Assertion that Technicians Had Determined that All Elements of VTL § 1174 had Been Met and had Sworn an Oath Certifying to that Conclusion.**

80.     Plaintiff and the putative class members identified below received NOLs assessing liability even though local governments had not determined that the elements of a violation had been made.

81.     The NOLs also contained the false, sworn NOL Certification falsely stating under oath that a violation had occurred.

82.     The sworn statements were false in, among other things, the following respects: (1) the technician did not conclude that a violation had occurred, only that the visual evidence demonstrated that a single element had been satisfied; (2) the technician merely clicked "accept," which was an insufficient basis on which to issue a signed certificate under oath that a violation had occurred; (3) there was not sufficient evidence to conclude that a violation had occurred.

83.     The NOL forms designed by Bus Patrol also provide that the fine "is not subject to discretionary reduction. You cannot plead to a lesser offense, and the fine cannot be reduced." This assertion is false, as under New York common law, courts are authorized to accept a plea to a lesser, non-included offense.

84.     On information and belief, the NOL forms contained the false statement that a lesser plea could not be accepted in order to induce vehicle owners to pay the penalties and not to request a hearing.

85.     Plaintiffs and others paid Notices of Liability based on a material mistake of fact, and were defrauded into paying Notices of Liability by the false, sworn statements included in the NOLs.  Plaintiff was not aware of facts sufficient for her to conclude that she was liable for a

penalty under VTL § 1174-a.  Had Plaintiff been aware that no such evidence had been collected or existed, she would not have paid her Notice of Liability.

86.    Plaintiffs and others had no basis on which to challenge the NOLs because they were without knowledge that the assertions and certifications therein were false.

87.    The payments received by Bus Patrol in response to the NOLs were windfalls to Bus Patrol.

## V.    Bus Patrol Prepared Fraudulent Evidence Packets for Use at Trial and Trained Traffic Prosecutors to Fraudulently Obtain Guilty Verdicts.

### A.    *The Evidence Packets Prepared by Bus Patrol Has Technicians Falsely Certify that the Evidence Reviewed Established a Violation of VTL § 1174.*

88.    Under the General Municipal Law, liability under Section 1174-a is adjudicated by local traffic and violations bureaus, or TVPAs.  GML § 371-a.  A TPVA has the same judicial authority as the district court to conduct trials, which are presided over by a judicial hearing officer.  The rules of evidence apply, and the People have the burden of proving guilt beyond a reasonable doubt.  Any appeals go to the Appellate Term

89.    As part of its responsibilities under the Master Agreement, Bus Patrol is required to produce evidence packets for use by traffic prosecutors at trial in the TVPAs.  On information and belief, those evidence packets are the only materials used to find liability and impose penalties under VTL § 1174-a.

90.    On information and belief, those evidence packets include the NOLs and their forged, false and fraudulent sworn-or-affirmed certifications.

91.    The evidence packets also include a signed and sworn certification from a county technician, referred to herein as the "Technician's Certificate."  That Technician's Certificate is separate and distinct from the sworn statement that appears on the face of the NOL, which is

referenced herein as NOL Certification.  A sample Technician's Certificate is attached hereto as Exhibit F.

92.     Under VTL § 1174-a, such a certification is prima facie evidence of the facts contained therein.

93.     The form Technician's Certificate is utilized by traffic prosecutors and relied upon by the judges as the basis for establishing liability under VTL § 1174-a.

94.     The form Technician's Certificate includes a paragraph that provides:

> That your affirmation [sic] hereby certifies that the attached recorded images are true and accurate copies of the recorded images are true and accurate copies [sic] of the recoded [sic] images reviewed by me on __ (date) at _(time) __ depicting a motor vehicle bearing registration number (plate#)_ _ being used in violation of New York State Vehicle and Traffic Law Section 1174-A at ____ (location) ____ on __ (date) at __ (time) _____.

95.     The form Technician's Certificate is false and misleading because the photographic evidence reviewed by the technicians supports only the conclusion that one of the elements necessary to establish liability under VTL § 1174-a was met, but not all such elements.

96.     The form Technician's Certificate is false and misleading because no copies of the recorded images are attached to the certificates at the time they are signed, or even later at the time they are submitted to the Court.  The electronic evidence generated by Bus Patrol never is reduced to an admissible format.

97.     The form Technician's Certificate used by local governments as the evidentiary basis for finding liability exceeds the authority for use of sworn certifications that was granted by Section 1174-a.  Section 1174-a authorizes technicians to certify only facts that are based on their review of recorded images, but not facts based on other data, and not to legal conclusions such as that the vehicle was operated in violation of law.

**B. Bus Patrol Trains Traffic Prosecutors Including by Providing Them with "Confidential" Training Manuals for Prosecutor's Use.**

98.     Bus Patrol also trains traffic prosecutors on how to prosecute violations of 1174-a. Under the Master Agreement, Bus Patrol is responsible to "Provide information and other reasonable assistance to Participating Municipalities as necessary for Participating Municipalities to adjudicate contested Violations or collect revenue from Violations." Bus Patrol provides traffic prosecutors with training manuals and/or other information regarding the elements of a violation, and how to prosecute NOLs.

99.     Based on the materials provided by Bus Patrol, local governments routinely prosecute violations of § 1174-a without evidence that the elements of such a violation did exist.

**C. Bus Patrol Controls the Adjudicatory Process Which Does Not Comply with the VTL.**

100.     Even for those who are not dissuaded by the false and misleading NOL Certifications, the adjudicatory process as designed by Bus Patrol fails to provide sufficient process to protect their rights.

101.     As previously alleged, traffic prosecutors provide a false Technician's Certificate to the Court to support liability.

102.     Bus Patrol controls the presentation of evidence to the courts.  On information and belief, including materials obtained through FOIL and the records of an appeal, the only evidence presented to the courts and entered into the court file is the Technician's Certificate and NOL.

103.     Under VTL § 1174-a, "[a]ny photographs, microphotographs, videotape or other recorded images evidencing . . . a violation shall be available for inspection in any proceeding to adjudicate the liability for such violation pursuant to a local law or ordinance adopted pursuant to this section."

104.    The video and pictures referenced in the Technician's Certificate are not presented to the Court or marked into evidence. They are not "available for inspection in [the] proceeding." VTL § 1174-a.  Instead, Bus Patrol makes the video and pictures available to the court through a computer feed.  The videos are not made part of the record of proceedings, are not entered into evidence, and are not available on appeal.  If the court wishes to access the videos, it must request access from Bus Patrol.

105.    Under the Records Retention and Disposition Schedule of the New York State Criminal Courts, case files, which include accusatory instruments, transcripts and other documents relating to each case, must be kept for a minimum of six years.

106.    When a FOIL request was sent to the Nassau County TVPA seeking records pertaining to hearings under VTL § 1174-a, the Nassau TVPA responded that "as we use the software of BusPatrol America LLC, very little records exist that we have been granted access." Exhibit H, at 1.

107.    Nassau TVPA then forwarded the FOIL request to Bus Patrol for a response.  *Id.* Bus Patrol declined to produce the case files that should have been kept by TVPA as court records. Exhibit H, at 3.

108.    Bus Patrol also objected to the production of training materials related to issuance of NOLs, NOL Certifications, and evidence packages, and determined on behalf of the Nassau TVPA that any such materials it had self-identified as privileged would not be produced.  *See, e.g.,* Exhibit H at 7-8.  Based on these materials and the responses received, Bus Patrol is providing confidential training to traffic prosecutors and other court-related personnel on the prosecution of NOL violations that it does not disclose to the public.

109.    When Suffolk County received a FOIL request for the disposition log of all cases, closed case files, and communications with JHO's regarding the adjudication of violation of § 1174, the municipality responded by advising that it did not possess or maintain such records. Exhibit H.

110.    As a result of the misinformation provided by traffic prosecutors and Bus Patrol, vehicle owners are routinely found liable for violations of VTL § 1174-a for which there is not substantial evidence that a violation had occurred.

111.    Upon information and belief, Bus Patrol trains court personnel on the elements of a violation of VTL § 1174-a.

### D. *Monetizing Stop-Arm Violations Reduces Public Safety*

112.    Under the Master Agreement, Bus Patrol is authorized to conduct media campaigns with or on behalf of local governments. *See* Exhibit A, at 40-41.

113.    While Bus Patrol and Local Government portray enforcement of Section 1174-a as beneficial to public health and safety, the conversion of the program into a profit-center for *inter alia* private contractors presents a threat to public health.

114.    There are various methods available to protect students who are getting on and off school buses. For example, school bus stops can be established in lightly trafficked areas. School buses could be equipped with devices to ensure that they flash yellow lights for a sufficient period to allow trucks and cars to come to a stop before the arm is deployed. These tactics would protect student safety, but would conflict with the private, revenue maximizing goal established under the Master Agreement.

115.    In contrast, the current system incentivizes the new and continued use of bus stops on highways and other highly trafficked areas. In addition to endangering child safety, this system

undermines public health and safety by causing traffic to come to an abrupt stop, especially because school buses frequently deploy their stop-arms without providing sufficient notice.

116.    The goal of protecting public health and safety therefore is undermined when the boarding of school buses becomes a profit-center for private enterprise and is overly relied upon for public finance purposes.

**E.    *The Appellate Term Held that Bus Patrol's Evidence Was Insufficient and Courts Began to Reject Liability Based on those Packets.***

117.    On October 8, 2021, Albert Croce received a Notice of Liability from Bus Patrol, issued on behalf of Suffolk County, for allegedly violating VTL § 1174-a.  Mr. Croce requested a hearing on the violation, which was held on September 21, 2022.  A copy of the Suffolk County Brief on appeal is attached as Exhibit I.  A copy of the appeal file as received from the County of Suffolk, including the transcript of the hearing below, is attached as Exhibit J.

118.    Certain video evidence was displayed at the hearing via live video feed, but the video itself was not entered into evidence.   The only documents entered into evidence were the Notice of Hearing and the Technician's Certificate.  *See* Exhibit J, 11-12 (Transcript of trial court hearing; 61-69 (certified record).

119.    On appeal, Mr. Croce argued that there was no record evidence that passengers were getting on or off the bus, or that the bus had the requisite markings required by law.  In response, Suffolk County conceded that under State law, such evidence could not be produced by the cameras mounted on the buses.  *See* Exhibit I, at  13-14.

120.    On November 30, 2023, Appellate Term issued its opinion, holding that the standard evidence packet prepared by Bus Patrol and utilized in that case was not sufficient to establish liability under VTL § 1174.  *People v. Croce, supra.*

121.    Subsequently, Suffolk County regularly agrees to reversal of NOLs that are challenged on appeal. *See, e.g., People v. Seidenberg,* 81 Misc. 3d 144(A) (N.Y. App. Term. 2024) ("Defendant appeals, and the People consent to a reversal in light of this court's decision in *People v Croce*"); *People v. Maxwell*, 81 Misc. 3d 144(A) (N.Y. App. Term. 2024) (same); *People v. Kurtzrock*, 81 Misc. 3d 144(A) (N.Y. App. Term. 2024) (same).

122.    Bus Patrol and Suffolk County continued to issue and prosecute NOLs after *Croce*. While ordinary citizens could in theory fight such NOLs by denying liability and then appealing, the cost of an appeal in such cases is $315, which exceeds the costs of an NOL.

123.    In recognition of the legal rulings that Bus Patrol does not collect sufficient evidence to support NOLs, according to news reports, a Judge in Colonie dismissed all such cases on his docket. Exhibit K.  Similarly, on information and belief, the Town of Hempstead regularly declines to prosecute cases in which a defendant challenges the sufficiency of the evidence packets.

124.    Bus Patrol was not permitted to issue NOLs on behalf of local governments if it did not collect evidence sufficient to establish liability.  Plaintiffs and others similarly situated would not have paid Notices of Liability if they were aware that Bus Patrol did not collect evidence sufficient to establish liability.

125.    After the decision in *Croce,* on or about December 23, 2023, the Town of Hempstead entered Amendment No. 1 to the Master Agreement, which provides that the Town and Bus Patrol will agree upon and enforce in good faith the processing guidelines Bus Patrol is to use in the future for creating evidence packages to submit to the applicable Town enforcement agency for review, which  must be consistent with the requirements of New York State law.  A copy of that agreement as at Exhibit L.

126.    The agreement reflects an acknowledgment that the system by which Hempstead issued and prosecuted NOLs was not in accordance with State law.

**VI.    Class Action Allegations**

127.    Plaintiff brings her claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and on behalf of the owners of vehicles who were issued NOLs by local governments pursuant to VTL 1174-a since August 6, 2019 ("the Class").

128.    Excluded from the Class are Bus Patrol; local governments in the State of New York, including their governing agencies, subsidiaries, affiliates, employees, officers and directors; any co-conspirators; federal governmental entities and instrumentalities of the federal government; states and their subdivisions, agencies and instrumentalities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and Class counsel.

129.    Plaintiff reserves the right to amend or modify the Class definitions in connection with a motion for Class certification or as warranted by discovery.

130.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in FRCP Rule 23.

131.    The Class encompasses tens of thousands of vehicle owners who received tickets in the State of New York. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

132.    The identity and address of each Class member can be readily ascertained through documents in the possession of Defendant and/or its agent, as it maintains records of violations containing contact information for members of the proposed Class. Class members may be notified

of the pendency of this action by mail and/or electronic mail and/or other electronic and social media means.

133.    There are questions of law and fact that are common to the Class and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiff and Class members arise from the common nucleus of operative facts surrounding Defendant's misconduct. The common questions include, but are not limited to:

A.  Whether Defendant routinely caused to be issued patently invalid NOLs for alleged violations of Section 1174-a;

B.  Whether Defendant caused to be issued NOLs containing certifications that were effectively forged because they technicians had not provided a real-time affirmation or oath?

C.  Whether Defendant caused to be issued NOLs that falsely concluded that sufficient evidence of a violation did exist.

D.  Whether Defendant caused to be issued NOLs that falsely concluded that a Town technician had concluded that sufficient evidence of a violation did exist.

E.  Whether Defendant falsely caused to be issued NOLs asserting that alleged violators could not plead to a lesser offense.

F.  Whether Defendant routinely collected fines for legally insufficient NOLs relying on insufficient evidence of the alleged violations;

G.   Whether Defendant routinely collected fines for legally insufficient NOLs for alleging Stop-arm Violations without satisfying the burden of establishing Plaintiff's and Class members' prima facie guilt as to the alleged violations;

H.  Whether Defendant was unjustly enriched due to its issuance of facially insufficient NOL which contained misrepresentations or omissions of information designed to induce vehicle owners to remit payment for violations of VTL 1174;

I.  Whether Defendant fraudulently caused Plaintiff and class members to remit payment and associated fees for legally insufficient Stop-Arm Violations;

J.  Whether Defendant induced Plaintiff and class members to remit payment based on negligently misrepresented material information.

K.  Whether Defendant utilized evidence packets that contained the false NOL certifications and an additional certification that a violation of VTL § 1174-a existed.

134.    Plaintiff's claims are typical of the claims of the Class since each Class member was subject to the same deceptive practices and course of conduct. Furthermore, Plaintiff and all members of the Class sustained monetary damages including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

135.    Plaintiff is committed to the vigorous prosecution of the Class's claims. Plaintiff will fairly and adequately represent the interests of the Class. No conflict of interest exists between the representative and the Class members or with respect to the claims for relief requested.

136.    The representative and her chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution. The representative's attorneys are competent in the relevant areas of the law, have sufficient experience to vigorously represent the Class and have the resources to ensure that this litigation will not be hampered by a lack of financial capacity.

137.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them.

138.    A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

139.    As a result of Defendant's conduct, Defendant is liable to Plaintiff and the Class for the full amount of any loss suffered by Plaintiff and the Class and any other actual, statutory or other applicable damages.

140.    The Class may also be certified because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

- Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## CAUSES OF ACTION

## COUNT I:  UNLAWFUL DELEGATION OF EXECUTIVE AUTHORITY

141.    Plaintiff repeats and realleges the allegations of paragraphs 1-140 as if fully set forth herein.

142.    Bus Patrol exercises discretionary and/or quasi-judicial authority over the issuance and collection of Notices of Liability under VTL § 1174-A , including *inter alia* by determining the elements of a violation of Section 1174-a, by designing Notices of Liability, and by designing the process for review of information by local technicians.

143.    Bus Patrol's exercise of discretionary and/or quasi-judicial authority over the issuance and collection of Notices of Liability is in violation of the New York Constitution.

## COUNT II:  UNLAWFUL DELEGATION OF PROSECUTORIAL AUTHORITY

144.    Plaintiff repeats and realleges the allegations of paragraphs 1-143 as if fully set forth herein.

145.    Bus Patrol exercises discretionary prosecutorial authority over the prosecution of Notices of Liability under VTL § 1174-A , including *inter alia* by determining the elements of a violation of Section 1174-a, by compiling the single-page affidavit used for prosecuting such liability, by controlling the presentation of evidence through its portals, by its training of prosecutorial personnel, and by the other means alleged herein.

146.    Bus Patrol's exercise of discretionary prosecutorial authority over the prosecution of Notices of Liability under VTL § 1174-a  is in violation of the New York Constitution.

## COUNT III: STATE CONSTITUTIONAL DUE PROCESS VIOLATION

147.    Plaintiff repeats and realleges the allegations of paragraphs 1-146 as if fully set forth herein.

148.    Bus Patrol's actions in *inter alia* causing the issuance of a Notice of Liability without sufficient evidence that a violation of VTL § 1174-a had occurred, its use of a false, fraudulent and forged technician's certification, its submission of evidence packets containing falsely sworn conclusions that photographs demonstrated that a violation of VTL § 1174-a had occurred,  unlawfully caused Plaintiff and members of the putative class to pay penalties under compulsion of law, without adequate process.

149.    Bus Patrol has deprived Plaintiff of her property rights without due process of law in violation of Article 1, Section 6, of the New York State Constitution.

## COUNT IV: STATE CONSITUTIONAL RIGHT TO EQUAL PROTECTION

150.    Plaintiff repeats and realleges the allegations of paragraphs 1-149 as if fully set forth herein.

151.    Bus Patrol causes local governments to issue and enforce NOLs to vehicle owners under VTL § 1174-a based on a single element, when local governments require multiple elements to establish a violation of VTL § 1174.

152.    Bus Patrol has deprived Plaintiff of the Equal Protection of the Law under the State Constitution.

## COUNT V: UNJUST ENRICHMENT

153.    Plaintiff repeats and realleges the allegations of paragraphs 1-152 as if fully set forth herein.

154.    Through its issuance and enforcement of unlawful NOLs, Bus Patrol unlawfully obtained money belonging to Plaintiff and members of the Class.

155.    Bus Patrol has been unjustly enriched through its retention of money belonging to Plaintiff and Class members.

156.    Plaintiff and Class members are entitled to restitution as it would be unjust and inequitable for Bus Patrol to retain money it received as a result of its unlawful conduct. Such money belongs in good conscience to Plaintiff and Class members.

157.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class members are entitled to restitution from Bus Patrol, and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Bus Patrol through this inequitable conduct.

## COUNT VI: CONVERSION

158.    Plaintiff repeats and realleges the allegations of paragraphs 1-157 as if fully set forth herein.

159.    Bus Patrol intentionally and without authority, assumed or exercised control over Plaintiff's and Class member's payment of penalties, interfering with their right of possession of that money.

160.    Each penalty payment was a specific, identifiable sum when paid.

161.    Bus Patrol is liable to Plaintiff and the putative class for conversion.

## COUNT VII: NEGLIGENT MISREPRESENTATION

162.    Plaintiff repeats and realleges the allegations of paragraphs 1-161 as if fully set forth herein.

163.    Defendant falsely represented that its NOLs were legally sufficient, and that local governments had satisfied their burden of establishing Plaintiff and Class members' prima facie liability.

164.    Defendant presented or caused to be presented to Plaintiff a fraudulent and false NOL Certification.

165.    At the time Defendant made these representations to Plaintiff and Class members, Defendant should have known that these representations were false or that Defendant made them without knowledge of their truth or veracity.

166.    Defendant had, and continue to have, a duty to inform Plaintiff and Class members that their NOLs were legally insufficient, and that the local government and/or Bus Patrol had failed to satisfy its burden of establishing Plaintiff's and Class members' prima facie liability.

167.    The information that Defendant failed to provide is material information that Defendant had, and continue to have, a duty to disclose to those remitting payment and/or associated fees for the alleged violations.

168.    Based upon Defendant's negligent misrepresentations and/or omissions and/or concealments of these material facts, Defendant induced Plaintiff and Class members to rely upon its misrepresentations and/or omissions and to remit payment and associated fees for legally insufficient alleged Stop-Arm Violations.

169.    Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally insufficient alleged Stop-Arm Violations.

## COUNT VIII: FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT

170.    Plaintiff repeats and realleges the allegations of paragraphs 1-169 as if fully set forth herein.

171.    Defendant falsely represented to Plaintiff and Class members that its NOLs were legally sufficient, and that it satisfied their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations.

172.    Defendant knowingly issued NOLs containing false and fraudulent NOL Certifications.

173.    Defendant engaged in the above-described actionable statements and/or omissions and/or concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiff and Class members rely upon such concealments, suppressions and omissions.

174.    Defendant has and continues to have a duty to inform Plaintiff and Class members that its NOLs  were legally insufficient, and that the local government and/or Bus Patrol failed to satisfy its burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations.

175.    Based upon Defendant's false representations and/or omissions and/or concealments of these material facts, Defendant induced Plaintiff and Class members to rely upon Defendant's misrepresentations and/or omissions and to remit payment and associated fees for legally insufficient alleged Stop-Arm Violations.

176.    Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and/or omissions. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class members have sustained economic injury by paying fines and associated fees for legally insufficient alleged Stop-Arm Violations.

177.    As a result of Defendant's deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT IX: PROHIBITION ON EXCESSIVE FINES IN VIOLATION OF NEW YORK STATE CONSTITUTION, ART I, SEC 5.

178.    Plaintiff repeats and realleges the allegations of paragraphs 1-177 as if fully set forth herein.

179.    Plaintiff and Class members are persons within the meaning of Article 1, Section 6, of the New York State Constitution.

180.    Plaintiff and Class members are citizens of the United States.

181.    New York State Constitution, Art. 1, Sec. 5 parallels the wording of the Eighth Amendment to the United States Constitution, which sets forth that "Excessive bail shall not be required nor excessive fines imposed..."

182.    The Excessive Fines Clause of the New York State Constitution applies to both criminal and civil matters, in instances where the government is taking away an individual's property or otherwise extracting from them a monetary amount.

183.    The purpose of the Excessive Fines clauses was to provide citizens protection from the imposition by the government entities of fines which were grossly excessive or disproportionate to the gravity of the accused's offense, so as to constitute a deprivation of property by the government without due process of law.

184.    The fines associated with the NOLs which are imposed on Plaintiff and Class members in conjunction with the NOLs which contain false certifications by the Defendant and are not substantiated by sufficient evidence are excessive fines under the meaning of the New York State Constitution.

185.     The only improper action by Plaintiff and Class members is the fact that they were issued the NOLs in question without any offer of proof, evidence of guilt, or even probable cause that such violation has even occurred beyond Defendant's issuance of the NOL, which in and of itself is insufficient as a matter of law and was issued in contravention to the authorizing statute.

186.     By charging a fine and fee based on these NOLs, there is a clear violation of New York State's Constitutional prohibition upon excessive fines in comparison to the accused actions.

187.     Defendant has acted with deliberate indifference to the Plaintiff and Class members' rights under the New York State Constitution's Excessive Fines Clause (Art. 1, Sec. 5).

188.     As a direct and proximate result of aforesaid acts and omissions of the Defendant, Plaintiff's and Class Members' right under the New York State Constitution's Excessive Fines Clause have been violated.

189.     By its acts and omissions, Defendant has acted under the color of state law to deprive the Plaintiff and Class members of their rights under the New York State's Excessive Fines Clause, and therefore Plaintiff and Class members have a right to bring a tort cause of action against Defendant for its breach of the protections found in the New York State Constitution.

190.     As a result of Defendant's violation of Plaintiff and Class members rights under the New York State Constitution, Plaintiff and Class members are entitled to legal and equitable relief, including a refund of the portion of the fines and fees that were remitted to Defendant, damages, pre-judgement and post judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT X:  PROHIBITION ON FINES WITHOUT REASONABLE CAUSE IN VIOLATION OF NEW YORK CIVIL RIGHTS LAW 11

191.     Plaintiff repeats and realleges the allegations of paragraphs 1-190 as if fully set forth herein.

192.    As set forth more fully above, the fines issued in conjunction with the NOLs described herein were imposed upon individuals whose only allege infraction was that they were captured on a video by Bus Patrol and issued an NOL by the Defendant without any proof of guilt.

193.    New York Civil Right Law 11 prohibits any government entity from issuing a fine and/or penalty against any individual "without reasonable cause."

194.    The explicit wording of New York Civil Rights Law prevents Defendant from issuing any fines against individuals without first making a finding of fact that there is sufficient evidence or proof that reasonable cause exists to believe that an infraction of the law has occurred.

195.    However, Defendants have not made such a finding of fact.

196.    Therefore, fines issued by Defendant in conjunction with these NOLs were contrary and inconsistent with the New York State Constitution

197.    Defendant has acted with deliberate indifference to the Plaintiff and Class member's rights under New York State Civil Rights Law 11.

198.    As a direct and proximate result of the aforesaid acts and omissions of the defendant, plaintiff's rights under the New York Civil Rights Law 11 have been violated.

199.    As a result of Defendant's violation of Plaintiff and Class members rights under the New York State Constitution, Plaintiff and Class members are entitled to legal and equitable relief, including a refund of the portion of the fines and fees that were remitted to Defendant, damages, pre-judgement and post judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT XI GBL § 349

200.    Plaintiff repeats and realleges the allegations of paragraphs 1-199 as if fully set forth herein.

201.    Defendant engaged in deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in the state of New York.

202.    As a result of Defendant's deceptive acts and practices, Plaintiff and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post judgment interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT XII: FEDERAL DUE PROCESS CLAIM UNDER 42 U.S.C § 1983

203.    Plaintiff repeats and realleges the allegations of paragraphs 1-202 as if fully set forth herein.

204.    Acting under color of State law, Bus Patrol has deprived Plaintiff of her due process rights in violation of the Fourteenth Amendment of the Federal Constitution.

## COUNT XIII: FEDERAL EQUAL PROTECTION CLAIM UNDER 42 U.S.C § 1983

205.    Plaintiff repeats and realleges the allegations of paragraphs 1-204 as if fully set forth herein.

206.    Acting under color of State law, Bus Patrol has deprived Plaintiff of her equal protection rights in violation of the Fourteenth Amendment of the Federal Constitution.

## DECLARATORY JUDGMENT

207.    Plaintiff repeats and realleges the allegations of paragraphs 1-206 as if fully set forth herein.

208.    Plaintiff seeks judgment declaring that the agreements entered by Bus Patrol with local governments unlawfully delegated executive authority to Bus Patrol, including *inter alia* by vesting it with discretionary authority in determining the conditions for issuing NOLs; determining the evidence to be gathered to support issuance of NOLs; determining the format of the NOLs; determining the evidence to be reviewed by Local Government in issuing NOLs; identifying and

preparing the materials constituting the evidence packets for submission to courts in hearings on NOLs; preparing the Technician's Certificates to be signed by Town personnel as evidence in hearings on NOLs; confidentially training prosecutor's regarding prosecution of NOLs; managing and controlling evidentiary materials used in hearings on NOLs; and otherwise delegating discretionary authority to Bus Patrol, all of which were performed by Bus Patrol in derogation of New York law.

209.    Plaintiff further seeks judgment declaring that the Bus Patrol's agreements with local governments unlawfully delegated prosecutorial authority to Bus Patrol, including *inter alia* by vesting Bus Patrol with discretionary to determine the elements of a violation in prosecuting NOLs; in identifying and preparing the materials constituting the evidence packets for submission to courts in hearings on NOLs; in preparing Technician's Certificates to be signed by local government personnel as evidence in hearings on NOLs; in the confidential training of prosecutor's regarding prosecution of NOLs; and otherwise delegating discretionary prosecutorial authority to Bus Patrol, all of which were performed by Bus Patrol in derogation of New York law.

210.    Plaintiff further seeks judgment declaring that issuance, prosecution, and collection of NOLs and associated penalties as alleged herein, including such issuance, prosecution and collection without satisfying the elements of VTL § 1174, the false, fraudulent, and unauthorized NOL Certifications, the false and fraudulent Technician's Certificates, the failure to produce statutorily required evidence, and the other violations alleged herein denied Plaintiff and others their due process of law under the State Constitution.

211.    Plaintiff further seeks judgment declaring that the imposition of fines and penalties on vehicle owners based on a single element under VTL § 1174-a, when on the same alleged

violation, violators of VTL § 1174 were subject to penalties only on a showing of three elements; and the dismissal by Local Government and/or Bus Patrol of NOLs against favored vehicle owners, denied Plaintiff and the class the Equal Protection of the Law under the State Constitution.

212.    Plaintiff further seeks judgment declaring that, on the facts alleged herein, Local Government has been and continues to be unjustly enriched through its retention of penalties unlawfully imposed; that it has and continues to convert an identifiable sum of money through its imposition and retention of penalties unlawfully imposed; that it has and continues to engage in negligent misrepresentations, and fraudulent misrepresentations; that its imposition and retention of unlawful penalties constitutes a violation of the State Constitutions ban on excessive penalties, and in violation of Civil Rights Law § 11; and that its acts as alleged herein constitute a violation of General Business Law § 349.

213.    An actual case or justiciable controversy exists regarding the legality of these practices as Defendant continues to date to issue these NOLs which are legally insufficient.

214.    The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties and will provide certainty regarding the validity of the certification and issuance of these NOLs.

215.    By reason of the foregoing, Plaintiff and Class members are entitled to declaratory judgment declaring that the practices complained of herein are unlawful under the law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

(1) Declaring that the practices complained of herein are unlawful under law;

(2) Certifying this action as a class action;

(3) Designating Plaintiff as representative of the Class;

(4) Designating Plaintiff's counsel as counsel of record for the Class;

(5) Determining the damages sustained by Plaintiff and the Class as a result of

Defendant's unlawful conduct, and awarding those damages against Defendant and in

favor of the Plaintiff and the Class, plus such pre-judgment and post-judgment interest as

may be allowed;

(6) Awarding Plaintiff and the Class any applicable statutory damages;

(7) Awarding Plaintiff and the Class any and all other applicable damages;

(8) Awarding Plaintiff and the Class their reasonable attorneys' fees and costs, including

but not limited to under 42 U.S.C. § 1988; and

(9) Granting Plaintiff and the Class such other and further relief that the Court deems just

and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.


Dated: Brooklyn, New York
    March 21, 2023

                            Respectfully Submitted,

                            Aron Law, PLLC

By:   */s/ Joseph H. Aron*
      Joseph H. Aron, Esq.
      Attorneys for Sergey Kadinsky
      3692 Bedford Avenue, Suite P2
      Brooklyn, New York 11229
      Phone (718) 635-9500
      jaron@aronlawpllc.com

      Martin Bienstock
      BIENSTOCK PLLC
      15 West 38 Street, Suite 628
      New York, N.Y. 10018

(646) 693-2934
mbienstock@bienstockpllc.com