UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARAH MORGULIS, *on behalf of
herself and all other similarly
situated*,

                                   Plaintiff,

                – against –

BUS PATROL AMERICA, LLC,

                                   Defendant.

**OPINION & ORDER**

24 Civ. 113 (ER)

RAMOS, D.J.:

        This putative class action arises from allegations that BusPatrol, LLC fraudulently

issued notices of liability, in violation of state and federal law, to those accused of passing

stopped school buses.[1]  Doc. 21.  Before the Court is BusPatrol's motion to dismiss the

complaint in its entirety for failure to state a claim.  Doc. 23.  For the reasons set forth

below, the motion is GRANTED.

I.    **BACKGROUND**

      **A.  Factual background**

        The following facts are based on the allegations in the complaint, which the Court

accepts as true for purposes of the instant motion.  *See, e.g.*, *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012).

        New York Vehicle & Traffic Law ("VTL") § 1174 provides that drivers shall not

pass an appropriately-marked school bus which has its stop-arm[2] activated when it is

receiving or discharging passengers.  ¶ 6.[3]  In 2019, the New York State Legislature

---

[1] Plaintiff Sarah Morgulis identifies the defendant as "Bus Patrol America, LLC" in her complaint.  Doc. 21.  Defendant refers to itself as "BusPatrol, LLC."  Doc. 25.  Moreover, Plaintiff's complaint quotes a local government referring to Defendant as "BusPatrol" rather than Bus Patrol.  Doc. 21 ¶ 106.  Accordingly, the Court will refer to Defendant as BusPatrol.

[2] The stop-arm is a stop sign which extends from the side of a school bus when it is stopped.  Doc. 25 at 1.

[3] Unless otherwise noted, citations to "¶ __" refer to the amended complaint, Doc. 21.

enacted VTL § 1174-a. ¶ 7. Section 1174-a authorizes counties, cities, towns, and villages to establish photo monitoring enforcement for violations of VTL § 1174 and impose monetary liability on the owners of implicated vehicles. *Id.*

Defendant BusPatrol is a private, national vendor that offers turnkey stop-arm photo enforcement services to local governments. ¶¶ 52–53. BusPatrol has entered into agreements with more than a dozen local governments throughout New York State, including Albany County, Monroe County, Rockland County, Westchester County, Putnam County, the City of Niagara Falls, the City of Jamestown, the City of Long Beach, and the City of Yonkers. ¶ 56.

BusPatrol's end-to-end service includes installing and maintaining cameras on school bus stop-arms as well as issuing notices of liability to purported violators. ¶ 57. Section 1174-a provides that notices of liability "shall be prepared and mailed by the county, city, town or village in which the violation occurred, or by any other entity authorized by such county, city, town or village to prepare and mail such notification of violation." Doc. 28-2 at 5. According to Morgulis, the notices are issued "on behalf of local governments." ¶ 75. Under § 1174-a, notices of liability are sent to individuals "alleged to be liable." *Id.*

Plaintiff Sarah Morgulis is a New York resident who received a notice of liability for an alleged § 1174-a violation. ¶¶ 29–31. The notice of liability received by Morgulis is attached to the complaint. *See* Doc. 21-5. The notice indicates that a vehicle owned by Morgulis was recorded passing a stopped school bus in West Hempstead, New York on April 4, 2023. *Id.* The notice includes pictures of the alleged violation, indicates a fine amount of $250, instructs Morgulis that she may "deny liability" to receive a hearing, and provides a signed "specialist certification" stating that:

> Based on my review and inspection of the evidence, including rec-
> orded images, I swear or affirm under penalty of perjury that there
> is sufficient evidence that a violation of NY VTL 1174-a did occur,
> as more fully described herein, for which the above named vehicle

owner is liable pursuant to Chapter 186 of the Code of the Town of
Hempstead and NY VTL 1174-a.

Doc. 21-5.  Moreover, the notice of liability states that "[p]ayment is an **ADMISSION OF LIABILITY** and waives your right to a hearing." (alteration in original).  *Id.*

Morgulis acknowledges that she paid the $250 monetary penalty set forth in her notice of liability.  ¶ 32.  Now, Morgulis protests that her payment was made in reliance on misrepresentations by BusPatrol.  *Id.*  Specifically, Morgulis takes issue with the specialist certification, consisting of a "sworn statement issued by a local government Specialist," ¶ 15, included with the notice of liability.

First, she alleges that BusPatrol fails to collect all of the evidence necessary to faithfully establish a § 1174-a violation.  ¶¶ 12–13.  Section 1174-a prohibits passing a school bus that is equipped with requisite markings, ¶ 6, and the cameras used by BusPatrol do not capture the dimensions and specifications of the signage or markings on the bus, ¶¶ 62–67.  Accordingly, Morgulis argues that the local government technicians could not possibly attest that they reviewed "sufficient evidence that a violation of NY VTL 1174-a did occur."  *Id.*

Second, Morgulis alleges that the certifications are "fraudulent" because the technicians, when approving notices, do not explicitly attest that they reviewed sufficient evidence of a violation.  ¶¶ 67–72.  Instead, Morgulis claims that the technicians merely attest, by clicking "approve," that the images they are provided by BusPatrol show a vehicle passing a bus with an activated stop-arm—without regard for whether the buses are (1) adequately marked or (2) receiving or dropping off passengers, as the statute also requires.  *Id.*  Morgulis provides an image of the BusPatrol portal used by technicians to approve individual notices of liability.  *See* ¶ 13.

Third, Morgulis alleges that the technicians responsible for approving notices of liability are inadequately trained.  ¶ 61.  Morgulis cites training materials used by

BusPatrol in alleging that technicians are not trained to determine whether the elements of a § 1174-a violation are satisfied.  *Id.*

In addition to issuing notices of liability, BusPatrol also trains local traffic prosecutors and produces evidence packets for their use in each § 1174-a prosecution.  ¶¶ 89–90.  BusPatrol includes a Technician's Certificate in each evidence packet, stating that the vehicle at issue was recorded "in violation of New York State Vehicle and Traffic Law § 1174-A."  ¶ 94.  According to Morgulis, the Technician's Certificate relies on the photos produced by BusPatrol, which do not provide sufficient evidence as to all of the elements of a § 1174-a violation.  ¶ 95.

In her amended complaint, Morgulis refers to recent developments regarding § 1174-a enforcement.  First, in *People v. Croce*, 201 N.Y.S.3d 595 (N.Y. App. Term 2023), the Supreme Court of the State of New York, Appellate Term, Second Department found that an evidence packet prepared by BusPatrol was not sufficient to establish liability pursuant to § 1174-a.  ¶¶ 117–120.  A copy of the *Croce* motion papers and opinion is attached to Morgulis' amended complaint.  *See* Doc. 21-10.  Morgulis alleges that, after *Croce*, Suffolk County has "regularly" agreed to the reversal of notices of liability when challenged on appeal.  ¶ 121.  Morgulis also alleges that "the Town of Hempstead regularly declines to prosecute cases in which a defendant challenges the sufficiency of the evidence packets."  ¶ 123.  In addition, the Town of Hempstead has since amended their agreement with BusPatrol, establishing "processing guidelines" for BusPatrol "to use for creating evidence packages."  ¶ 125; *see* Doc. 21-12 at 4.

### B. Procedural history

On November 27, 2023, Morgulis filed this action against BusPatrol in the Supreme Court of the State of New York, County of New York.  Doc. 1 at 1–2.  BusPatrol removed the case to this Court pursuant to the Class Action Fairness Act of 2005 on January 5, 2024.  *Id.*  BusPatrol filed a motion to dismiss on March 1, 2024.  Doc. 18.

Morgulis filed an amended complaint on March 21, 2024, Doc. 21, after which the Court dismissed BusPatrol's initial motion to dismiss as moot.  Doc. 23.

Morgulis' putative class comprises vehicle owners who were issued notices of liability pursuant to § 1174-a beginning August 9, 2019.  ¶ 127.  Morgulis' amended complaint asserts claims for (1) unlawful delegation of executive authority; (2) unlawful delegation of prosecutorial authority; (3) a state constitutional due process violation; (4) a state constitutional equal protection violation; (5) unjust enrichment; (6) conversion; (7) negligent misrepresentation; (8) fraudulent concealment and inducement; (9) a state constitutional excessive fines violation; (10) fines without cause in violation of New York Civil Rights Law § 11; (11) deceptive business practices in violation of General Business Law § 349 violation; (12) a federal due process violation pursuant to 42 U.S.C. § 1983; and (13) a federal equal protection violation pursuant to 42 U.S.C. § 1983.  ¶¶ 141–206. Morgulis also seeks declaratory judgment as to her claims.  ¶¶ 207–15.

On April 12, 2024, BusPatrol filed a motion to dismiss Morgulis' amended complaint, Doc. 23, arguing that the complaint fails to plead a plausible cause of action. *Id.*

## II.   LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Koch*, 699 F.3d at 145.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,

556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.    DISCUSSION

As set forth above, Morgulis alleges a panoply of claims under federal and state law, and, in addition, seeks declaratory judgment as to her claims.[4]

### A.  Unlawful Delegation (Counts 1 & 2)

Morgulis claims that BusPatrol exercises judicial and prosecutorial discretion in violation of the New York State Constitution.  ¶¶ 141–46.  According to Morgulis, BusPatrol assumes the responsibility of enforcing § 1174-a under its agreements with local governments, while the local governments are relegated to a mere "perfunctory role" of completing "a single, routine task assigned to it by Bus Patrol, in a manner directed by Bus Patrol."  ¶ 11.

---

[4] BusPatrol argues that the claim for declaratory judgment should be dismissed because it is "unnecessary and inappropriate when [plaintiff] has an adequate, alternative remedy in another form of action."  Doc. 25 at 24 (citing *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 54 (1st Dept 1988)) (alteration in original).  Morgulis states in response that she is seeking declaratory relief as a remedy, not as a separate cause of action.  Doc. 28 at 25 n.2.  The Court agrees with BusPatrol to the extent that declaratory judgment is sought as a standalone cause of action, and construes it instead as a request for declaratory relief in connection with the other claims in the amended complaint.  *See, e.g.*, *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) (construing declaratory judgment cause of action "as a request for declaratory relief, not a separate cause of action").

Even when generously interpreted, Morgulis' unlawful delegation claims fail because they are, on their face, refuted by her own allegations.  Morgulis claims that BusPatrol "exercises discretionary prosecutorial authority over the prosecution of Notices of Liability."  ¶ 145.  However, the motion papers in *People v. Croce*, which are attached to Morgulis' amended complaint, show that the government, rather than BusPatrol, is actually prosecuting the violation.  *See* Doc. 21-10.  Morgulis apparently concedes this point, alleging that "*local governments routinely prosecute violations of § 1174-a* without evidence that the elements of such a violation did exist."  ¶ 99 (emphasis added).  Morgulis also alleges that "the Town of Hempstead regularly declines to prosecute cases in which a defendant challenges the sufficiency of the evidence packets," demonstrating that local government officials maintain prosecutorial discretion when contracting with BusPatrol.  *See* ¶ 123.

In opposition to BusPatrol's motion to dismiss, Morgulis clarifies that she is "alleging that, in practice, Bus Patrol [sic] itself makes all the policy determinations" relating to § 1174-a enforcement.  Doc. 28 at 22.  However, Morgulis' amended complaint does not refer to any policy determinations which BusPatrol makes in place of local governments.  Moreover, Morgulis' assertion that BusPatrol makes "all the policy determinations" is belied by her allegation concerning the Town of Hempstead's refusal to prosecute certain § 1174-a cases.  *See* ¶ 123.

Morgulis also refers to BusPatrol's "training of prosecutorial personnel" in relation to her nondelegation claim.  ¶ 145.  However, accepting the allegation as true, the Court fails to see its relevance to the claim that BusPatrol was vested with "discretionary prosecutorial authority" in violation of the state constitution.  ¶ 146.

Accordingly, because the implausibility of Morgulis' delegation claims is clear on the face of the complaint, BusPatrol's motion to dismiss the first and second causes of action is granted.  *See Collins v. City Univ. of New York*, No. 21 Civ. 9544 (NRB), 2023

WL 1818547, at *11 (S.D.N.Y. Feb. 8, 2023) (dismissing plaintiff's complaint where plaintiff's claim is "belied by his own allegations.")

### B.  Due Process (Counts 3 & 12)

Morgulis claims that BusPatrol deprived her of her property rights without due process of law in violation of Article 1, § 6 of the New York State Constitution, ¶¶ 147–49, and the Fourteenth Amendment of the United States Constitution, ¶¶ 203–04.

Morgulis and BusPatrol do not present discrete arguments as to the federal or state due process claims, instead discussing both claims together.  *See* Doc. 25 at 12–13; *see* Doc. 28 at 22–23.  The Court also addresses the two claims jointly because "New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive."[5]  *Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 427 n.13 (2d Cir. 2011) (collecting cases).

First, BusPatrol argues that Morgulis' claims are barred by the voluntary payment doctrine.  Doc. 25 at 10–11.  The voluntary payment doctrine precludes a plaintiff from recovering payments "made with full knowledge of the facts" and with a "lack of diligence" in determining their rights and obligations.  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (citation omitted).

As an affirmative defense, courts in the Circuit have been reluctant to dismiss claims pursuant to the voluntary payment doctrine at the pleading stage, doing so only where "its applicability [is] apparent on the face of the complaint…."  *Wurtz v. Rawlings Co., LLC*, No. 12 Civ. 01182 (JFB) (AKT), 2014 WL 4961422, at *6 (E.D.N.Y. Oct. 3,

---

[5] BusPatrol does not contest whether a claim may be brought under both the New York State Constitution and the United States Constitution pursuant to 42 U.S.C. § 1983.  *But see Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.") (quotations and citation omitted).  BusPatrol also does not raise any arguments concerning the availability of a claim under 42 U.S.C. § 1983 in connection to an alleged state law violation.  *But see Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 607 (E.D.N.Y. 2011) ("The Second Circuit has held that a plaintiff cannot maintain a cause of action under Section 1983 when the alleged deprivation of due process is based on the violation of state law.").

2014); *see id.* (noting that application of the "voluntary payment doctrine may be inappropriate at the motion to dismiss stage."); *see also Spagnola*, 574 F.3d at 73 (finding at the motion to dismiss stage that "it is too early in this case" to adjudicate the voluntary payment doctrine affirmative defense).

Importantly here, Morgulis refers to the technician's certification as "fraudulent" in bringing her claims.  ¶ 148.  Accordingly, because it is not apparent to the Court from the face of the complaint that the payments were "made with full knowledge of the facts," the Court declines to dismiss Morgulis' claims pursuant to the voluntary payment doctrine.  *See Muladzhanov v. City of N.Y.*, No. 18 Civ. 00930 (RRM) (ST), 2020 WL 1244656, at *4 (E.D.N.Y. Mar. 16, 2020) ("[S]ince the Plaintiffs allege that they were induced to pay the fines due to Defendants' misrepresentation, the voluntary payment doctrine would not bar Plaintiffs' claims.").

Alternatively, BusPatrol argues that Morgulis fails to state a claim regarding her alleged due process violations because she fails to allege a constitutionally inadequate process.  Doc. 25 at 12–13.

"A procedural due process claim is composed of two elements:  (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022) (citing *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)).  BusPatrol does not dispute Morgulis' property interest in the $250 fine.  Turning to the second element, the Court "asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided." *Rivera v. Community School District Nine*, 145 F. Supp. 2d 302, 306 (S.D.N.Y. 2001) (quotations and citation omitted).  "Due process requires, as a general matter, an opportunity to be heard at a meaningful time and in a meaningful manner." *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 451 (S.D.N.Y. 2010) (quotations and citation omitted)

BusPatrol cites *Matter of Serby v. City of New York*, 185 N.Y.S. 3d 660 (App. Div. 1st Dept. 2023) for the contention that notice of a traffic violation and the opportunity to contest liability at a hearing provide constitutionally adequate process.  Doc. 25 at 12.  In *Serby*, a defendant contested a speed camera violation by alleging, *inter alia*, constitutionally inadequate process.  185 N.Y.S. 3d at 661.  The Appellate Division found that the procedure offered to the defendant, consisting of "notice of his violation and an opportunity to challenge the violation at a hearing," was "constitutionally sufficient."  *Id.*

Here, the notice of liability issued to Morgulis provided an opportunity to be heard.  Morgulis does not dispute that hearings are available to those who request them, even though she herself paid the fine and thereby admitted liability in place of a hearing. *See* Doc. 21-5.  Indeed, Morgulis references the hearings available to those who receive notices of liability throughout her amended complaint.  *See, e.g.,* ¶¶ 22; 78; 84; 99. Morgulis does not attempt to distinguish the present facts from those at issue in *Serby*, and the Court agrees that where, as here, alleged traffic violators are provided notice and an opportunity to be heard, they are not deprived of due process.  *Cf. Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 390–91 (E.D.N.Y. 2017) ("to state a due process claim, 'a plaintiff must [allege] that he or she was deprived of 'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case") (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)) (alteration in original).

In her response, Morgulis appears to argue that even though the opportunity to be heard was available, the hearings are a "sham" so as to deprive them of their remedial weight.  Doc. 28 at 22.  Yet Morgulis fails to offer a factual basis in the amended complaint to support her assertion.  As an initial matter, this is not Morgulis' argument to make.  She has not certified a class and "thus cannot assert the rights for a plaintiff" that received a purportedly sham hearing.  *See Torres v. City of N.Y.*, 590 F. Supp. 3d 610, 629 (S.D.N.Y. 2022).  Moreover, as addressed above, it is government officials who prosecute

the hearings, and hence BusPatrol would not be liable for any deprivation of property rights without due process. Finally, Morgulis' allegations concerning the inadequacy of evidence presented by prosecutors in the hearings, ¶ 123, does not reflect on the availability of the hearings themselves—especially in light of the appellate options available thereafter. *See, e.g., People v. Croce*, 201 N.Y.S.3d 595; *cf. Muladzhanov*, 2020 WL 1244656, at *6 (noting, in dismissing a due process challenge to a New York traffic enforcement scheme, that "Plaintiffs' brief cites to several cases in which individual plaintiffs successfully overturned PVB ALJs' decisions by seeking judicial review through an Article 78 proceeding.").

Accordingly, the Court finds that Morgulis has not adequately alleged that she was not offered a sufficient opportunity to be heard in a meaningful way, and BusPatrol's motion to dismiss the third and twelfth causes of action is granted.

### C. Equal Protection (Counts 4 & 13)

Morgulis claims that BusPatrol "causes local governments to issue and enforce notices of liability to vehicle owners under § 1174-a based on a single element, when local governments require multiple elements to establish a violation of § 1174," thereby depriving her of equal protection of the law under the state and federal constitutions. ¶¶ 150–52; 205–06. The Equal Protection Clause of the New York State Constitution is coextensive with its federal counterpart, and accordingly the Court considers both claims in tandem. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 52 n.3 (2d Cir. 2007).

Both the federal and state equal protection clauses prohibit denial of equal protection of the law. *Indig v. Village of Pomona*, No. 18-CV-10204 (PMH), 2021 WL 3773653, at *2 (S.D.N.Y. Aug. 24, 2021). This has been interpreted to mean that, in law, "all persons *similarly* situated should be treated alike." *Dubin*, 277 F. Supp. 3d at 396 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (emphasis added).

11

Morgulis fails to allege how she is treated differently than *similarly* situated individuals. In her response, Morgulis clarifies that the groups facing disparate standards are those who receive notices of liability as a result of photo monitoring pursuant to § 1174-a, as distinguished from those who receive a citation from a law enforcement officer after passing a stopped school bus. Doc. 28 at 23–24. Yet, as even her formulation makes clear, Morgulis is alleging disparate treatment among *differently* situated groups. As BusPatrol outlines in support of their motion to dismiss, individuals issued a traffic infraction by police officers for violating § 1174 face "imprisonment for not more than thirty days," while those who are issued notices of liability pursuant to § 1174-a are subject to a $250 civil penalty. Doc. 31 at 11.

Even accepting Morgulis' claim that both classes are similarly situated, she fails to specifically allege—as is necessary where a plaintiff brings a claim for selective enforcement of the law—that the disparate treatment is "motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citations omitted). This, she fails to do.

Accordingly, BusPatrol's motion to dismiss the fourth and thirteenth causes of action is granted.

### D. Unjust enrichment (Count 5)

Morgulis brings a claim for unjust enrichment. ¶¶ 153–57. BusPatrol argues that Morgulis fails to sufficiently state a claim for unjust enrichment, and that the claim is unduly duplicative of Morgulis' fraud claims. Doc. 25 at 14–15.

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y.

2021) (citation omitted). "The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the [p]laintiff." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (citing *Mandarin Trading Ltd. v Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)).

BusPatrol does not dispute that it was enriched through its agreements with local governments, or that its enrichment came at the expense of those who paid fines for § 1174-a violations. Turning to the third element, BusPatrol argues that Morgulis has not sufficiently alleged the requisite inequity. Doc. 25 at 45. BusPatrol relies on *Leder v. American Traffic Solutions, Inc.*, 81 F. Supp. 3d 211 (E.D.N.Y. 2015), where an individual challenged a red-light camera enforcement system. Doc. 25 at 14–15. In *Leder*, the court found that where the plaintiff had chosen not to contest their fine upon receipt and payment, the "factfinder could not plausibly conclude that the Defendants in 'equity and good conscience' must return the Plaintiff's $65.00 fine." *Id.* at 228 (citing *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005)), *aff'd* 630 Fed. Appx. 61 (2d Cir. 2015).

Here, Morgulis paid the $250 fine and admitted liability. ¶ 32. In doing so, she waived her right to contest liability. *See* Doc. 21-5. Accordingly, the Court finds that Morgulis has not plausibly alleged the requisite injustice to sustain an unjust enrichment claim. *See In re Jetblue Airways*, 379 F. Supp. 2d at 330 ("Under New York law, the granting of equitable relief on a theory of unjust enrichment requires the 'indispensable ingredient' of an injustice as between the two parties involved.").

Even if Morgulis adequately stated her unjust enrichment claim, it is unduly duplicative of her negligent misrepresentation and fraudulent inducement claims. "Unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello*, 967 N.E.2d at 1185. "Two claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (citing *NetJets Aviation, Inc. v. LHC*

*Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)). Here, as outlined below, Morgulis'
negligent misrepresentation and fraudulent inducement claims rely on the very same
factual allegations regarding BusPatrol's issuance of notices of liability, and Morgulis
does not allege distinct damages.

Accordingly, BusPatrol's motion to dismiss the unjust enrichment claim is
granted.

### E. Conversion (Count 6)

Morgulis asserts a claim for conversion. ¶¶ 158–61.

BusPatrol argues that the conversion claim is barred by the voluntary payment
doctrine as a matter of law. Doc. 25 at 15. As stated above, the Court does not conclude
that Morgulis' claims are barred by the voluntary payment doctrine at this stage.
*See Wurtz*, 2014 WL 4961422, at *6. Nonetheless, Morgulis fails to assert a plausible
claim for conversion.

Under New York law, "conversion takes place when someone, intentionally and
without authority, assumes or exercises control over personal property belonging to
someone else, interfering with that person's right of possession." *Grgurev v. Licul*, 229 F.
Supp. 3d 267, 285 (S.D.N.Y. 2017) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*,
860 N.E.2d 713, 717, (N.Y. 2006)). In order to establish a claim for conversion, the
plaintiff must show (1) "plaintiff's possessory right or interest in the property" and (2)
"defendant's dominion over the property or interference with it, in derogation of plaintiff's
rights." *Colavito*, 860 N.E.2d at 717 (citation omitted).

When a conversion claim concerns money, the plaintiff is required to plausibly
plead, in addition, that the money must be held in a "specific, identifiable fund and
[subject to] an obligation to return or otherwise treat in a particular manner the specific
fund in question." *Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26,
38 (S.D.N.Y. 2021) (quoting *High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420, 429
(S.D.N.Y. 1998)); *see also Advanced Knowledge Tech, LLC v. Fleitas*, No. 21 Civ. 992

(PKC), 2021 WL 6126966, at *6 (S.D.N.Y. Dec. 28, 2021) ("The money must be specifically identifiable and segregated") (quotations and citation omitted).

Here, Morgulis provides no factual basis for her conversion claim.[6]  Morgulis alleges that "Bus Patrol [sic] intentionally and without authority, assumed or exercised control over Plaintiff's and Class member's payment of penalties, interfering with their right of possession of that money," ¶ 159, and that "[e]ach penalty payment was a specific, identifiable sum when paid."  ¶ 160.  Her threadbare recital of the elements of a conversion claim, without any accompanying factual basis, is woefully insufficient to survive a motion to dismiss.  *See Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citing *Iqbal*, 556 U.S. at 678).  Moreover, Morgulis' allegation that BusPatrol acted without authority in assuming control of her payment is belied by her admission that she "remitted payment to Bus Patrol [sic] for the monetary penalty as set forth in the NOL."  ¶ 32.

Accordingly, BusPatrol's motion to dismiss the conversion claim is granted.

### F.  Negligent Misrepresentation (Count 7)

Morgulis brings a claim for negligent misrepresentation.  ¶¶ 162–69.  BusPatrol argues that Morgulis fails to plausibly allege the elements of a negligent misrepresentation claim, and that the notices of liability are shielded by litigation privilege.  Doc. 25 at 16.

---

[6] The Court notes that this argument was not specifically raised by BusPatrol in its briefing.  In general, "a court must afford a plaintiff the opportunity to be heard before dismissing a claim *sua sponte*."  *Thompson v. Urban Recovery House, LLC*, No. 20 Civ. 9581 (PGG) (JLC), 2022 WL 589957, at *6 (S.D.N.Y. Feb. 28, 2022), report and recommendation adopted, 2022 WL 4547411 (S.D.N.Y. Sept. 29, 2022).  But "granting leave to amend a complaint can suffice as such opportunity."  *Id.*; *see also Mir v. Zucker*, No. 19 Civ. 6374 (CM), 2019 WL 5693695, at *8 (S.D.N.Y. Nov. 1, 2019) ("Because the Court dismisses *sua sponte* some of Plaintiff's claims for failure to state a claim, the Court grants Plaintiff leave to replead his claims in an amended complaint to be filed within thirty days of the date of this order.").  Here, the Court will grant Morgulis leave to amend the conversion claim, which will provide "the requisite opportunity to be heard."  *Thompson*, 2022 WL 589957, at *6.  Morgulis may also file a motion for reconsideration.  *See Perkins v. Kamco Supply Corp.*, No. 06 Civ. 5054 (DAB) (DF), 2007 WL 4207193, at *3 n.3 (S.D.N.Y. Nov. 27, 2007) (noting that argument was not raised by defendant and that court would afford plaintiff an opportunity to respond "by entertaining a motion for reconsideration").

"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). "Because negligent misrepresentation sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standard" as well. *Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933 (ER), 2021 WL 4332258, at *12 (S.D.N.Y. Sept. 22, 2021) (citation omitted).

"Under the [first] 'duty' element, 'New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Anschutz Corp.*, 690 F.3d at 114 (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)).

Here, assuming without deciding that the other elements are satisfied, Morgulis has not adequately alleged the requisite "special relationship" between herself and BusPatrol. The allegation in the amended complaint that BusPatrol "had, and continue [sic] to have, a duty" is a threadbare recitation of an element of the claim, and therefore does not suffice to survive a motion to dismiss. ¶ 167; *see Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citing *Iqbal*, 556 U.S. at 678).

Generally, "arms-length commercial transactions" do not give rise to negligent misrepresentation claims. *Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (citation omitted). Insofar as Morgulis' amended complaint may be construed as alleging some commercial relationship, it is no

16

more linked than that of an arms-length commercial transaction, with Morgulis paying a fine following a notice without further communication.

Accordingly, BusPatrol's motion to dismiss the negligent misrepresentation claim is granted.[7]

### G.  Fraudulent Inducement (Count 8)

Morgulis asserts a claim for fraudulent inducement and concealment.  ¶¶ 170–77. To state a claim for fraudulent inducement under New York law, a plaintiff must allege that:

> (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss.

*Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012) (quotations and citation omitted).

In addition, "[t]he Complaint must state with particularity the circumstances of the fraud under Rule 9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2)."  *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 701 (S.D.N.Y. 2012).  Under Rule 9(b), a complaint must specify the fraudulent statements, the speaker, where and when the statements were made, and explain why the statements were fraudulent.  *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. Appx. 27, 30 (2d Cir. 2014) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

Here, Morgulis proffers that BusPatrol "falsely represented to Plaintiff and Class members that its [notices of liability] were legally sufficient, and that it satisfied their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged

---

[7] Because the Court finds that Morgulis insufficiently stated her claim for negligent misrepresentation, the Court finds it unnecessary to reach BusPatrol's argument concerning litigation privilege.  Moreover, the Court finds it unnecessary at this stage to reach the legal sufficiency of the notices of liability and the statements therein.

violations."  ¶ 171.  Even assuming without deciding that her allegation satisfies the requisite specificity under Rule 9(b), the claim is belied by Morgulis' own attribution of the allegedly false statements to local governments rather than BusPatrol.  Morgulis calls the certification at issue on the notice of liability a "sworn statement issued by a *local government* Specialist*,*" ¶ 15 (emphasis added), and states that the notices of liability were issued "on behalf of local governments," ¶ 75.

Morgulis relies exclusively on *Pasternack v. Laboratory Corp. of American Holdings*, 59 N.E.3d 485 (N.Y. 2016) for the proposition that BusPatrol may be liable for statements attributed to a third-party for which it served as an intermediary.  Doc. 28 at 18.  Morgulis' reliance on *Pasternack* is unavailing.  In *Pasternack*, the New York Court of Appeals held that third-party reliance could not establish the reliance element of a fraud claim.  59 N.E.3d at 492.  Morgulis quotes a section of the *Pasternack* opinion which states that an "indirect communication can establish a fraud claim, so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it."  Doc. 28 at 18 (citing 59 N.E.3d at 492).  However, Morgulis' excerpt of *Pasternack* omits the beginning of the quoted sentence, where the *Pasternack* court cites *Eaton, Cole & Burnham Co. v. Avery*, 83 N.Y. 31 (N.Y. 1880), for the proposition that indirect communications may render the *original* speaker liable for fraud.  *See Eaton*, 83 N.Y. at 34–25.  Here, the local government specialists are the "original speaker" of the certification at issue, with BusPatrol, serving as an intermediary.  Thus, Morgulis' reference to *Pasternack* has no bearing on the liability of BusPatrol, and the Court finds that Morgulis has not plausibly alleged fraud by BusPatrol itself.

Accordingly, BusPatrol's motion to dismiss the fraudulent inducement claim is granted.[8]

---

[8] BusPatrol also argues that the Morgulis' fraud claim fails because the notices of liability are legally sufficient as a matter of law.  Doc. 25 at 18–19.  Because the Court finds that Morgulis insufficiently stated her claim for fraudulent inducement, the Court finds it unnecessary at this stage to reach the legal sufficiency of the notices of liability.

### H.  Excessive fines (Count 9)

Morgulis brings a claim for excessive fines in violation of the New York State Constitution.  ¶¶ 178–90.  Article I, § 5 of the New York State Constitution provides that "[e]xcessive bail shall not be required nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained."  N. Y. Const., art. I, § 5.

As a threshold matter, BusPatrol argues that the local governments are responsible for setting the fine amounts.  Doc. 25 at 21.  Morgulis does not directly address this point in response, or provide case law demonstrating a claim against a private actor pursuant to the Excessive Fines Clause of the New York State Constitution.

Even assuming that Morgulis' Excessive Fines Clause claim is properly brought against BusPatrol, it is not plausibly alleged.

"New York's Excessive Fines clause requires the same analysis as the [Excessive Fines Clause in the U.S. Constitution], and provides no greater protection."  *Wirth v. City of Rochester*, No. 17 Civ. 6347 (FPG), 2021 WL 3270512, at *2 (W.D.N.Y. July 30, 2021) (citing *Grinberg v. Safir*, 181 Misc. 2d 444, 694 N.Y.S.2d 316, 327 (N.Y. Sup. Ct. 1999)).  The excessive fines analysis requires a two-step inquiry.  *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016).  First, the court must "determine whether the Excessive Fines Clause applies at all."  *Id.* at 109 (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).  That question turns on whether the fine "may be characterized, at least in part, as 'punitive.'"  *Id.* (citing *Bajakajian*, 524 U.S. at 327–28).  Second, the court must "determine whether the challenged forfeiture is unconstitutionally excessive."  *Id.* (citing *Bajakajian*, 524 U.S. at 334).  A fine is unconstitutionally excessive "if it is grossly disproportional to the gravity of a defendant's offense."  *Id.* at 110 (quoting *Bajakajian*, 524 U.S. at 334).

Under the first step, BusPatrol does not contest that the Excessive Fine Clause applies to this matter. Thus, the Court assumes without deciding that the Excessive Fines clause applies. *See Torres v. City of N.Y.*, 590 F. Supp. 3d 610, 627 (S.D.N.Y. 2022).

Turning to the second step, to determine whether a fine is grossly disproportionate, the Court must consider:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Torres*, 590 F. Supp. 3d at 628 (citing *Viloski*, 814 F.3d at 110). In applying these factors, the Court remains "mindful of the Supreme Court's admonition that 'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'" *Viloski*, 814 F.3d at 112 (quoting *Bajakajian*, 524 U.S. at 336).

Here, the amended complaint provides only minimal information concerning Morgulis' violation or the other factors relevant to this claim, stating only that the notice of liability was received and a fine paid. *See* ¶ 32. Without more information about the alleged offence, Morgulis fails to plausibly state a claim that the fine was disproportional to the offense. *See Yagman v. Garcetti*, No. 20 Civ. 2722 (DMG) (JEM), 2020 WL 7079355, at *6–7 (C.D. Cal. Dec. 3, 2020) (dismissing a federal Excessive Fines Clause challenge to a parking fine on account of the claim's "minimal factual background" concerning the violation).

Morgulis resists this conclusion by contending that, "the only improper action by Plaintiff and Class members is the fact that they were issued the [notices of liability] in question without any offer of proof …." ¶ 185. To the extent the allegation can be construed as denying any wrongdoing by Morgulis, it is wholly conclusory, lacking factual reference to the actual violation; Morgulis does not otherwise provide details concerning the violation—which she admitted liability for—nor does she contest that the

notice of liability attatched to her amended complaint shows a vehicle owned by her passing a school bus with its stop-arm activated.  *See* Doc. 21-5.

Accordingly, BusPatrol's motion to dismiss the excessive fines claim is granted.

### I.    Fines Without Cause (Count 10)

Morgulis asserts a claim for fines without reasonable cause in violation of New York Civil Rights Law § 11.  ¶¶ 191–199.

Section 11 of the New York Civil Rights Law provides that "[n]o citizen of this state ought to be fined…without reasonable cause, and such fine…should always be proportioned to the nature of the offense."  N.Y. Civ. Rights Law, § 11.

BusPatrol argues that it is clear from the face of the amended complaint that Morgulis' fine was imposed with reasonable cause.  Doc. 25 at 22.  BusPatrol references Morgulis' admission of liability through her payment of the fine, ¶ 35, and the photo evidence of a car owned by Morgulis passing a school bus with an activated stop-arm, Doc. 21-5.  Doc. 25 at 22.  In response, Morgulis merely reiterates her conclusory claim that BusPatrol lacked reasonable cause.  Doc. 28 at 20–21.  The Court finds that, given Morgulis' insufficient factual background concerning the violation, she has failed to plausibly state a claim that the fine was imposed without reasonable cause.

Moreover, even if Morgulis provided a sufficient factual basis, her claim is directed against BusPatrol.  However, as alleged in her amended complaint, the notices of liability were issued "on behalf of local governments."  ¶ 75.

Accordingly, BusPatrol's motion to dismiss the fine without cause claim is granted.

### J.    Deceptive Business Practices (Count 11)

Morgulis brings a claim for deceptive business practices in violation of General Business Law ("GBL") § 349.  ¶¶ 200–202.

Section 349(a) of the New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the

furnishing of any service." *McCracken v. Verisma Systems*, 91 F.4th 600, 607 (2d Cir. 2024). To state a claim under this provision, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). "Thus, to avoid dismissal, plaintiffs must adequately plead each of these elements." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1192 (N.Y. 2021).

Under the first element, BusPatrol argues that the § 349 claim fails as a matter of law because the conduct at issue was not consumer-oriented. BusPatrol relies on *Singh v. City of New York*, 217 N.E.3d 1 (N.Y. 2023) for the proposition that its dealings as a government contractor are outside the market and thus outside the ambit of § 349. In *Singh*, the New York Court of Appeals affirmed the dismissal of a § 349 claim against the New York City Taxi and Limousine Commission because the Commission "did not act as a purveyor of a consumer good…" *Singh*, 217 N.E.3d at 7. The Court agrees that, like the Taxi and Limousine Commission, BusPatrol is not a purveyor of consumer goods to Morgulis and others who receive notices of liability. *See Exxonmobil Inter-America v. Advanced Information Engineering Servs.*, 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004) ("a consumer, for § 349 purposes, is one 'who purchase[s] goods and services for personal, family or household use'") (citation omitted); *cf. Kinkopf v. Triborough Bridge & Tunnel Auth.*, 792 N.Y.S.2d 291, 292 (N.Y. App. Term 2004) ("Inasmuch as the tolls are in essence a use, the collection of same is not a consumer oriented transaction and therefore not subject to § 349 of the General Business Law.") (quotations and citation omitted).[9]

Accordingly, BusPatrol's motion to dismiss the § 349 claim is granted.

---

[9] Since the claim fails under the first factor, the Court does not reach the others. *See Kinkopf*, 792 N.Y.S.2d at 292 ("[I]n order to state a prima facie case under section 349, a plaintiff must allege conduct of the defendant that is consumer oriented.") (citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, BusPatrol's Motion to dismiss is GRANTED. Morgulis may file a second amended complaint, if at all, by August 22, 2024.  If no amended complaint is filed within that time frame, the Clerk of the Court is directed to enter a final judgment of dismissal and to terminate the case.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 23.

It is SO ORDERED.

Dated:    August 1, 2024
             New York, New York

_____
             EDGARDO RAMOS, U.S.D.J.