UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SARAH MORGULIS, *on behalf of herself and all other similarly situated*,

                      Plaintiff,

– against –

BUS PATROL AMERICA, LLC,

                      Defendant.

**OPINION & ORDER**

24 Civ. 113 (ER)

---

RAMOS, D.J.:

      Sarah Morgulis brings this putative class action against BusPatrol, LLC (s/h/a Bus Patrol America, LLC), alleging that BusPatrol fraudulently issued notices of liability to those accused of passing stopped school buses. Doc. 38. This Court granted BusPatrol's motion to dismiss Morgulis' first amended complaint, *see Morgulis v. Bus Patrol Am., LLC*, No. 24 Civ. 113 (ER), 2024 WL 3639126, at *13 (S.D.N.Y. Aug. 1, 2024), and Morgulis has since filed a second amended complaint, Doc. 38. BusPatrol now moves to dismiss the second amended complaint for failure to state a claim. Doc. 48. For the reasons set forth below, the motion is GRANTED.

### I. BACKGROUND

#### A. Factual Background

      The following facts are based on the allegations in the complaint, which the Court accepts as true for purposes of the instant motion. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

      New York Vehicle & Traffic Law ("VTL") § 1174 provides that drivers shall not pass an appropriately-marked school bus which has its stop-arm[1] activated when it is

---

[1] The stop-arm is a stop sign which extends from the side of a school bus.

receiving or discharging passengers. ¶ 6.[2]  In 2019, the New York State Legislature enacted VTL § 1174-a.  ¶ 7.  Section 1174-a authorizes municipalities to establish photo monitoring enforcement for violations of VTL § 1174 and impose monetary liability on the owners of implicated vehicles.  See id.

Defendant BusPatrol is a private, national vendor based in Virginia that offers turnkey stop-arm photo enforcement services to local governments.  ¶¶ 34, 53–55.  BusPatrol has entered into agreements with more than a dozen local governments throughout New York State, including Suffolk County, Albany County, Monroe County, Rockland County, Westchester County, Putnam County, the City of Niagara Falls, the City of Jamestown, the City of Long Beach, and the City of Yonkers.  ¶ 57.

BusPatrol's end-to-end service includes installing and maintaining cameras on school buses to record alleged violations, as well as issuing notices of liability to purported violators.  ¶ 58.  Section 1174-a provides that notices of liability "shall be prepared and mailed by the county, city, town or village in which the violation occurred, or by any other entity authorized by such county, city, town or village to prepare and mail such notification of violation."  According to Morgulis, the notices are issued "on behalf of local governments."  ¶ 80.  Under § 1174-a, these notices of liability are sent to individuals "alleged to be liable."  VTL § 1174-a.

Plaintiff Sarah Morgulis is a New York resident who received a notice of liability for an alleged § 1174-a violation.  ¶¶ 30–32.  The notice of liability received by Morgulis indicates that a vehicle owned by her was recorded passing a stopped school bus in West Hempstead, New York on April 4, 2023, at 3:33pm.  See Doc. 38-5.  The notice includes pictures of the alleged violation, indicates a fine amount of $250, instructs Morgulis that she may "deny liability" to receive a hearing, and provides a signed "specialist certification" stating that:

---

[2] Unless otherwise noted, citations to "¶ __" refer to the amended complaint, Doc. 21.

> Based on my review and inspection of the evidence, including recorded images, I swear or affirm under penalty of perjury that there is sufficient evidence that a violation of NY VTL 1174-a did occur, as more fully described herein, for which the above named vehicle owner is liable pursuant to Chapter 186 of the Code of the Town of Hempstead and NY VTL 1174-a.

*Id.* Morgulis describes this specialist certification as a "sworn statement issued in the name of a local government Specialist." *See* ¶ 15.

The images of the violation in the notice include a red circle in the upper left corner, which indicates—according to BusPatrol materials attached to Morgulis' complaint—that the bus' red stop lights were activated at the time of the incident. *See* Doc. 38-5; *see also* Doc. 38-4 at 6. The notice moreover states that "[p]ayment is considered an **ADMISSION OF LIABILITY** and waives your right to a hearing," while offering the opportunity to review "the recorded images" of the violation on the internet. Doc. 38-5 (alteration in original).

Morgulis acknowledges that she paid the $250 monetary penalty set forth in her notice of liability. ¶ 33. Now, Morgulis protests that her payment was made in reliance on misrepresentations by BusPatrol. *Id.* She claims that she "has and had no personal basis on which to know whether the allegations against her contained in the [notice of liability] were truthful, whether she passed a school bus with its arm extended, whether children were loading or unloading from any such bus, and whether any such bus had appropriate lights and signage." *Id.*

Specifically, Morgulis takes issue with the specialist certification affirming that a technician found sufficient evidence of a violation. *See* ¶ 15. First, she alleges that the technicians who purportedly provide the specialist certifications are inadequately trained. ¶ 62–65. Morgulis claims that BusPatrol is responsible for technician training, and she cites training materials used by BusPatrol in alleging that technicians are not trained to determine whether the elements of a § 1174-a violation are actually satisfied. *Id.*

3

Second, Morgulis alleges that BusPatrol fails to collect all of the evidence necessary to faithfully establish liability. ¶¶ 12–13. Section 1174 prohibits passing a school bus when that bus is equipped with requisite markings, ¶ 6, and the cameras used by BusPatrol do not capture the dimensions and specifications of the signage or markings on the bus, ¶¶ 67–69. The cameras, Morgulis claims, also do not capture whether the bus is stopped to discharge or pick up passengers. ¶ 66. As a result, Morgulis alleges that the notices of liability "were not based on sufficient evidence that a violation of [S]ection 1174 had occurred to give rise to liability under [S]ection 1174-a." ¶ 80.

Third, Morgulis alleges that the certifications are "fraudulent" because the technicians, when approving notices, do not explicitly attest that they reviewed sufficient evidence of a violation. ¶¶ 70–77. Instead, after reviewing the evidence provided by BusPatrol, the technicians click a button marked "approve." ¶¶ 73–74. According to Morgulis, by clicking "approve," the technicians merely attest "that they agree that the photographic evidence shows the vehicle passing a stop-arm." ¶ 74. Morgulis provides an image of the BusPatrol portal used by technicians to approve individual notices of liability, *see* ¶ 13, and refers to BusPatrol training materials which are attached to her complaint, *see* Doc. 38-4 at 8. In the training materials, technicians are instructed to "Review Video, Photo Evidence & Violator Data," then "Select whether Vehicle is Rental or Owned/Leased," and finally "Select Approve & Disapprove." *See id*. BusPatrol purportedly "converts the technicians' click of the 'approve' button into" the "sworn certification" displayed on the notice of liability. ¶ 76. This certification is therefore false, Morgulis claims, "because no such sworn statement had ever been made." ¶ 17.

In addition to issuing notices of liability, BusPatrol also produces evidence packets for their use in § 1174-a hearings. ¶ 94. BusPatrol includes a Technician's Certificate in each evidence packet, stating that the vehicle at issue was recorded "in violation of New York State Vehicle and Traffic Law § 1174-A." ¶ 99. According to Morgulis, the Technician's Certificate relies on the evidence produced by BusPatrol,

4

which does not necessarily demonstrate all of the elements of a § 1174-a violation. ¶ 100.

Morgulis also details developments regarding § 1174-a enforcement.  First, in *People v. Croce*, 201 N.Y.S.3d 595 (N.Y. App. Term 2023), the Supreme Court of the State of New York, Appellate Term, Second Department found that an evidence packet prepared by BusPatrol was insufficient to establish liability pursuant to § 1174-a.  ¶¶ 122–25.  Morgulis alleges that, after *Croce*, Suffolk County has "regularly" agreed to the reversal of notices of liability when challenged on appeal.  ¶ 126.  Morgulis also alleges that "the Town of Hempstead regularly declines to prosecute cases in which a defendant challenges the sufficiency of the evidence packets." ¶ 128.  In addition, the Town of Hempstead has since amended their agreement with BusPatrol, establishing "processing guidelines" for BusPatrol "to use for creating evidence packages." ¶ 130.

New to her second amended complaint, Morgulis also refers to Suffolk County's recent audit of their bus safety program.[3]  ¶¶ 132–53.  The audit found, *inter alia*, that camera footage supplied to Suffolk County technicians by BusPatrol was "shortened and cropped to expedite the review process for County Technicians." ¶ 133.  The audit also found that the "location of violation" on the notices of liability was sometimes incorrectly recorded.  ¶¶ 150–51.

### B. Procedural History

Morgulis filed this action against BusPatrol on November 27, 2023, in the Supreme Court of the State of New York, County of New York.  *See* Doc. 1 at 1–2.  BusPatrol removed the case to this Court pursuant to the Class Action Fairness Act on January 5, 2024.  *Id.*  Morgulis' putative class comprises vehicle owners who were issued notices of liability pursuant to § 1174-a beginning August 9, 2019.  ¶ 154.

---

[3] As Morgulis acknowledges, her notice of liability "was issued by the Town of Hempstead," which is in Nassau County.  *See* ¶ 133.

BusPatrol filed its first motion to dismiss on March 1, 2024. Doc. 18. Morgulis filed an amended complaint on March 21, 2024, Doc. 21, after which the Court denied the initial motion to dismiss. Doc. 22. On April 12, 2024, BusPatrol filed a motion to dismiss Morgulis' first amended complaint. Doc. 23. The Court granted BusPatrol's motion to dismiss the first amended complaint in its entirety on August 1, 2024 (the "August 2024 Opinion"). *See Morgulis v. Bus Patrol Am., LLC*, No. 24 Civ. 113 (ER), 2024 WL 3639126, at *13 (S.D.N.Y. Aug. 1, 2024).

Morgulis filed the operative, second amended complaint on August 20, 2024. Doc. 38. The second amended complaint reiterates the first amended complaint's claims for: (1) unlawful delegation of executive authority; (2) unlawful delegation of prosecutorial authority; (3) a state constitutional due process violation; (4) a state constitutional equal protection violation; (5) unjust enrichment; (6) conversion; (7) negligent misrepresentation; (8) fraudulent concealment and inducement; (9) a state constitutional excessive fines violation; (10) fines without cause in violation of New York Civil Rights Law § 11; (11) deceptive business practices in violation of General Business Law § 349 violation; (12) a federal due process violation pursuant to 42 U.S.C. § 1983; and (13) a federal equal protection violation pursuant to 42 U.S.C. § 1983. ¶¶ 167–231. New to the second amended complaint, Morgulis asserts a claim for (14) aiding and abetting fraud. ¶¶ 232–36. The second amended complaint also seeks (15) declaratory judgment. ¶¶ 237–45.

On October 2, 2024, the parties jointly stipulated to the partial dismissal of the complaint. Doc. 47. Specifically, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the parties voluntarily dismissed with prejudice 11 causes of action. *Id.* Only the following causes of action remain: unjust enrichment; fraudulent concealment and inducement; a federal due process claim under 42 U.S.C. § 1983; and aiding and abetting fraud. *Id.*

6

On October 10, 2024, BusPatrol moved to dismiss the second amended complaint with prejudice for failure to state a claim. Doc. 48.

On December 10, 2024, Morgulis wrote the Court to advise of *McGrath v. Suffolk Cty.*, 2024 NY Slip Op. 05973, 232 A.D.3d 879 (2d Dept. Nov. 27, 2024) and *Guthart v. Nassau Cty.*, 2024 NY Slip Op. 05960, 232 A.D.3d 854 (2d Dept. Nov. 27, 2024). Doc. 59. In both opinions, the Appellate Division, Second Department found that the imposition of an excessive red light camera fee was void as a matter of law. *Id.* On that same day, BusPatrol filed a sur-reply, distinguishing *McGrath* and *Guthart* from the instant matter. Doc. 60. Unlike *McGrath* and *Guthart*, the instant matter does not allege that the notice of liability fees exceeded the amount allowed by statute. *Id.* BusPatrol filed a response, also on December 10, 2024, arguing that *McGrath* and *Guthart* are relevant. Doc. 62.

## II.     LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a 'probability requirement,' but it asks for

7

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

The following causes of action are before the Court: unjust enrichment; fraudulent concealment and inducement; federal due process under 42 U.S.C. § 1983; and aiding and abetting fraud. Doc. 47. The Court considers each in turn.

### A. Unjust Enrichment

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021) (citation omitted).

This Court previously found that Morgulis failed to state a claim for unjust enrichment because she had "not plausibly alleged the requisite injustice to sustain an unjust enrichment claim." *Morgulis*, 2024 WL 3639126, at *7 (citation omitted). The Court moreover explained that "[e]ven if Morgulis adequately stated her unjust enrichment claim, it is unduly duplicative of her negligent misrepresentation and fraudulent inducement claims." *Id.*

Morgulis does not provide the Court with additional factual allegations regarding the alleged inequity of BusPatrol's enrichment. *See* ¶¶ 179–82. Instead, Morgulis relies on a recent Nassau County Supreme Court case to argue that "it would be unjust for BusPatrol to retain its portion of the fraudulently procured fine." Doc. 53 at 33 (citing

8

*Kadinsky v. Town of Hempstead*, No. 619279/2023, No. 53 (Supreme Court, Nassau County, October 8, 2024)). In *Kadinsky*, the plaintiff sued the Town of Hempstead for various state and federal law claims relating to the same school bus stop-arm enforcement program at issue here. *See Kadinsky v. Town of Hempstead*, Index No. 619279/2023, No. 53 (N.Y. Sup. Ct., October 8, 2024) (Doc. 54-1). The *Kadinsky* court granted the Town's motion to dismiss in part, but denied the motion as to the plaintiff's unjust enrichment claim against the Town. *Id.*

According to Morgulis, the *Kadinsky* decision "established that, under the facts alleged in the [second amended complaint], Plaintiff's payment of [her] fine was the product of the Town's fraud or negligent misrepresentation." Doc. 53 at 33. But that is not so. First, the *Kadinsky* court decided a motion to dismiss. *See* Doc. 54-1. Thus, the *Kadinsky* court did not "establish" the facts alleged; instead, the court engaged in a plausibility analysis similar to the one conducted here. Second, the *Kadinsky* court did not make any findings "under the facts alleged" in Morgulis' own complaint; instead, the court decided its motion on the basis of the allegations in the complaint before it—which are different from the facts presented here, and were directed at the Town rather than BusPatrol. *See* Doc. 54-1.

Here, Morgulis still has not pleaded the requisite injustice to sustain an unjust enrichment claim. "The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the [p]laintiff." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (citing *Mandarin Trading Ltd. v Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)). Morgulis paid the $250 fine and thereby admitted liability. *See* ¶ 33. The notice of liability made clear that Morgulis could contest liability, and she waived that right by paying. *See* Doc. 38-4 at 6. As the Court articulated in its August 2024 Opinion, it could not "plausibly conclude that [BusPatrol] in 'equity and good conscience' must return the" fine which Morgulis willingly paid without challenge. *Morgulis*, 2024 WL 3639126, at

9

\*7 (quoting *Leder v. American Traffic Solutions, Inc.*, 81 F. Supp. 3d 211, 228 (E.D.N.Y. 2015)).

Moreover, even if Morgulis sufficiently pleaded the requisite injustice for her unjust enrichment claim, it remains unduly duplicative. "[A] plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019) (citation omitted). "Two claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (citing *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)). In other words, while an unjust enrichment claim may be brought in the alternative, "Courts regularly dismiss unjust enrichment claims brought as an alternative theory when the claims rely on a similar set of facts as the plaintiff's other claims." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 46 (S.D.N.Y. 2023).

In the second amended complaint, Morgulis clarifies that her unjust enrichment claim is sought in the alternative to her other causes of action. ¶¶ 179–82. Morgulis furthermore specifies that she "seeks damages for unjust enrichment only to the extent that [BusPatrol] has been unjustly enriched through payment of his Notice of Liability"— that is, the share of the fine kept by BusPatrol. ¶ 182. Therefore, the amount of damages sought for the unjust enrichment claim now differs from the amount sought for Morgulis' other claims. *Cf. id.* Morgulis thus argues that the unjust enrichment claim is no longer duplicative. Doc. 53 at 33.

Morgulis nonetheless fails to sufficiently distinguish her unjust enrichment claim from her fraud claims, which all relate to the same factual allegations. The unjust enrichment claim is based on BusPatrol allegedly issuing notices of liability, "without evidence that a violation had occurred, and in circumstances in which [BusPatrol] had no basis to determine whether a violation had occurred." ¶ 181. This essentially replicates

10

Morgulis' fraud claims. *Cf.* ¶ 196 ("Defendant falsely represented to Plaintiff and Class members that its NOLs were legally sufficient, and that it satisfied their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations."). Thus—even as pleaded in the alternative—to the extent the fraud claims do not succeed, "the unjust enrichment claim would not remedy the defects." *Bourbia*, 375 F. Supp. 3d at 467.

As for damages, Morgulis attempts to avoid dismissal by changing the dollar amount sought. *See* ¶ 182. She nonetheless continues to seek the very same *type* of damages—that is, funds from notices of liability issued by BusPatrol. *See id.* This minor change fails to sufficiently distinguish the claims. *Cf. Hart v. Cappa*, 2018 NY Slip Op 31602(U), ¶ 13 (N.Y. Sup. Ct. 2018) ("Relief sought in the tort counterclaims are duplicative, even though the dollar amount of alleged damages suffered by defendant are different.").

Accordingly, BusPatrol's motion to dismiss the unjust enrichment claim is granted.

### B. Fraudulent Inducement and Concealment

Morgulis asserts that the specialist certification included with her notice of liability fraudulently induced her to pay the fine. ¶¶ 195–202. Specifically, Morgulis alleges that BusPatrol misrepresented that it had sufficiently established the liability of alleged violators. ¶¶ 196–97.

To state a claim for fraudulent inducement under New York law, a plaintiff must allege that:

> (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss.

*Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012) (quotations and citation omitted).

In addition, "[t]he Complaint must state with particularity the circumstances of the fraud under Rule 9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2)." *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 701 (S.D.N.Y. 2012). Under Rule 9(b), the complaint must specify the fraudulent statements, the speaker, where and when the statements were made, and explain why the statements were fraudulent. *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. Appx. 27, 30 (2d Cir. 2014) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

This Court previously found that Morgulis failed to state a claim for fraudulent inducement because she attributed the allegedly false statements in the specialist certifications to the Town rather than BusPatrol. *Morgulis*, 2024 WL 3639126, at *10; *see* Doc. 21 at ¶ 15 (referring to the specialist certification as a "sworn statement issued by a local government Specialist").

Assuming *arguendo* that Morgulis describes the alleged misrepresentations with requisite particularity, her attribution of the statements to BusPatrol remains unavailing. In her second amended complaint, Morgulis contends that the specialist certifications are issued by BusPatrol "in the name of" local government specialists. ¶ 15. To the extent this language contradicts her earlier assertion that the certification constitutes a "sworn statement issued by a local government Specialist," the Court is skeptical. *See* Doc. 21 at ¶ 15. Indeed, "when a plaintiff 'blatantly changes [their] statement of the facts in order to respond to the defendant['s] motion to dismiss . . . a court is authorized to accept the facts described in the original complaint as true.'" *Palm Beach Strategic Income, LP v. Salzman*, No. 10 Civ. 261 (JS) (AKT), 2011 WL 1655575, at *5 n.5 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (citation omitted); *see also Mt. Hawley Ins. Co. v. First St. Ocean Grille, LLC*, No. 23 Civ. 1198 (VEC), 2024 WL 1364704, at *4 (S.D.N.Y. Apr. 1, 2024) ("Courts have been especially skeptical of amended complaints,

12

filed after a defendant moves to dismiss, that contain facts that directly contradict facts alleged in the original complaint.").

Morgulis' attribution of the alleged misrepresentations to BusPatrol is furthermore belied by her own allegations in the second amended complaint. She alleges that the notices of liability "*issued by local governments* were unsupported, ineffective and unlawful when issued because local governments did not have sufficient evidence to conclude a violation occurred at the time it issued them." ¶ 84 (emphasis added). The second amended complaint thus suffers from the same defect identified in the August 2024 Opinion: "Morgulis has not plausibly alleged fraud by BusPatrol itself." *Morgulis*, 2024 WL 3639126, at *10.

Even if the alleged misrepresentations were attributable to BusPatrol, Morgulis fails to plausibly allege the requisite intent to deceive. Although Rule 9(b) allows for "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must still allege facts "that give rise to a strong inference of fraudulent intent," *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks and citation omitted). "The requisite strong inference of [intent] may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).

Here, Morgulis fails to establish a strong inference of fraudulent intent under either standard. Starting with motive and opportunity, Morgulis asserts that BusPatrol's alleged fraud is "driven by a motive for profit[.]" *See* ¶ 28. This conclusory allegation, however, does not suffice to engender an inference of fraud via motive and opportunity. "Under the motive and opportunity approach, [a]lthough the desire to enhance income may motivate a person to commit fraud, allegations that a defendant stands to gain

13

economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)." *Town of Islip v. Datre,* 245 F. Supp. 3d 397, 413 (E.D.N.Y. 2017) (citation and quotation marks omitted). This is because "a generalized profit motive . . . could be imputed to any company" and thus it "has been consistently rejected as a basis for inferring fraudulent intent." *Id.* (quoting *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, No. 07 Civ. 1471 (RRM) (LB), 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009)).

Turning to conscious misbehavior, Morgulis asserts that BusPatrol "falsely represented to Plaintiff and Class members that its NOLs were legally sufficient, and that it satisfied their burden of establishing Plaintiff and Class members' prima facie guilt as to the alleged violations." ¶ 196. To support this, Morgulis refers to *People v. Croce*, an Appellate Division decision issued after she received her notice of liability. ¶¶ 122–31 (citing *People v. Croce*, 201 N.Y.S.3d 595 (N.Y. App. Term 2023)). In *Croce*, the court found that an evidence packet prepared by BusPatrol did not establish § 1174 liability. *Id.* Specifically, the evidence provided in *Croce* did not detail the markings and lights of the bus, or establish that the bus was stopped for the purpose of receiving or discharging passengers. *Id.* Morgulis thus argues that the notices of liability, which rely on BusPatrol's evidence, are similarly deficient. *Id.*

Assuming *arguendo* that her notice of liability was issued on insufficient grounds, Morgulis presents no facts that point to the shortcomings resulting from BusPatrol's *conscious* misbehavior. Indeed, courts had regularly found § 1174 liability based on BusPatrol evidence at the time Morgulis was issued her notice of liability (that is, prior to *Croce*). *See* ¶ 26 (discussing the reversal of such findings by some courts after *Croce*). "Under the 'conscious behavior' approach, 'the strength of the circumstantial evidence must be greater.'" *Datre*, 245 F. Supp. 3d at 414. In sum, Morgulis' allegations do not "give rise to a strong inference of fraudulent intent," as is necessary to state a claim for

14

fraudulent intent. *Loreley Financing*, 797 F.3d at 171 (internal quotation marks and citation omitted). Morgulis' fraudulent inducement claim thus fails.

Morgulis also argues that BusPatrol fraudulently conceals video evidence by limiting the angles sent to reviewers and by editing certain videos. Doc. 53 at 15–16. Morgulis, however, fails to allege that she experienced this alleged concealment. Instead, her only references to video editing and angles in the complaint refer to Suffolk County notices of liability and hearings. ¶¶ 132–37. Morgulis' alleged violation occurred in Nassau County. *Cf.* Doc. 38-5.

Morgulis also fails to plausibly allege that the edited videos are indeed fraudulent. According to the Suffolk County audit materials, which are attached in excerpted form to Morgulis' complaint, images are edited "to make [license plates] easier to view," and cropped to the point after the alleged violator left view of the camera.[4] *See* Doc. 38-14 at 9. Thus, it is not apparent—especially under Rule 9(b)'s heightened standard—how the editing would constitute a material misrepresentation, let alone fraud.

Accordingly, BusPatrol's motion to dismiss the fraudulent inducement and concealment claim is granted.

### C. Due Process

Morgulis asserts that BusPatrol deprived her of her property rights without due process of law in violation of the Fourteenth Amendment to the United States Constitution. ¶¶ 228–29. This Court previously dismissed Morgulis' Due Process claim because "where, as here, alleged traffic violators are provided notice and an opportunity to be heard, they are not deprived of due process." *Morgulis*, 2024 WL 3639126, at *6 (citing *Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 390–91 (E.D.N.Y. 2017)).

---

[4] In deciding a motion to dismiss, the Court "may consider . . . 'the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).

To resist that conclusion, Morgulis now argues that the *Kadinsky* opinion provides "independent bases on which to assert a Due Process Claim." Doc. 53 at 35. The Court is not convinced. Indeed, Morgulis' reliance on *Kadinsky* is confounding because the *Kadinsky* court itself dismissed the plaintiff's Due Process claim—relying heavily on this Court's August 2024 Opinion. *See* Doc. 54-1 at 12.

Morgulis also argues that BusPatrol's video editing constitutes a Due Process violation, "since it precluded a full and fair opportunity to be heard." Doc. 53 at 2. This argument is belied by the Suffolk County audit materials which make clear that edits were used "to make [license plates] easier to view," and videos were cropped from after the point that the alleged violator left view of the camera. *See* Doc. 38-14 at 9. Morgulis, moreover, paid the fine after receiving her notice of liability, and did not make use of the opportunity to be heard via hearing. *See* ¶ 33. She has not certified a class and "thus cannot assert the rights for a plaintiff" that may have received a faulty hearing. *See Torres v. City of N.Y.*, 590 F. Supp. 3d 610, 629 (S.D.N.Y. 2022).

Accordingly, because Morgulis was offered a sufficient opportunity to be heard, BusPatrol's motion to dismiss the Due Process claim is granted.

### D. Aiding and Abetting Fraud

Morgulis brings an aiding and abetting fraud claim for the first time in the second amended complaint. ¶¶ 232–36. Under New York law, a claim for aiding and abetting fraud requires proof of: (1) an underlying fraud; (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial assistance advancing the fraud's commission. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (citing *Lerner*, 459 F.3d at 292). As with the fraudulent inducement and concealment claim, a claim for aiding and abetting fraud must be pleaded with requisite particularity. *Id.* at 129 (citing Fed. R. Civ. P. 9(b)).

Morgulis alleges that the Town of Hempstead committed the underlying fraud. *See* ¶ 233 ("If the false statements alleged herein are attributable to the Town, then Bus

16

Patrol is liable for aiding and abetting the Town's fraud."). "To state a claim [for] fraud under New York law, a complaint must allege facts showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 290 (S.D.N.Y. 2023) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 170 (2d Cir. 2004)).

Assuming *arguendo* that Morgulis satisfies the other elements to plead an underlying fraud, her complaint is devoid of any allegation that the Town intended to defraud her. As discussed above, although Rule 9(b) allows for "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must still allege facts "that give rise to a strong inference of fraudulent intent," *Loreley Financing*, 797 F.3d at 171 (internal quotation marks and citation omitted). Here, Morgulis makes no effort in her complaint to draw out any inference of fraudulent intent by the Town. Indeed, the only references to intent within the complaint refer strictly to the Defendant, BusPatrol, rather than the Town. *See* ¶¶ 184, 198.

Nonetheless, in her memorandum in opposition, Morgulis asserts that she establishes the Town's intent to deceive through both motive and conscious misbehavior. *See* Doc. 53 at 26. First, Morgulis asserts that "the Town had the motive to deceive Plaintiff because it received millions of dollars in fines under VTL § 1174-a even though it lacked sufficient evidence that a violation had occurred." *Id.* This allegation, however, cannot be found in the complaint, and Morgulis makes no effort to cite to the complaint to support it. *See id.* Additionally, as discussed above, "a generalized profit motive" has "been consistently rejected as a basis for inferring fraudulent intent." *Datre,* 245 F. Supp. 3d at 413. Second, Morgulis asserts that the specialist certifications "demonstrate 'conscious misbehavior or recklessness.'" Doc. 53 at 26. However, as outlined above,

17

Morgulis fails to plausibly allege that any shortcomings in the certifications result from *conscious* misbehavior.

Accordingly, because Morgulis fails to adequately plead an underlying fraud, BusPatrol's motion to dismiss the aiding and abetting fraud claim is granted.

### IV.     CONCLUSION

For the reasons set forth above, BusPatrol's motion to dismiss the complaint with prejudice is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 48, and close the case.

It is SO ORDERED.

Dated:    April 11, 2025
          New York, New York

                                                     _____
                                                           EDGARDO RAMOS, U.S.D.J.